IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-3155-SKC-MDB

BROOKE SLUSSER, et al.,

    Plaintiffs,

v.

THE MOUNTAIN WEST CONFERENCE, et al.,

    Defendants.

---

**Utah State University's
Motion for Limited Intervention as Plaintiff**

---

Utah State University (USU) requests leave to (1) intervene as a Plaintiff under Federal Rule of Civil Procedure 24 and (2) file the attached complaint and partial joinder in Plaintiffs' emergency motion for a preliminary injunction (attachments 1 and 2 hereto). USU's motion to intervene is limited to the requested preliminary injunction relief involving the Mountain West Conference women's volleyball tournament.

**Background**

USU and San Jose State University (SJSU) are members of the Mountain West Conference (MWC). And these universities' respective women's volleyball teams normally compete against each other and other MWC members' teams during regular season games. The top six teams measured by intra-conference winning percentage will play in the MWC conference tournament. The MWC tournament winner then automatically qualifies for the

1

National College Athletic Association (NCAA) Division-1 tournament to compete for the national championship in women's volleyball.

SJSU's women's volleyball team includes a transgender female—a biological male at birth who claims a female gender identity. Several MWC women's volleyball teams chose not to play their scheduled regular season matches against SJSU's team. The teams that did (or will do) so were (or will be) deemed to have forfeited their games against SJSU and were (or will be) assigned losses on their win/loss records while SJSU was (or will be) awarded victories for these non-played matches (six in all) as required by the MWC Transgender Participation Policy (TPP).[1] The USU team chose not to play its lone regular season match against SJSU's team. And per the MWC TPP, that decision cost USU's team a loss on its record.

The MWC TPP-imposed SJSU wins along with the other teams' TPP-imposed losses will affect which seed a qualifying team receives in the tournament. Teams with a better winning percentage receive higher seeds and the top two seeds get a bye for the first round of the tournament.[2] Higher seeds and first round byes increase the chances that a team will win the three-day MWC tournament and the automatic entry into the NCAA tournament. These conference and national championship tournament opportunities matter for the universities and

---

[1] *See* Mountain West Transgender Participation Policy, available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://storage.googleapis.com/themw-com/2024/09/3a9b0b52-appendix-j-mountain-west-transgender-participation-policy.pdf

[2] MWC 2024 Women's Volleyball Championship Bracket, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://storage.googleapis.com/themw-com/2024/10/7a29f3e3-2025-womens-vb-bracket.pdf.

the team members as the pinnacles of their competitive volleyball careers because the vast majority of them are not going to play competitively or professionally after college.

SJSU currently has a 12-5 conference record and the second-best MWC winning percentage. USU currently has an 11-5 conference record and is tied for the third-best MWC winning percentage. Both teams still have regular season matches to play. But as of right now, SJSU has a better winning percentage and will receive a higher tournament seed (and first round bye) solely because the MWC TPP awarded SJSU a win and punished USU with a loss for USU volleyball team's decision not to play SJSU's team rostering a transgender female during the regular season.[3]

Plaintiffs—including several MWC women's volleyball players from SJSU, USU, and other member universities—sued the MWC, its commissioner, SJSU's governing body, and several SJSU employees for violating the First and Fourteenth Amendments and Title IX, and for fraud and negligent misrepresentation. *See generally* Plaintiffs' Complaint (Dkt. No. 1). Plaintiffs also filed an emergency motion for preliminary injunction (PI Mot.) to:

(1) Rescind the MWC TPP provisions that impose wins and losses for a non-played conference game where the non-cancelling team rosters a "transgender student-athlete":

(2) Rescind the wins awarded to SJSU and the losses imposed under the MWC TPP requirements;

(3) Order that the MWC TPP-imposed wins and losses not be considered in calculating the conference winning percentages for qualification and seeding in the MWC women's volleyball tournament; and

(4) Enjoin SJSU from continuing to roster a transgender female on its women's volleyball team because it violates Title IX.

---

[3] *See generally* Standings 2024 MWC Women's Volleyball, https://themw.com/standings/sport/wvball/ (last visited Nov. 18, 2024).

PI Mot. at 2 (Dkt. No. 14).

USU also has important interests at stake implicated by Plaintiffs' lawsuit and PI motion. And an adverse ruling by the Court would impair those interests. So USU requests limited intervention as a Plaintiff under rule 24 to assert and protect its interests in the MWC women's volleyball tournament.

