IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03155-SKC-MDB

BROOKE SLUSSER, et al.,

    Plaintiffs,

and

UTAH STATE UNIVERSITY

    Proposed Intervenor-Plaintiff,

v.

THE MOUNTAIN WEST CONFERENCE, et al.,

    Defendants.

**COMPLAINT IN INTERVENTION
FOR EMERGENCY DECLARATORY AND INJUNCTIVE RELIEF**

    Utah State University (USU), by and through its counsel the Utah Attorney General's Office, seeks emergency declaratory and injunctive relief against Defendant Mountain West Conference (MWC), declaring that the MWC's Transgender Participation Policy (TPP) violates Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (Title IX), and enjoining the MWC from enforcing the TPP at the upcoming conference volleyball tournament.

**JURISDICTION AND VENUE**

    1. USU's Complaint involves a federal question. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

    2. This Court has jurisdiction to provide the relief requested pursuant to 28 U.S.C. §§ 2201 and 2202.

1

3. This Court has personal jurisdiction over the MWC because the MWC is incorporated in Colorado.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the MWC's principal place of business is located in this district in Colorado Springs, Colorado.

## PARTIES

5. Proposed Intervenor-Plaintiff USU is a body politic and corporate under the laws of Utah with a principal place of business in Logan, Utah.

6. Defendant MWC is a Colorado non-profit corporation with a principal place of business in Colorado Springs, Colorado.

## FACTUAL ALLEGATIONS

7. USU is a public land-grant research R1 university with a competitive Division 1-A intercollegiate athletics program. USU is a member of the MWC, and its intercollegiate athletics programs compete in this conference.

*The Mountain West Transgender Participation Policy*

8. In 2022, the MWC adopted the TPP. Under this policy, the decision regarding whether a transgender athlete is permitted to participate is left to the MWC member institutions. If an institution permits transgender athletes to participate in their programs, the institution must certify the student athlete's eligibility per the NCAA transgender participation standards.

9. Additionally, the TPP provides that "a transgender athlete who has been deemed eligible by the NCAA and has been included on a MW member institution's team shall be permitted to participate in all Conference competitions." And, that "a MW member may not, . . . preclude

2

student-athletes from other MW member institutions from participation in accordance with the policy . . . ."

10. The policy also provides that "If a MW member institution's team refuses to compete in an intraconference contest against a fellow MW member institution's team which includes an eligible transgender student-athlete(s), the team refusing to participate shall be deemed to have forfeited the contest. The forfeiting team will be charged with a loss and the opposing team credited with a win – for the purposes of Conference records, standings, tie-breaking formulas and MW championships participation."

***The Mountain West Transgender Participation Policy Forces USU to Act Contrary to the Policies of its State and Harms the Institution and Its Student Athletes.***

11. USU women's volleyball is an emerging program with continued success in the MWC.

12. Through the talent and strength of its student-athletes, USU has claimed a MWC championship title in each of the last three seasons. In 2021, USU shared the regular-season championship with Colorado State University. In 2022, USU won the conference tournament championship. In 2023, USU won the regular-season championship and played for the championship in the conference tournament. USU's student athletes and coaching staff have consistently received conference and national awards for their achievements.

13. As a result of its competitive success in the MWC, USU women's volleyball earned a bid to the NCAA tournament in both 2022 and 2023.

14. These achievements have sustained the program and enabled it to build on its success by retaining and recruiting top-level talent in both the player and coaching ranks.  The achievements have also increased fan interest in the program and driven donor support for USU women's volleyball.

3

15. As the 2024 season has proceeded, USU is once again performing at a high level and at or near the top of the conference in the standings, as well as a variety of performance measures, including hitting percentage, kills, and assists.

16. Thus, it is no surprise that USU once again has an opportunity to win the regular-season championship and be seeded in the number 1 slot in the MWC tournament. Both USU's regular season standing and its performance in the MWC tournament impact USU's opportunity to participate in the NCAA tournament.

