IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03155-SKC-MDB

BROOKE SLUSSER, *et al.*,
Plaintiffs,

v.

THE MOUNTAIN WEST CONFERENCE, *et al.*,
Defendants.

---

**DEFENDANTS THE MOUNTAIN WEST CONFERENCE AND GLORIA
NEVAREZ'S MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 3

LEGAL STANDARD .................................................................................................. 6

ARGUMENT .............................................................................................................. 7

I.      Plaintiffs' Constitutional and Title IX Claims Fail Because the MWC
        Defendants Are Not State Actors Under Section 1983.  (Counts I, II,
        IV, V, VI, VII, and VIII). ................................................................................ 7

        a.      The MWC Is Not a State Actor Subject to Section 1983 Liability. ........ 7

        b.      Commissioner Nevarez Is Not a State Actor Subject to Section
                1983 Liability. ................................................................................... 10

II.     Plaintiffs' Title IX Claims Fail Because Neither the MWC nor the
        Commissioner Is Subject to Title IX.  (Counts I and II). ............................... 11

III.    Supreme Court and Tenth Circuit Law Forecloses Plaintiffs' Title IX
        and Equal Protection Claims.  (Counts I, II, and IV). .................................... 16

IV.     Plaintiffs' First Amendment Claims Should Be Dismissed.  (Counts VI,
        VII, and VIII). ............................................................................................... 20

        a.      The TPP Applies to Member Institutions, Not Individual
                Players. .............................................................................................. 20

        b.      The MWC Defendants Did Not Stifle Plaintiffs' Expressive
                Conduct. ............................................................................................. 22

V.      Plaintiffs' Bodily Privacy Claims Fail.  (Count V). ....................................... 23

VI.     Claims Relating to Ineligible Student-Athletes Are Moot. ............................. 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
  75 F.4th 760 (7th Cir. 2023), *cert. denied sub nom. Metro. Sch. Dist.
  of Martinsville v. A. C.*, 144 S. Ct. 683 (2024) ...................................................... 18

*Ark. Times LP v. Waldrip ex rel. Univ. of Ark. Bd. of Trs.,*
  37 F.4th 1386 (8th Cir. 2022)................................................................................. 21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................. 6

*Bauchman ex. rel. Bauchman v. W. High Sch.,*
  132 F.3d 542 (10th Cir. 1997) .............................................................................. 24

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 6, 7

*Bostock v. Clayton Cnty., Georgia,*
  590 U.S. 644 (2020) .........................................................................................16, 17

*Bowers v. NCAA,*
  118 F. Supp. 2d 494 (D.N.J. 2000) ...................................................................... 14

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
  531 U.S. 288 (2001) .............................................................................................. 10

*Byrd v. Ind. Sch. Dist. No. 8 of Tulsa Cnty.,*
  No. 23-CV-00404, 2024 WL 4350800 (N.D. Okla. Sept. 30, 2024) ...................... 15

*A.B. ex rel. C.B. v. Haw. State Dep't of Educ.,*
  386 F. Supp. 3d 1352 (D. Haw. 2019) .................................................................. 15

*Clark v. Ariz. Interscholastic Ass'n,*
  695 F.2d 1126 (9th Cir. 1982), *cert. denied,* 464 U.S. 818 (1983)........................ 10

*Clementine Co., v. Adams,*
  74 F.4th 77 (2d Cir. 2023) .................................................................................... 22

*Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*,
    80 F. Supp. 2d 729 (W.D. Mich. 2000) ................................................................ 15

*Corder v. Lewis Palmer Sch. Dist. No. 38*,
    566 F.3d 1219 (10th Cir. 2009) ......................................................................... 24

*Cureton v. NCAA*,
    198 F.3d 107 (3d Cir.1999) ............................................................................... 14

*Day v. Career Bldg. Acad.*,
    No. 18-CV-00837, 2021 WL 4260797 (D. Colo. Sept. 20, 2021) ................. 12, 15

*Dimas v. Pecos Indep. Sch. Dist. Bd. of Educ.*,
    No. 23-2064, 2024 WL 1881076 (10th Cir. Apr. 30, 2024) ................. 12, 15, 18

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*,
    897 F.3d 518 (3d Cir. 2018) ......................................................................... 19, 23

*DTC Energy Grp. v. Hirschfeld*,
    912 F.3d 1263 (10th Cir. 2018) ......................................................................... 25

*Edmonds-Radford v. Sw. Airlines Co.*,
    No. 16-CV-02860-LTB-STV, 2020 WL 13897201 (D. Colo. Mar. 6,
    2020), *aff'd*, 13 F.4th 1107 (10th Cir. 2021), *opinion withdrawn and
    superseded on reh'g,* 17 F.4th 975 (10th Cir. 2021), and *aff'd*, 17
    F.4th 975 (10th Cir. 2021) ................................................................................. 13

*Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*,
    263 F.3d 1151 (10th Cir. 2001) ........................................................................... 7

*Fischbach v. N.M. Activities Ass'n*,
    38 F.3d 1159 (10th Cir. 1994) ........................................................................... 24

*Fowler v. Stitt*,
    104 F.4th 770 (10th Cir. 2024) ......................................................................... 17

*Free Speech v. Fed. Election Comm'n*,
    720 F.3d 788 (10th Cir. 2013) ............................................................................. 6

*Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*,
    245 F.3d 1172 (10th Cir. 2001) ......................................................................... 17

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021) ................ 18

*Hecox v. Little*,
104 F.4th 1061 (9th Cir. 2024), *as amended* (June 14, 2024) ............................. 19

*Horner v. Ky. High Sch. Athletic Ass'n*,
43 F.3d 265 (6th Cir. 1994) ................................................................................. 15

*Houston v. Mile High Adventist Acad.*,
846 F. Supp. 1449 (D. Colo. 1994)....................................................................... 12

*B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ.*,
98 F.4th 542 (4th Cir. 2024), *cert. denied sub nom. W. Va.*
*Secondary Sch. Activities v. B. P. J.*, No. 24-44, 2024 WL 4805904
(U.S. Nov. 18, 2024) ..........................................................................15, 17, 18, 19

*Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n of Ill., Inc.*,
134 F. Supp. 2d 965 (N.D. Ill. 2001) .................................................................. 15

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) (en banc).........................................................19, 24

*Kirchner v. Marshall*,
No. 20-CV-00114-MEH, 2021 WL 243448 (D. Colo. Jan. 25, 2021) ...................... 7

*La. High Sch. Athletic Ass'n v. St. Augustine High Sch.*,
396 F.2d 224 (5th Cir. 1968) .............................................................................. 10