## Argument

Rule 24 allows for two kinds of intervention: as of right and permissive. Fed. R. Civ. P. 24. Under either standard, the Court should allow USU to intervene for purposes of the preliminary injunction and MWC women's volleyball tournament.

### I. USU satisfies the requirements to intervene as of right.

Non-parties can intervene as of right in a pending action under rule 24(a) if: "(1) the application is timely; (2) the applicant[s] claim[ ] an interest relating to the property or transaction which is the subject of the action; (3) the applicant[s'] interest may as a practical matter be impaired or impeded; and (4) the applicant[s'] interest is [not] adequately represented by existing parties." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (quoting *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1391 (10th Cir. 2009)). Courts normally take a liberal approach to intervention requests and favor granting them. *W. Energy All.*, 877 F.3d at 1164. And the Tenth Circuit has further noted a "relaxed" intervention requirements in cases raising significant public interests. *Kane Cnty., Utah v. U.S.*, 928 F.3d 877, 896 (10th Cir. 2019).

#### A. USU's request to intervene is timely.

Courts assess an intervention motion's timeliness "in light of all the circumstances." *W. Energy All.*, 877 F.3d at 1164 (quoting *Okla. ex rel. Edmondson v. Tyson Foods, Inc., Inc.*, 619

4

F.3d 1223, 1232 (10th Cir. 2010)). But three factors are considered especially important: "(1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants." *Okla. ex rel. Edmondson*, 619 F.3d at 1232. USU's intervention motion is timely under the circumstances.

First, USU filed this motion within just a few days after Plaintiffs filed their complaint on Wednesday, November 13, 2024, and within a single business day after Plaintiffs filed their emergency PI motion on Friday, November 15, 2024. USU's filing this motion so soon after the PI motion filing date is particularly relevant here, given USU's request for a limited intervention focuses on the preliminary injunction relief involving the MWC women's volleyball tournament.

Second, the existing parties will not be prejudiced if USU intervenes at this early point. Plaintiffs do not oppose the intervention. Defendant MWC—the only party that USU names as a Defendant in USU's proposed complaint—also does not oppose. The other SJSU-related Defendants take no position. And granting USU's intervention request will not affect the expedited briefing schedule. USU files this motion and the attachments more than 24 hours before Defendants response to Plaintiffs' PI motion is due. USU's proposed complaint does not require an answer at this point and USU's joinder in portions of Plaintiffs' PI motion does not raise any new arguments that would require Defendants to spend more time addressing beyond the current deadline. Nor will the Court need to change the proposed PI hearing date if USU is allowed to intervene. In short, USU's intervention will have no adverse effect on the existing parties' ability to meet current deadlines in the immediate PI proceedings or this Court's ability to rule on the motion before the MWC tournament starts.

Third, USU will suffer prejudice if intervention is denied. *Oklahoma ex rel. Edmondson*, 619 F.3d at 1237 (10th Cir. 2010) (describing third factor as "prejudice to the movant from denying intervention"). USU requests intervention to assert and protect its own and its female student-athletes' interests in preserving women's athletic opportunities during the MWC women's volleyball tournament and potential invitation to the NCAA championships. If the MWC tournament begins and ends without USU's intervention and ability to assert its interests in the PI proceedings, USU's request will become largely moot.

**B.    USU claims a protectable interest related to the subject matter of Plaintiffs' PI motion.**

Whether a movant has "an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth*, 100 F.3d 837, 841 (10th Cir. 1996). The movant must show it has an interest in the proceedings which is "'direct, substantial, and legally protectable.'" *City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996). Put another way, a protectable interest is one that "would be impeded by the disposition of the action." *W. Energy All.*, 877 F.3d 1157, 1165 (10th Cir. 2017) (internal quotation marks omitted). USU has such interests here.

First, USU receives federal financial assistance and must therefore abide by Title IX. 20 U.S.C. § 1681(a). Otherwise, USU would lose its Title IX federal funding. Title IX prohibits excluding anyone from participation in, denying anyone the benefits of, or discriminating against anyone under any education program "on the basis of sex." *Id.* In this circuit, the Kansas federal district court held that Title IX's "unambiguous plain language . . . make[s] clear that the term sex means the traditional concept of biological sex." *Kansas v. United States Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3273285, *8 (D. Kan. July 2, 2024). So, under Title IX, USU must

provide and protect an equal opportunity for its male and female students to participate in educational programs, including USU athletics, or lose its Title IX funding.