17. These opportunities, however, have been diminished by implementation and enforcement of the TPP by the MWC.

18. On October 2, 2024, USU decided that its women's volleyball team would not participate in its scheduled October 23, 2024, volleyball match against San Jose State University (SJSU).

19. This decision was informed by two important factors: (1) State of Utah policy, and (2) the input of the members of USU's women's volleyball team.

20. As a matter of policy, the Utah legislature has found that the 2024 amendments to the Title IX regulations "disadvantage women and girls who participate in women's and girl's sports requiring that they compete against biological males." H.J.R., 2024 Leg. Sess. (Utah 2024).

21. In asking USU to pursue this motion, the state of Utah has further communicated its commitment to providing female athletes a safe playing field, fair competition and equal opportunities and has concluded that requiring female athletes to compete against transgender athletes undermines these protections and places female athletes at unreasonable risks."

22. The state of Utah's policy position reflects the fairness and safety concerns, as well as the political opinions, of the members of the USU women's volleyball team.

4

23. Plaintiff and USU student athlete Kailey Ray has expressed her concerns about fairness and physical safety in seeking relief from this Court, including injunctive action.

24. Student athletes on the team agree with Ms. Ray. In October 2024 in response to an anonymous survey, the majority of student athletes on the women's volleyball team indicated that they did not want to play the October 23 match against SJSU due to concerns of fairness and to communicate that they do not agree with the TPP and hold strong personal and political beliefs that transgender women should not be permitted to compete in women's sports. Some of the student athletes indicated that competing against a transgender volleyball student-athlete was dangerous and/or were concerned about their safety.

25. Consistent with the TPP, USU's decision to act in line with state legislative policy and the input of its student athletes and to cancel the October 23 match resulted in a forfeit that the MWC charged as a loss for USU and a win for SJSU.

26. USU's volleyball program has been harmed by the application of the forfeiture provision of the TPP and will be further harmed if the policy is enforced during the MWC tournament.

27. Had USU's cancellation of the October 23, 2024 match been treated as a no-contest and not a loss (as is the case under other situations where a game is not played), USU would retain the opportunity to win the conference outright and have a 1 seed in the conference tournament and be much more likely to make the NCAA tournament.

28. Teams with a better winning percentage receive higher seeds and the top two seeds get a bye for the first round of the tournament. Higher seeds and first round byes increase the likelihood that a team will win the three-day MWC tournament and the automatic entry into the NCAA tournament.

5

29. Instead, because USU was awarded a loss for the match cancellation and because SJSU has been awarded a win, USU currently shares third place and its likelihood of a number 1 or 2 seed is significantly diminished.

30. The loss of an opportunity to win a championship and to play in the NCAA tournament harms USU's program by reducing opportunities for competition and competitive success, including the opportunity for the USU volleyball program to play on a national stage and thereby grow its prominence in the sport and its national reputation. Consequently, USU's future recruiting opportunities are also likely to be harmed.

## CAUSE OF ACTION

### COUNT I – Title IX Deprivation of Equal Opportunities

*Against MWC*

31. The foregoing allegations in paragraphs 1 to 31 above are hereby incorporated by reference into Count I for relief as if fully set forth.

32. This Count sets forth claims by USU against the MWC.

33. The MWC exercises control over aspects of its members' athletics programs, including rules for participation in interconference play and is therefore subject to Title IX. *Williams v Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1294 (11th Cir. 2007).

34. Title IX requires sex-based distinctions when necessary to ensure equal opportunity for female student athletes. *See, e.g., Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 828 (10th Cir. 1993) (in the context of college athletics, "an institution may violate Title IX simply by failing to accommodate effectively the interests and abilities of student athletes of both sexes"). In this circuit, the District of Kansas recently held that Title IX's "unambiguous plain language . . .

6

make[s] clear that the term 'sex' means the traditional concept of biological sex." *Kansas v. United States Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3273285, at *8 (D. Kan. July 2, 2024).