*Lane v. Simon*,
495 F.3d 1182 (10th Cir. 2007) .......................................................................... 24

*Mabry v. State Bd. of Cmty. Colls. & Occupational Educ.*,
813 F.2d 311 (10th Cir. 1987) ............................................................................ 17

*Muhammad v. Vectrus Sys. Corp.*,
No. 23-CV-02186, 2024 WL 1073216 (D. Colo. Mar. 12, 2024) ........................... 10

*National Collegiate Athletic Ass'n v. Tarkanian*,
488 U.S. 179 (1988) ......................................................................................*passim*

*NCAA v. Smith*,
525 U.S. 459 (1999) ........................................................................................2, 13

*Neal v. Colo. State Univ.-Pueblo*,
  No. 16-CV-873-RM-CBS, 2017 WL 633045 (D. Colo. Feb. 16, 2017),
  *report and recommendation adopted*, No. 16-CV-00873-RM-CBS,
  2017 WL 11696393 (D. Colo. Sept. 11, 2017) .................................................... 16

*O'Connor v. Williams*,
  640 F. App'x 747 (10th Cir. 2016) ........................................................................ 7

*Parents for Priv. v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) .............................................................................. 19

*Sgaggio v. Weiser*,
  No. 21-CV-00830-PAB-KMT, 2022 WL 252325 (D. Colo. Jan. 27,
  2022), *report and recommendation adopted,* No. 21-CV-00830-PAB-
  NYW, 2022 WL 425240 (D. Colo. Feb. 8, 2022) .................................................. 11

*Sharp v. Kean Univ*,
  153 F. Supp. 3d 669 (D.N.J. 2015) ..................................................................13, 16

*Smith v. NCAA*,
  266 F.3d 152 (3d Cir. 2001).................................................................................. 14

*Smith v. United States*,
  561 F.3d 1090 (10th Cir. 2009) ............................................................................ 13

*Spikes v. Car Toys, Inc.*,
  No. 21-CV-00681, 2024 WL 4135234 (D. Colo. Sept. 10, 2024).......................... 11

*Students and Parents for Priv. v. United States Dep't of Educ.*,
  No. 16-cv-4945, 2016 WL 6134121 (N.D. Ill. Oct. 18, 2016)................................ 23

*Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad.*,
  551 U.S. 291 (2007) .............................................................................................. 22

*Tennessee v. Dep't of Educ.*,
  104 F.4th 577 (6th Cir. 2024).........................................................................19, 24

*Throupe v. Univ. of Denver*,
  988 F.3d 1243 (10th Cir. 2021) ............................................................................ 17

*TikTok Inc. v. Garland*,
  No. 24-656, 2025 WL 222571 (U.S. Jan. 17, 2025).............................................. 20

*United States v. O'Brien,*
    391 U.S. 367 (1968) ................................................................................ 21

*Williams v. Bd. of Regents of Univ. Sys. of Ga.,*
    477 F.3d 1282 (11th Cir. 2007) ............................................................ 15

*Est. of Burgaz, ex rel. Zommer v. Bd. of Cnty. Comm'rs for Jefferson*
    *Cnty.,*
    No. 1:19-CV-01383, 2021 WL 168441 (D. Colo. Jan. 19, 2021), *aff'd,*
    30 F.4th 1181 (10th Cir. 2022) .............................................................. 6

**Statutes**

20 U.S.C. § 38 ............................................................................................... 1

20 U.S.C. § 1681 .................................................................................... 11, 12

20 U.S.C. § 1687 .................................................................................... 11, 12

42 U.S.C. § 1983 ...........................................................................1, 7, 8, 9

42 U.S.C. § 2000d ..................................................................................... 14

## PRELIMINARY STATEMENT

Plaintiffs allege that the Mountain West Transgender Participation Policy ("TPP"), which governs the treatment of transgender athletes in the context of Mountain West Conference ("MWC") intraconference play, constitutes sex discrimination under Title IX[1] and infringes Plaintiffs' rights under the First Amendment and Equal Protection Clause of the Fourteenth Amendment. But these allegations—directed at both the MWC and its Commissioner, Gloria Nevarez[2]—fail to state any claim for relief and should be dismissed under Rule 12(b)(6).

As a threshold matter, both the MWC and the Commissioner (the "MWC Defendants") are improper targets of Plaintiffs' claims. *First*, Plaintiffs assert all of their claims pursuant to Section 1983, which provides a basis for civil claims only against parties acting "under color of any statute, ordinance, regulation, custom or usage, of any State[.]"[3] But in *NCAA v. Tarkanian*, 488 U.S. 179 (1988), the Supreme Court held that a multistate intercollegiate athletic conference's rule-making and enforcement is not derived from state law, but rather from the conference's collective member schools, so Section 1983 provides no basis to sue. *Tarkanian* alone precludes *all* of Plaintiffs' claims against the MWC Defendants. *Second*, Plaintiffs fail to allege facts establishing an indispensable element of a Title IX claim: that the MWC Defendants receive federal funding. Supreme Court precedent holds—in the specific

---

[1]    Title IX of the Education Amendments, 20 U.S.C. § 38.
[2]    The "Commissioner" is named in her official capacity only.
[3]    42 U.S.C. § 1983.

1

context of a Title IX claim against a multistate intercollegiate athletic conference—
that a failure to allege receipt of federal funds mandates dismissal of a complaint.
*NCAA v. Smith*, 525 U.S. 459, 470 (1999).

Plaintiffs' claims would require dismissal even if the Court decided that
Section 1983 and Title IX apply to the MWC Defendants.    Plaintiffs' First
Amendment claims boil down to the assertion that the TPP's provision that assigns
a forfeit to an MWC "member institution's team" that "refuses to compete in an
intraconference contest against a fellow MW member institution's team which
includes an eligible transgender student-athlete(s)" (the "Forfeit Provision")
penalizes Plaintiffs' exercise of their First Amendment rights to boycott and protest
games involving transgender players.  These claims fail for at least two reasons.
*First*, the plain language of the TPP makes clear that the Forfeit Provision does not
apply to Plaintiffs or other individual players; rather, it applies to a "member
institution's team."  The Complaint expressly alleges that certain Plaintiffs refused
to play against a team with a purported transgender player, but there is no allegation
that the MWC deemed that match forfeited because of those players' decision to
boycott the game; rather, the MWC imposed a forfeit *on the member institution* when
*it* decided not to play the game.[4]  *Second*, the Complaint is devoid of any allegation
that the MWC Defendants sought to prevent or penalize any Plaintiff's exercise of
expressive activity protected by the First Amendment; to the contrary, multiple

---

[4]    *See* Compl. ¶¶ 467-506.