As alleged in USU's complaint in intervention (attachment 1), the TPP harms USU by diminishing the competitive opportunities for USU's women's volleyball.

On October 3, 2024, USU decided to cancel its volleyball match against SJSU informed by state policy and the input of members of the USU's women's volleyball team. *See, e.g.* attachment 1 ¶¶ 20-26. Plaintiff and USU student athlete Kailey Ray expressed concerns about fairness and physical safety. And student athletes on the USU team agreed with Ms. Ray. In October 2024, in response to an anonymous survey, the majority of student athletes on the USU women's volleyball team indicated that they did not want to play their regular season match against SJSU due to concerns of fairness and to communicate that they do not agree with the TPP and hold strong personal and political beliefs that transgender women should not be permitted to compete in women's sports. Some of the student athletes indicated that competing against a transgender volleyball student-athlete was dangerous and/or were concerned about their safety.

Consistent with the TPP, USU's decision to act in line with state policy and the input of its student athletes and to cancel the regular season match against SJSU resulted in a forfeit that the MWC charged as a loss for USU and a win for SJSU. But had USU somehow forced its team to play the match contrary to some team members' concerns implicating USU's Title IX obligations, USU would have risked violating Title IX's provisions and losing federal funding. USU has a protected interest in ensuring its compliance with Title IX to maintain continued receipt of an important funding source to help further USU's mission.

7

Second, and regardless of the Title IX funding, USU's volleyball program has been harmed by the application of the forfeiture provision of the TPP and will be further harmed if the policy is enforced during the MWC tournament. Had USU's cancellation of its regular season match against SJSU been treated as a no-contest and not a loss (as is the case under other situations where a game is not played), USU would retain the opportunity to win the conference outright and have a 1 seed in the conference tournament and be much more likely to make the NCAA tournament. Instead, because USU was awarded a loss for the match cancellation and because SJSU has been awarded a win, USU currently shares third place and its likelihood of a number 1 or 2 seed is significantly diminished.

The loss of an opportunity to win a championship and to play in the NCAA tournament harms USU's program by reducing opportunities for competition, including the opportunity for the USU volleyball program to play on a national stage and thereby grow its prominence in the sport and its national reputation. Consequently, USU's future recruiting opportunities are also likely to be harmed.

All of these interests could be impeded by resolution of the preliminary injunction in favor of Defendants. USU therefore has a protectable interest in Plaintiffs PI Motion.

C. **The PI motion's resolution may impair USU's interests.**

This element "presents a minimal burden." *W. Energy All*, 877 F.3d 1157, 1167 (10th Cir. 2017) (quoting *WildEarth Guardians*, 604 F.3d at 1199)). Movants need only show it is "possible" that their asserted interests will be impaired. *W. Energy All.*, 877 F.3d 1157, 1167 (10th Cir. 2017). For the reasons just given, USU satisfies this element too. USU's interests in the well-being of its women's volleyball members and student athletes, the success of its team at

the MWC tournament and potentially the NCAA tournament, and its compliance obligations under Title IX could all possibly be affected by the Court's resolution of the PI Motion.

### D. Plaintiffs do not adequately represent USU's interests.

Finally, Plaintiffs do not adequately represent USU's interests. The Tenth Circuit views this element as requiring only a "'minimal'" showing and the "'[t]he possibility of divergence of interest need not be great in order to satisfy'" the movant's burden. *W. Energy All.*, 877 F.3d at 1168 (quoting *WildEarth Guardians v. United States Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

Here, USU meets its minimal burden to show its interests may vary from Plaintiffs' interests. That's readily apparent from the fact that Plaintiffs' Complaint and PI Motion allege USU is part of the problem—suppressing volleyball members' free speech rights—rather than part of the solution. *See, e.g.,* Complaint ¶¶ 430-66, PI Mot. at 10-11. USU disputes those allegations. That disagreement need not be resolved now, but it does show that the Plaintiffs may not adequately represent USU's interests and, in fact, may take a materially adverse position to USU if Plaintiffs think it benefits their own claims and interests.

And Plaintiffs' claims differ markedly from USU's claim. Plaintiffs—all individuals and mostly former and current MWC women volleyball players—assert twelve causes of action spanning the First and Fourteenth Amendments, section 1983, Title IX, fraud, and negligent misrepresentation against a number of different Defendants, including the MWC, its commissioner, SJSU's governing board, and SJSU employees. Complaint ¶¶ 633-776. The Complaint also seeks a range of remedies: declaratory judgments, injunctions, monetary compensation, punitive damages, and attorney's fees. *Id.* at 126-28.