35. The MWC TPP violates Title IX's mandate that women athletes be given an equal opportunity, which requires institutions to "fully and effectively accommodate the interests and abilities of its women athletes." *Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 831 (10th Cir. 1993).

36. The MWC TPP violates Title IX because its forfeiture policy—which punishes USU women's volleyball for not playing against a team with a transgender athlete—diminishes the opportunity for women athletes and thereby denies equal opportunity for the women athletes on the USU women's volleyball team.

37. The MWC TPP violates Title IX because it elevates participation by transgender student-athletes above—and at the expense of—other Title IX considerations, especially Title IX's mandate that women athletes be given an equal opportunity to compete.

38. As set forth in the facts above, the MWC TPP's forfeiture provision denies USU an equal opportunity to compete for the NCAA tournament in violation of Title IX because the provision materially affects USU's seeding in the MWC tournament—denying USU women's volleyball a chance to compete on an equal basis in that tournament for a bid to the NCAA tournament, which harms not only the individual players but the entire team. USU's volleyball program followed clear state policy (Utah Code §§ 53G-6-901 to -903 and 53G-6-1001 to -1006; *see also* H.J.R., 2024 Leg. Sess. (Utah 2024)) on the participation of transgender athletes in women's sports in incurring the forfeit against San Jose State and has thereby been harmed by the application of the MWC

7

TPP's forfeiture provision and will be further harmed if the provision is implemented during the MWC tournament.

## PRAYER FOR RELIEF

WHEREFORE, USU requests the following relief.

A. Emergency declaratory relief, declaring that the TPP violates Title IX.

B. Emergency injunctive relief, rescinding the loss that USU was given for refusing to play San Jose State University.

C. Emergency injunctive relief, enjoining the MWC from enforcing the TPP's forfeiture provisions at the upcoming conference tournament.

Respectfully submitted this 18th day of November 2024.

/s Andrew Nussbaum
Andrew Nussbaum
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Telephone 719-428-2386
Email: andrew@first-fourteenth.com

and

Sean D. Reyes
Utah Attorney General
/s Stanford Purser
Stanford Purser (admission pending)
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, Utah 84111
Telephone 801-366-0533
Email: spurser@agutah.gov

*Counsel for Intervenor-Plaintiff Utah State University*

8

## Certificate of Service

I certify that on November 18, 2024, a true and correct copy of the foregoing proposed complaint was filed electronically as an attachment to USU's motion to intervene. Notice of this filing was served by operation of the Court's electronic filing system on the following parties who have appeared in this case.

>Bryan Heckenlively
>Helen E. White
>Munger Tolles & Olson, LLP
>560 Mission Street, 27th Floor
>San Francisco, CA 94105
>bryan.heckenlively@mto.com
>helen.white@mto.com

*Counsel for Board of Trustees of the California University System, Laura Alexander, and Todd Kress*

>Wesley R. Powell
>Willkie Farr & Gallagher LLP
>787 Seventh Avenue
>New York, NY 10019-6099
>wpowell@willkie.com

*Counsel for the Mountain West Conference*

>/s Andrew Nussbaum
>Andrew Nussbaum
>First & Fourteenth PLLC
>2 N. Cascade Ave., Suite 1430
>Colorado Springs, CO 80903
>Telephone 719-428-2386
>Email: andrew@first-fourteenth.com

### Certificate of Conferral

USU's counsel sought the parties' position, through counsel, about USU's motion to intervene, of which this proposed complaint is being filed as an attachment thereto. Because the proposed complaint standing alone is not a motion, undersigned counsel did not seek the parties' position on the this complaint.

    /s/ Stanford Purser
Stanford Purser (admission pending)
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, Utah 84111
Telephone 801-366-0533
Email: spurser@agutah.gov

### Artificial Intelligence Certification

I certify that no portion of this filing was drafted by artificial intelligence.

    /s/ Stanford Purser
Stanford Purser (admission pending)
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, Utah 84111
Telephone 801-366-0533
Email: spurser@agutah.gov