Plaintiffs protested the inclusion of transgender players in MWC volleyball games with no penalty or other interference from the MWC.[5]

Plaintiffs' Title IX and Equal Protection claims fare no better. The crux of these claims is that allowing a transgender woman to play on a women's college team constitutes sex discrimination under both Title IX and Equal Protection and exposes the transgender athlete's cis-women teammates and opponents to physical and other harms in violation of Equal Protection. But these allegations collide with caselaw from the Supreme Court, Tenth Circuit, and other circuits holding that exclusion of transgender persons from employment, athletic programs, and other settings violates Title VII, Title IX, and/or Equal Protection. These precedents foreclose Plaintiffs' claims.

For these reasons and those below, the MWC Defendants respectfully request dismissal of all claims against them: Counts I, II, IV, V, VI, VII, and VIII.

## FACTUAL BACKGROUND[6]

Plaintiffs are nine 2024 season women's collegiate volleyball players, an Associate Head Coach of the San José State University ("SJSU") women's volleyball team, and two former SJSU women's volleyball team members. Complaint ("Compl.") ¶¶ 15-26, Dkt. 1. Plaintiff Slusser is a senior co-captain on the SJSU women's

---

[5]    *See* Compl. ¶¶ 311, 445, 453-56, 496.
[6]    Defendants treat Plaintiffs' factual allegations as true only for the purposes of the present motion to dismiss.

volleyball team.[7]  Compl. ¶ 15.  Additionally, Plaintiffs Ray (Utah State University); Boggs, Grizzle, and Sandy (University of Wyoming); and Katelyn and Kiersten Van Kirk (Boise State University) are all 2024 women's volleyball players on teams that compete in the MWC.  *Id.* ¶¶ 16-26.  Plaintiffs seek relief against the MWC Defendants and the CSU Defendants.[8]

The MWC is a nonprofit corporation headquartered in Colorado Springs, Colorado.  *Id.* ¶ 27.  The MWC is a private membership organization, whose members are comprised of private and public universities located in California, Colorado, Hawaii, Idaho, Nevada, New Mexico, Utah, Washington, and Wyoming.  *Id.* ¶¶ 35-41.  Each institution pays dues to the MWC, and each member university shares equally in any net revenues that the MWC generates.  *Id.* Appx. A at 118.

Plaintiffs challenge the TPP.  MWC has no policy on whether a member institution may permit a transgender athlete to participate in its intercollegiate athletic program.  *See* Compl. Appx. A at 113 (2024-2025 Mountain West Handbook, Appx. J).  Instead, the decision to roster a transgender athlete is "a matter of that individual institution's discretion in the context of its interaction with the individual, the application of state law, etc."  *Id.* at 113.  The TPP applies only when a member institution team that includes a transgender student-athlete competes against

---

[7]    Slusser is also a plaintiff in a near-identical Title IX lawsuit filed in the United States District Court for the Northern District of Georgia, *Gaines v. NCAA*, No. 1:24-cv-01109 (N.D. Ga. Mar 14, 2024).  *See* P.I. Opp., Dkt. 27 at 4.

[8]    CSU Defendants are the Board of Trustees of CSU, and Laura Alexander, Todd Kress, and Michelle McDonald Smith in their individual and official capacities.

another MWC team. *Id.* If a *member institution* refuses to play a scheduled game against an MWC team with a transgender athlete, the refusing team is deemed to forfeit the game for purposes of determining Conference standings. *Id.*

The Complaint alleges that SJSU's women's volleyball team included a transgender woman during the 2024 season. Compl. ¶ 85. On September 27, 2024, Boise State University ("BSU") gave notice that it "will not play its scheduled match at San José State on Saturday, Sept. 28. Per Mountain West Conference policy, the Conference will record the match as a forfeit and a loss for Boise State." *Id.* ¶¶ 340-44. The University of Wyoming ("UW") volleyball team did not play its match against SJSU scheduled on October 5, 2024. *Id.* ¶ 613. Utah State University ("USU") did not participate in its volleyball match against SJSU scheduled for October 23, 2024. *Id.* ¶¶ 610, 616. Boise State declined to play SJSU a second time, and other member schools followed suit. *See id.* ¶¶ 613 (UW), 616 (USU), 618 (University of Nevada, Reno ("UNR")), 620 (BSU). All schools that declined to play SJSU's volleyball team were levied forfeits for standing purposes. *See generally id.* ¶¶ 688-719.

Beyond these *institutions' teams* that declined to play SJSU, several individual Plaintiffs have publicly and privately protested the participation of transgender athletes in women's collegiate volleyball more generally, at times garnering "widespread attention" for their causes. *See, e.g., id.* ¶¶ 453-56. Similarly, 13 of the 17 members of the women's volleyball team at MWC member UNR, including Plaintiffs Sia Liilii and Nicanora Clarke, publicly announced that they would not play

the school's match against SJSU scheduled for October 25, 2024. *Id.* ¶ 496. In response, UNR issued a statement noting that the players' decision "does not represent the position of the University" and that it intended to play the upcoming game, but it would not punish any of the players. *Id.* ¶ 499. UNR ultimately forfeited the game pursuant to the TPP when it determined it had too few volleyball players to play the game, but neither UNR nor MWC disciplined any players. *Id.* ¶¶ 499, 504. In fact, the Complaint does not allege *any* instance in which the MWC Defendants sought to penalize any individual Plaintiff or other individuals for choosing not to play SJSU or otherwise protesting the TPP.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Conclusory allegations will not be considered when ruling on a motion to dismiss. *Est. of Burgaz, ex rel. Zommer v.*

*Bd. of Cnty. Comm'rs for Jefferson Cnty.*, No. 1:19-CV-01383, 2021 WL 168441, at *4
(D. Colo. Jan. 19, 2021), *aff'd*, 30 F.4th 1181 (10th Cir. 2022); *Erikson v. Pawnee Cnty.
Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001). Thus, any factual
allegations must "raise a right to relief above the speculative level." *Twombly*, 550
U.S. at 555.