In contrast, USU's proposed complaint in intervention asserts a single cause of action alleging a Title IX violation by a single Defendant—the MWC—and requests limited relief declaring the TPP invalid, an injunction rescinding USU's TTP-imposed loss, and prohibiting the TPP's application at the MWC tournament. The differences in the scope of the parties' claims could easily lead to a divergence of interests.

To be sure, USU's and the Plaintiffs' requested relief in the PI proceedings are more aligned. But that doesn't mean their interests necessarily overlap. The Tenth Circuit "decline[s] to equate relief and interests." *Kane Cnty., Utah v. U.S.*, 94 F.4th 1017, 1032 (10th Cir. 2024) (stating "the pertinent inquiry is not whether SUWA and the United States are pursuing the same relief—we accept that they are—but instead is whether they have *identical* interests in pursuing that relief").

While Plaintiffs' claims and relief are more varied, they remain individual plaintiffs with more narrow interests. USU, on the other hand, is a state university that must consider a broader range of interests in pursuing its claim and relief. The individual Plaintiffs here do not adequately represent a public university's broader range of interests. *Cf. W. Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017) ("[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor . . . .").

In sum, USU satisfies the requirements to intervene as of right. That's especially true given this circuit's liberal approach to granting intervention and relaxed standards in cases involving issues of significant public importance.

**II.      Alternatively, the Court should grant USU permissive intervention.**

Even if the Court declines USU's request to intervene as of right, the Court should grant USU permissive intervention. On timely motion, the Court may permit "anyone" to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As already discussed, USU timely filed this motion. And, both USU and Plaintiffs assert a claim that the MWC TPP violates Title IX by denying equal opportunities for women. *See* attachment 1; Complaint ¶¶ 633-58; PI Mot. at 13-21. While the Plaintiffs' and USU's Title IX claims are not identical, they still share at least some common questions of law or fact focusing on Title IX's equal opportunity requirements and how the MWC TPP violates those obligations. That commonality justifies intervention here.

To be sure, the Court must also consider whether permissive intervention would unduly delay or prejudice adjudication of the existing parties' rights. Fed. R. Civ. P. 24(b)(3). But that won't happen if USU intervenes as explained above.

**Conclusion**

For the foregoing reasons, the Court should grant USU's motion for limited intervention as Plaintiff for purposes of the preliminary injunction involving the MWC women's volleyball tournament.

Respectfully submitted,


 /s/ Andrew Nussbaum
Andrew Nussbaum
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Telephone: 719-428-2386
Email: andrew@first-fourteenth.com

and

Sean D. Reyes
Utah Attorney General

 /s/ Stanford Purser
Stanford Purser (admission pending)
Office of the Utah Attorney General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
Telephone: 801-366-0533
Email: spurser@agutah.gov

*Counsel for Intervenor-Plaintiff*
*Utah State University*

### Artificial Intelligence Certification

I certify that no portion of this filing was drafted by artificial intelligence.

/s/ Stanford Purser
Stanford Purser (admission pending)
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, Utah 84111
Telephone 801-366-0533
Email: spurser@agutah.gov

### Certificate of Conferral

Undersigned USU counsel conferred via email with the parties' counsel about their position on this motion to intervene. Plaintiffs do not oppose the motion. Defendants, the Mountain West Conference and Commissioner Gloria Nevarez, do not oppose the motion. Defendants Board of Trustees of the California State University and the individual San Jose State University employees take no position on the motion.

/s/ Stanford Purser
Stanford Purser (admission pending)
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, Utah 84111
Telephone 801-366-0533
Email: spurser@agutah.gov

## Certificate of Service

I hereby certify that on 18 November 2024 a true, correct and complete copy of the foregoing was filed with the Court and served via the electronic filing system and/or by electronic mail as follows:

Bryan Heckenlively
Helen White
Munger Tolles & Olson, LLP
Bryan.heckenlively@mto.com
Helen.white@mto.com

*Counsel for Board of Trustees of the California University System, Laura Alexander, and Todd Kress*

Wesley R. Powell
Willkie Farr & Gallagher LLP
wpowell@wilkie.com

*Counsel for the Mountain West Conference*

/s/ Andrew Nussbaum
Andrew Nussbaum
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Telephone 719-428-2386
Email: andrew@first-fourteenth.com

14