## ARGUMENT

I.    **Plaintiffs' Constitutional and Title IX Claims Fail Because the MWC
      Defendants Are Not State Actors Under Section 1983. (Counts I, II, IV,
      V, VI, VII, and VIII).**

    *a.*    ***The MWC Is Not a State Actor Subject to Section 1983 Liability.***

"Section 1983 permits suits against persons who, acting under the color of state
law, deprive a United States citizen of his constitutional rights." *Kirchner v.
Marshall*, No. 20-CV-00114, 2021 WL 243448, at *6 (D. Colo. Jan. 25, 2021).
Accordingly, a "state actor" defendant is a "prerequisite" to relief under Section 1983.
*Id.* In other words, "liability attaches only to those . . . who carry a badge of authority
of a State and represent it in some capacity." *Tarkanian,* 488 U.S. at 191. "Whether
a defendant acts under color of state law is a legal determination to be made by the
court." *O'Connor v. Williams*, 640 F. App'x 747, 750-51 (10th Cir. 2016).

Plaintiffs fail to show that the MWC Defendants are state actors.[9]  The
Complaint does not allege that the MWC is formally part of any state government; to

---

[9]    The Complaint does not expressly allege that Counts I and VIII are being
       asserted against the MWC Defendants under 42 U.S.C. § 1983. Plaintiffs have

the contrary, the Complaint acknowledges that the MWC is a private entity constituted under Colorado law—i.e., a "Colorado Nonprofit Corporation." Compl. Appx. A at 116.  Unable to allege a formal connection between the MWC and any state government, Plaintiffs allege that the MWC's adoption of the TPP was state action because it "was adopted by state actors (i.e., University Presidents acting in their official capacities)." Compl. ¶ 370.  Plaintiffs also allege various other MWC "governance" roles played by representatives of the MWC's 14 member institutions. *See generally* Compl. ¶¶ 43-61.  None of these alleged connections between the MWC and its member institutions comes close to satisfying Section 1983's state action requirement.

The Supreme Court has directly addressed the applicability of the state action doctrine in the context of multistate educational athletic conferences in *Tarkanian*, and its holding forecloses any claim that the MWC is a state actor.  Jerry Tarkanian, UNLV's men's basketball coach, became the subject of an NCAA investigation of the school's recruiting practices.  *Tarkanian,* 488 U.S. at 179.  UNLV suspended Tarkanian, in part based on NCAA recommendations.  *Id.* Tarkanian sued the NCAA under the purported authority of Section 1983, alleging the NCAA violated his civil rights during the investigation and the school's suspension of him.  *Id.* The Supreme Court held that the NCAA was not acting under color of state law in connection with

_____

failed to identity any other basis for suit under these counts.  This is an independent reason for dismissing these two claims.

its investigation of Tarkanian, based on factors that apply equally here. *Id.* Noting that the NCAA, an association of member educational institutions spanning many States, is a "private party" that "adopts rules governing" intercollegiate athletics, the Court "assumed" that the State of Nevada "had some impact on the NCAA's policy determinations" by virtue of its public colleges' membership in the association. *Tarkanian,* 488 U.S. at 193. Yet the NCAA has many other member schools across many states, and those institutions "did not act under color of Nevada law." *Id.* So, "the source of the [legislation] adopted by the NCAA is not the State of Nevada, but the collective membership, the vast majority of which was located in other States." *Id.* at 179. As a result, UNLV's decision to suspend its coach "while in compliance with the NCAA's rules and recommendations, did not turn the NCAA's conduct into action under color of Nevada law." *Id.*

So too here. The MWC is a private, nonprofit corporation comprised of 14 public and private universities spread across 9 states. Compl. Appx. A at 116. The MWC issues and enforces policies, rules, and regulations governing intraconference athletic contests across all these states, which their members help determine and "agree[ ] to abide by and to enforce." *Tarkanian*, 488 U.S. at 183; Compl. Appx. A at 116. The TPP is among those policies. As with the NCAA, representatives of each of MWC's member schools—e.g., as members of the MWC's board of directors—played a role in issuing the TPP. Compl. ¶¶ 368-69. As a result, no single state was the source of the TPP (or any other MWC policies); rather, it was the MWC's "collective

membership, speaking through an organization that is independent of any particular State." *Tarkanian*, 488 U.S. at 193.

The Supreme Court has drawn a clear distinction between multistate athletic organizations like the NCAA and MWC and interscholastic conferences operating in a single State. In *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001), the Supreme Court found that the defendant TSSAA acted under color of state law for Section 1983 purposes because it operates only within Tennessee, and the source of its rule-making authority is the secondary schools within that single State. The Supreme Court highlighted the dispositive difference between the two circumstances: unlike the NCAA in *Tarkanian*, *Brentwood* concerned "an organization whose member public schools are all within a single State." *Id*. *Tarkanian* similarly noted that its ruling would "of course [] be different if the membership consisted entirely of institutions located within the same State." *Tarkanian*, 488 U.S. at 194 n.13. Courts in other cases involving single-state athletic conferences have confirmed this crucial distinction. *See Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126 (9th Cir. 1982), *cert. denied*, 464 U.S. 818 (1983); *La. High Sch. Athletic Ass'n v. St. Augustine High Sch.*, 396 F.2d 224 (5th Cir. 1968).

### b. Commissioner Nevarez Is Not a State Actor Subject to Section 1983 Liability.

Because the MWC is not a state actor, the Commissioner is not a state actor. *Muhammad v. Vectrus Sys. Corp.*, No. 23-CV-02186, 2024 WL 1073216, at *6 (D. Colo. Mar. 12, 2024) (stating "there is no dispute [that] Vectrus is a private company and

Mr. Rather, as its employee, is a private actor"). Even if the MWC were found to be a state actor (which it is not), "whether a defendant's conduct constitutes state action depends not on whether she was employed by a state actor, but whether her conduct is 'fairly attributable to the State.'" *Spikes v. Car Toys, Inc.*, No. 21-CV-00681, 2024 WL 4135234, at *6 (D. Colo. Sept. 10, 2024); *see also Sgaggio v. Weiser*, No. 21-CV-00830, 2022 WL 252325, at *4 (D. Colo. Jan. 27, 2022), *report and recommendation adopted*, No. 21-CV-00830, 2022 WL 425240, at *4 (D. Colo. Feb. 8, 2022) ("Although state employment generally suffices to 'render the defendant a state actor,' 'private conduct that is not fairly attributable to the State is simply not actionable under § 1983.'"). The Commissioner's duties involve the "authority to execute Conference policy," found in the MWC Handbook and Bylaws. Compl. Appx. A at 16. As with the MWC here and the NCAA in *Tarkanian*, the source of the Commissioner's authority is the collective membership of the MWC's members, not any particular state.

## II. Plaintiffs' Title IX Claims Fail Because Neither the MWC nor the Commissioner Is Subject to Title IX. (Counts I and II).

As shown above, Plaintiffs' Title IX claims fail under Section 1983 because Plaintiffs cannot allege that either the MWC or the Commissioner is a state actor. But these claims should be dismissed for the additional reason that the MWC Defendants are not subject to Title IX. Title IX only applies to "educational institutions" and "programs or activities" receiving Federal financial assistance. 20 U.S.C. § 1681 (defining Title IX educational institutions); and 20 U.S.C. § 1687

(defining Title IX programs and activities). The Complaint fails to allege facts sufficient to show that the MWC or the Commissioner meets either definition. Additionally, the Commissioner is not subject to Title IX claims, in either her personal or official capacity. *See Day v. Career Bldg. Acad.*, No. 18-CV-00837, 2021 WL 4260797, at *7 (D. Colo. Sept. 20, 2021). As with the threshold state actor determination, the Court determines whether a defendant is subject to Title IX as a matter of law. *Dimas v. Pecos Indep. Sch. Dist. Bd. of Educ.*, No. 23-2064, 2024 WL 1881076, at *3 (10th Cir. Apr. 30, 2024).

The MWC is a private, nonprofit athletic conference. Compl. Appx. A at 116. It is thus not a "public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education" as required by the definition of a Title IX "educational institution." 20 U.S.C. § 1681. Nor does the MWC meet the definition of a Title IX "program or activity." 20 U.S.C § 1687. It is not an instrumentality or entity of a state or local government. *Id.*

Even if the MWC otherwise met the definition of a Title IX educational institution, program, or activity, the MWC does not receive federal funding, which is "a necessary prerequisite to Title IX coverage." *Houston v. Mile High Adventist Acad.*, 846 F. Supp. 1449, 1457 (D. Colo. 1994); *see also* U.S. Department of Education, Office for Civil Rights (2021), *Title IX and Sex Discrimination* (specifically enumerating the types of institutions that receive federal funding and making no mention of privately funded athletic conferences). The Complaint does not allege that the MWC receives

money directly from the federal government. Plaintiffs' sole allegation is that the MWC received indirect funding (Compl. ¶¶ 37, 151, 164), which is insufficient under binding Supreme Court precedent.

In *NCAA v. Smith*, the Supreme Court held that the NCAA was not subject to Title IX simply because it receives dues from colleges that receive federal funding. 525 U.S. 459, 468 (1999) ("*Smith* I"). Plaintiff Smith alleged that the NCAA denied her eligibility to continue to play volleyball in certain postgraduate programs in violation of Title IX. *Id.* at 463. She claimed the conference was subject to Title IX because it received dues from its member institutions, which came in part from federal funding granted to the NCAA's public college members. *Id.* The Court rejected this argument, noting there was no way to determine NCAA dues were comprised of federal funds. *Id.* at 468; *see also Sharp v. Kean Univ*, 153 F. Supp. 3d 669, 674 (D.N.J. 2015) (dismissing Title IX claims against the NCAA for lack of allegations that the NCAA received federal financial assistance); *Edmonds-Radford v. Sw. Airlines Co.,* No. 16-CV-02860, 2020 WL 13897201, at *4 (D. Colo. Mar. 6, 2020), *aff'd*, 13 F.4th 1107 (10th Cir. 2021), *opinion withdrawn and superseded on reh'g*, 17 F.4th 975 (10th Cir. 2021), and *aff'd*, 17 F.4th 975 (10th Cir. 2021) (citing *Smith* I, "entities that only benefit economically from federal assistance are not" recipients under Title IX). Under *Smith* I, Plaintiffs' Title IX allegations based on the MWC's purported indirect receipt of, or economic benefit from, federal funding to its member institutions are legally insufficient. *See* Compl. ¶¶ 37, 151, 164.

Plaintiffs try to end run the MWC's lack of federal funding by alleging that "the MWC *controls* the organization and delivery of significant aspects of college sports for its member institutions" (Compl. ¶ 67 (emphasis added)), but this "control" theory too has been rejected in the context of a multistate intercollegiate athletic conference.  On remand from the Supreme Court's decision in *Smith* I, the Third Circuit addressed Plaintiff Smith's alternative contention that "the NCAA exercised controlling authority over its federally-funded member institutions because it had the power to establish rules governing intercollegiate athletics at member schools." *Smith v. NCAA*, 266 F.3d 152, 157 (3d Cir. 2001) ("*Smith* II").  The court rejected this theory and granted the NCAA's motion to dismiss because "[t]he fact that the institutions make. . . decisions cognizant of NCAA sanctions does not mean the NCAA controls them" such that members institutions' federal funding may be imputed to the NCAA.  *Id*. at 156.  In reaching this conclusion, *Smith* II followed *Cureton v. NCAA*, 198 F.3d 107 (3d Cir.1999), in which the Third Circuit held that the NCAA lacked controlling authority over its member institutions to make it liable under Title VI,[10] which likewise only applies to recipients of federal funds.  *Cureton* in turn relied on the Supreme Court's decision in *Tarkanian*, which "makes clear that the NCAA does not 'control' its members" because the ultimate decisions on intercollegiate athletics belong to the member schools.  *Cureton*, 198 F.3d at 116; *Tarkanian*, 488 U.S. at 197 (finding no NCAA control of member institutions); *see also Bowers v.*

---

[10]     42 U.S.C. § 2000d.

*NCAA*, 118 F. Supp. 2d 494, 527 n.25 (D.N.J. 2000) (rejecting "controlling authority" argument with respect to the NCAA); *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n of Ill., Inc.*, 134 F. Supp. 2d 965, 970-72 (N.D. Ill. 2001) (rejecting "controlling authority" theory with respect to a state amateur hockey association).[11]

Finally, Plaintiffs' Title IX claims against the Commissioner fail because individuals are not subject to Title IX claims, in either their personal or official capacity. *Dimas v. Pecos Indep. Sch. Dist. Bd. of Educ.*, No. 23-2064, 2024 WL 1881076, at *3 (10th Cir. Apr. 30, 2024) ("individuals cannot be held liable under Title IX"); *see also Day v. Career Bldg. Acad.*, No. 18-CV-00837, 2021 WL 4260797, at *7 (D. Colo. Sept. 20, 2021) (Title IX has "consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." (internal citations omitted)); *Byrd v. Ind. Sch. Dist. No. 8 of Tulsa Cnty.*, No. 23-CV-00404,

---

[11]    *See*, in comparison, courts finding "control" over federally funded institutions when they involve *single-state specific programs*. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007) (lawsuit brought against the University of Georgia, the University of Georgia athletic association, and university officials); *B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024), *cert. denied sub nom. W. Va. Secondary Sch. Activities v. B. P. J.*, No. 24-44, 2024 WL 4805904 (U.S. Nov. 18, 2024) (lawsuit brought against West Virginia state secondary schools activities commission, West Virginia and Harrison County boards of education, and their superintendents); *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265 (6th Cir. 1994) (lawsuit brought against Kentucky State Board of Education for Elementary and Secondary Education and Kentucky High School Athletic Association); *A.B. ex rel. C.B. v. Haw. State Dep't of Educ.*, 386 F. Supp. 3d 1352 (D. Haw. 2019) (lawsuit brought against Hawaii State Department of Education and Oahu Interscholastic Association); *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 80 F. Supp. 2d 729 (W.D. Mich. 2000) (lawsuit brought against Michigan High School athletic association and its representative council).

2024 WL 4350800, at *7 n.10 (N.D. Okla. Sept. 30, 2024) ("[A] Title IX claim can only be maintained against an entity receiving federal funding, not an individual."); *Sharp*, 153 F. Supp. 3d at 674. Additionally, "[t]his court and others have found official capacity claims are duplicative of the claim against the agency and should be dismissed on that basis." *Neal v. Colo. State Univ.-Pueblo*, No. 16-CV-873, 2017 WL 633045, at *8 (D. Colo. Feb. 16, 2017), *report and recommendation adopted*, No. 16-CV-00873, 2017 WL 11696393 (D. Colo. Sept. 11, 2017).

## III. Supreme Court and Tenth Circuit Law Forecloses Plaintiffs' Title IX and Equal Protection Claims. (Counts I, II, and IV).

Even if the MWC and the Commissioner were subject to Title IX or the Equal Protection Clause—which they are not—Plaintiffs do not state a claim under either basis. As this Court previously found, whether transgender individuals are permitted to participate on sex-segregated sports teams is a purely legal issue that does "not depend on the plaintiff's evidentiary showing." Dkt. 37 at 21 (citing *See A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023), *cert. denied sub nom. Metro. Sch. Dist. of Martinsville v. A. C.*, 144 S. Ct. 683 (2024)). And the relevant legal issue is readily resolved: Supreme Court and Tenth Circuit law precludes the conclusion Plaintiffs seek here—that the Equal Protection Clause and Title IX affirmatively require the *exclusion* of transgender athletes from collegiate women's sports. *Bostock v. Clayton Cnty.,* 590 U.S. 644, 660 (2020); *Fowler v. Stitt*, 104 F.4th 770, 793 (10th Cir. 2024). For these reasons as well, Counts I, II, and IV of the Complaint should be dismissed.

16

Plaintiffs' Title IX and Equal Protection claims rest on the assumption that prohibiting "sex discrimination" requires the *exclusion* of transgender women from women's sports. *See* Compl. ¶¶ 108-09, 152-53, 394. But this position is directly contrary to Supreme Court and Tenth Circuit precedent establishing that discrimination based on transgender status constitutes unlawful sex-based discrimination in violation of the Equal Protection Clause. *Fowler*, 104 F.4th at 793; *see also Bostock*, 590 U.S. at 660. And it collides with decisions from other Circuits that Title IX requires the *inclusion* of transgender women in women's sports. *See Jackson*, 98 F.4th 542.

In *Bostock*, the Supreme Court held that firing an employee based on transgender status constitutes unlawful sex-based discrimination under Title VII because "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 590 U.S. at 660. Although *Bostock* was decided in the context of Title VII rather than Title IX, Tenth Circuit courts "generally assess[] Title IX discrimination claims under the same legal analysis as Title VII claims." *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001); *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250-51 (10th Cir. 2021); *Mabry v. State Bd. of Cmty. Colls. & Occupational Educ.*, 813 F.2d 311, 316-17 (10th Cir. 1987). The Tenth Circuit has also adopted the reasoning of *Bostock* in the Equal Protection context. *Fowler*, 104 F.4th at 793.

17

Because discrimination based on transgender status is prohibited, if the MWC Defendants were to comply with Plaintiffs' request to cease to "enforce[e] or attempt[] to enforce the MWC TPP," the MWC would effectively render any otherwise eligible transgender athlete ineligible for participation, purely based on their transgender status. *See* Compl. Prayer for Relief ¶ 11. Any such action by the MWC Defendants would be in direct violation of *Bostock* and applicable Tenth Circuit law adopting *Bostock*, and would constitute purposeful discrimination on the basis of one's sex in violation of the Equal Protection Clause. *See Dimas*, 2024 WL 1881076, at n.9. Despite Plaintiffs' assertions to the contrary, it is clear that the TPP *furthers* the goals of the Equal Protection Clause, and complies with Tenth Circuit precedent, by ensuring that transgender athletes will not be discriminated against on the basis of their transgender status, and will have the opportunity to compete in NCAA athletics should they meet the other criteria imposed by the TPP. Compl. ¶¶ 633-58, 664-77.

In the specific context of interscholastic athletic opportunities, courts including the Fourth, Seventh, and Ninth Circuits have held that *excluding* transgender people from sports teams and facilities aligned with their gender identity violates Title IX and/or the Fourteenth Amendment. *See Jackson*, 98 F.4th 542 (sports under Title IX); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 619 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (restroom access under Title IX and equal protection); *A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024) (restrooms and locker rooms under Title IX and equal

protection); *Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2024), *as amended* (June 14, 2024) (sports under equal protection). *But see Tennessee v. Dep't of Educ.*, 104 F.4th 577, 610-11 (6th Cir. 2024) (interpreting Title IX regulations on restrooms and athletics "[w]ithout deciding any substantive merits questions"); *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 816 (11th Cir. 2022) (en banc) (restrooms under Title IX and equal protection).

Courts have also rejected Plaintiffs' specific position here: that *including* transgender women in collegiate women's sports teams violates Title IX. *See Tennessee*, 104 F.4th at 610-11 (rejecting that argument for restrooms and sports); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1227 (9th Cir. 2020) (restrooms and locker rooms); *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018) (restrooms). Similarly, courts have rejected Plaintiffs' position that *including* transgender women in collegiate women's sports teams violates the Fourteenth Amendment, noting that the government has no interest "in ensuring that cisgender girls do not lose ever to transgender girls." *Jackson,* 98 F.4th at 560; *see also Hecox*, 104 F.4th at 1085 (finding plaintiffs were not likely to succeed on the merits of their equal protection claim without a showing "that transgender women had displaced or were displacing cisgender women in sports or scholarships or like opportunities"). Plaintiffs' Title IX and Fourteenth Amendment claims against the MWC Defendants should be dismissed for this additional reason.

IV.    **Plaintiffs' First Amendment Claims Should Be Dismissed.  (Counts VI, VII, and VIII).**

    a.    ***The TPP Applies to Member Institutions, Not Individual Players.***

Plaintiffs allege that the TPP violates Plaintiffs' First Amendment rights, because the Forfeit Provision penalizes "MWC student-athletes," including certain Plaintiffs, for "boycotting intraconference contests against a fellow MWC member institution's team that includes a transgender student athlete" and engaging in other "expressive activity."  *See, e.g.*, Compl. ¶¶ 688-96.  But Plaintiffs ignore that the TPP—and particularly the Forfeit Provision—applies to *MWC member institutions*, not individual student-athletes.  Compl. Appx. A at 113.  A rule imposed on a member institution does not impair the expressive activity of a team's players.  "Indeed, the [TPP] does not regulate the [individual players] at all."  *See TikTok Inc. v. Garland*, No. 24-656, 2025 WL 222571, at *4 (U.S. Jan. 17, 2025) (holding policy banning social media application regulated corporation, not the expression of content creators).

The plain language of the TPP makes clear that it does not govern "whether a transgender athlete(s) will be permitted to participate in intercollegiate athletics for a particular MW member."  Compl. Appx. A at 113.  However, if a "member institution's team refuses to compete in an intraconference contest against a fellow *MW member institution's team* which includes an eligible transgender student-athlete(s), the team refusing to participate shall be deemed to have forfeited the contest."  *Id.* (emphasis added).  Nowhere does the TPP penalize any individual

athlete for choosing not to play against an MWC team that includes a transgender player.  *Id.*

Plaintiffs' own allegations show that the TPP does not penalize individual student-athletes for choosing not to play a game involving a transgender athlete.  In October 2024, 13 of the 17 members of the UNR women's volleyball team—including Plaintiffs Liilii and Clarke—publicly announced that they would "forfeit" the school's match against SJSU scheduled for October 25, 2024.  Compl. ¶¶467-97.  In response, UNR issued a statement that "[n]o players will be subject to any team disciplinary action" for declining to play SJSU but noted that the players' decision "does not represent the position of the University" and that the University intends to play the upcoming game.  *Id.* ¶ 499. Nowhere does the Complaint allege that the MWC Defendants sought to penalize any players for boycotting the game.  Only when UNR later informed the MWC that *its team* would not play SJSU did the MWC deem UNR to have forfeited the match.  *Id.* ¶ 506.  The Complaint cannot and does not allege any facts showing that the MWC penalized any individual volleyball player for their individual boycotting activity.[12]

---

[12]    In any event, pure boycotting activity—*i.e.*, not showing up to an event—alone does not constitute protected expressive activity.  *United States v. O'Brien*, 391 U.S. 367, 376 (1968) (First Amendment protects inherently expressive conduct, not a "limitless variety of conduct [that] can be labeled 'speech' whenever [one] . . . intends thereby to express an idea.").  Accordingly, it "does not extend to non-expressive conduct intended to convey a political message."  *Ark. Times LP v. Waldrip ex rel. Univ. of Ark. Bd. of Trs.*, 37 F.4th 1386, 1391 (8th Cir. 2022).

**b.    The MWC Defendants Did Not Stifle Plaintiffs' Expressive Conduct.**

The Complaint concedes that several Plaintiffs and other MWC women's volleyball players have publicly protested the TPP, SJSU's purported rostering of a transgender player, and the participation of transgender athletes in collegiate sports more generally. *See, e.g.*, Compl. ¶¶ 311, 445, 453-56, 496. Most notably, Plaintiff Ray and other members of the USU team wore shirts with the inscription "BOYcott" to practice and garnered "widespread attention" on social media for their cause. *Id.* ¶¶ 453-56. Similarly, 13 of the 17 members of the women's volleyball team at UNR, including Plaintiffs Liilii and Clarke, publicly announced that they would not play against SJSU. *Id.* ¶¶ 467-97. In response, UNR issued a statement that "[n]o players will be subject to any team disciplinary action" for protesting the upcoming game. *Id.* ¶ 499. Nowhere does the Complaint allege that the MWC Defendants took any action to prevent or even dampen Plaintiffs or other student-athletes from engaging in this expressive conduct. Even if the Forfeit Provision were deemed a restriction on Plaintiffs' speech—which it is not—it does not infringe protected speech. Where "regulation leaves open alternative channels for communicating the speech, they need not be perfect substitutes for those channels denied . . . by the regulation at hand," especially in the context of intercollegiate sports. *Clementine Co., v. Adams*, 74 F.4th 77, 88 (2d Cir. 2023) (citation omitted); *see also Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad.*, 551 U.S. 291, 299-300 (2007) ("Just as the government's interest in running an effective workplace can . . . outweigh employee

speech rights, so too can an athletic league's interest in enforcing its rules sometimes warrant curtailing the speech of its voluntary participants.").  Plaintiffs' public advocacy demonstrates that the MWC Defendants imposed no actionable restriction on their ability to protest SJSU's decision to roster an allegedly transgender player.

## V.  Plaintiffs' Bodily Privacy Claims Fail.  (Count V).

In Count V of their Complaint, Plaintiffs Slusser and Sugai allege that "by adopting and/or enforcing the NCAA TEP," the Commissioner and the MWC violate their Fourteenth Amendment Right to Bodily Privacy.  Compl. ¶ 681; Appx. C.  As set forth in Section I, *supra*, the Complaint fails to allege any facts showing that the MWC Defendants are state actors and thus are subject to Section 1983.  This alone forecloses Count V.  Additionally, Plaintiffs fail to point to any specific provision of the NCAA TEP that violates the Right to Bodily Privacy.  Compl. ¶¶ 101-10, 678-87.  Plaintiffs allege only that the adoption of the NCAA TEP constitutes a violation of bodily privacy rights because it "discriminated against women by allowing men who identified as transgender to access women's locker rooms and live with female student-athletes." Compl. ¶ 681.  But Circuit precedent undercuts Plaintiffs' position.  *See Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018) (no constitutional right not to share restrooms and locker rooms); *Students and Parents for Priv. v. United States Dep't of Educ.*, No. 16-cv-4945, 2016 WL 6134121, at *23

(N.D. Ill. Oct. 18, 2016) (same).[13]  In the absence of factual allegations demonstrating that the NCAA TEP has violated Plaintiffs' Right to Bodily Privacy, Count V fails.

## VI.    Claims Relating to Ineligible Student-Athletes Are Moot.

To the extent that the individual Plaintiffs have played for four years and are no longer eligible to play women's college volleyball following the conclusion of the 2024 MWC tournament (the "Ineligible Plaintiffs"),[14] they have no basis for ongoing relief with respect to the TPP.   "This circuit has held that when an individual graduates from school or no longer has an interest in participating in interscholastic athletic activity, an action to participate in such activity is deemed moot." *Fischbach v. N.M. Activities Ass'n*, 38 F.3d 1159, 1160-61 (10th Cir. 1994) ("Since [plaintiff] has graduated, the power of the [association] to adversely affect his rights has ended."); *see also Bauchman ex. rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 548 (10th Cir. 1997) (no relief since the plaintiff graduated and "the defendants no longer have the power or opportunity to adversely affect [plaintiff's] constitutional rights"); *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (finding since plaintiff had graduated the claims for declaratory and injunctive relief were moot); *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1225 (10th Cir. 2009) (same).   As a result, the Ineligible Plaintiffs have no basis (i) for injunctive or other prospective relief or (ii) to

---

[13]    *But see Tennessee v. Dep't of Educ.*, 104 F.4th 577, 610-11 (6th Cir. 2024); *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 816 (11th Cir. 2022).

[14]    Ineligible Plaintiffs include, but are not limited to, Brooke Slusser, Alyssa Sugai, Macey Boggs, and Aleah Liilii.

seek money damages with respect to the period after the conclusion of the MWC 2024 volleyball season. *See* Compl. ¶¶ 633-58; 664-719 (Counts I, II, IV, V, VI, VII, and VIII); Compl. Prayer for Relief ¶¶ 1, 3-8, 10, 11, 13, 14.

Similarly, any supposed future harm imposed by the purported transgender student-athlete's participation in the MWC ended when the 2024 season concluded and (as a senior) she became illegible to play in the MWC. Compl. ¶ 193. Injunctive relief is barred when there is no future risk to harm. *DTC Energy Grp. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018). Thus, any injunctive or declaratory relief pled by Plaintiffs for ongoing harm relating to the solely alleged transgender volleyball player in the MWC is similarly moot. *See* Compl. Prayer for Relief ¶¶ 1, 3-8, 10, 11.

## <u>CONCLUSION</u>

For the reasons stated above, the MWC Defendants' Motion to Dismiss should be granted with respect to all Counts against Defendants the MWC and Commissioner Gloria Nevarez.

Dated: January 23, 2025

By: *s/ Chad D. Williams*
Chad D. Williams
Kyler K. Burgi
DAVIS GRAHAM & STUBBS L.L.P.
1550 17th Street, Suite 500
Denver, Colorado 80202
Telephone: 303.892.9400
Email:  chad.williams@davisgraham.com
         kyler.burgi@davisgraham.com

Wesley R. Powell
WILLKIE FARR & GALLAGHER
L.L.P.
787 Seventh Avenue
New York, New York 10019
Telephone: 212.728.8264
Email: wpowell@willkie.com

Matt D. Basil
WILLKIE FARR & GALLAGHER
L.L.P.
300 North LaSalle Dr.
Chicago, Illinois 60654
Telephone: 312.728.9020
Email: mbasil@willkie.com

*Counsel for Defendants The Mountain West
Conference and Gloria Nevarez*

## **ARTIFICIAL INTELLIGENCE CERTIFICATION**

I certify that no portion of this filing was drafted by artificial intelligence.

Dated: January 23, 2025

By: _/s/  Chad D. Williams_

## SKC CIV. PRACTICE STANDARD 7.1B AND SKC STANDING ORDER FOR CIVIL CASES § C.1 CERTIFICATE OF CONFERRAL

On January 17, 2025, counsel for Plaintiffs, counsel for the CSU Defendants, and counsel for the MWC Defendants participated in an approximately 40-minute meet and confer via videoconference. Counsel for the MWC Defendants disclosed that, similar to the arguments raised in opposition to Plaintiffs' motion for preliminary injunction, the MWC Defendants would be moving for the dismissal of (i) all constitutional and Title IX claims because the MWC Defendants are not state actors and (ii) all Title IX claims for the additional reason that the MWC Defendants are not subject to Title IX. The parties discussed that the MWC Defendants also intended to seek dismissal of Plaintiffs' First Amendment claims on the grounds that the TPP is directed at the MWC's member institutions and does not infringe on the right of individual Plaintiffs, and that, in the alternative, a mere boycott is not protected activity and the Complaint contains no allegations that the MWC Defendants took any adverse action toward Plaintiffs in response to any speech. With respect to the merits of Plaintiffs' Title IX and equal protection claims, counsel for the MWC Defendants indicated that, under binding Tenth Circuit precedent, the equal protection clause prohibits discrimination on the basis of gender identity and therefore cannot bar a transgender athlete from competition. Counsel for the MWC Defendants also indicated that the MWC Defendants planned to argue that the claims of any Plaintiffs without remaining collegiate eligibility are moot.

Counsel for Plaintiffs indicated that Plaintiffs were no longer alleging that the TPP was created in response to any boycotts, and that Plaintiffs were considering amending certain factual allegations. Counsel for Plaintiffs indicated that Plaintiffs would provide a fulsome response to the initial meet and confer in writing. Counsel for the CSU Defendants and the MWC Defendants offered that, if Plaintiffs wished to amend the Complaint, the parties should notify the Court in advance of the deadline to respond to the current Complaint.

On January 21, 2025, counsel for Plaintiffs emailed counsel for the CSU Defendants and the MWC Defendants. With respect to the arguments disclosed by the MWC Defendants, counsel for Plaintiffs stated that Plaintiffs are at an impasse and would respond to the MWC Defendants' motion to dismiss via a responsive brief or further pleading as appropriate following full review and consideration.

Dated: January 23, 2025

By: */s/  Chad D. Williams*

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2025 the foregoing

**DEFENDANTS THE MOUNTAIN WEST CONFERENCE AND GLORIA**

**NEVAREZ'S MOTION TO DISMISS** was filed and served via CM/ECF to all

counsel of record:

William Bock III
Justin R. Olson
KROGER GARDIS & REGAS LLP
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204
Telephone: 317.692.9000
Email: wbock@kgrlaw.com
           jolson@kgrlaw.com

*Counsel for Plaintiffs*

Bryan Heckenlively
Helen E. White
Munger Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Email: bryan.heckenlively@mto.com
           helen.white@mto.com

*Counsel for Board of Trustees of the
California University System, Laura
Alexander, and Todd Kress*

 /s/  Chad D. Williams