# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 24-cv-3155-SKC-MDB

BROOKE SLUSSER, *et al.*,

    *Plaintiffs*,

v.

THE MOUNTAIN WEST CONFERENCE, *et al.*,

    *Defendants*.

---

## CSU DEFENDANTS' RULE 12(b) MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER

---

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     BACKGROUND .................................................................................. 3

    A.    NCAA and MWC Policies Regarding the Eligibility of
        Transgender Athletes.................................................................. 4

    B.    SJSU's Rostering of an Allegedly Transgender Player and the
        Alleged Effect on the SJSU Plaintiffs Before the 2024 Season ............. 4

    C.    Public Reporting on the Player During the 2024 Season ...................... 5

    D.    Several MWC Conference Members Refuse to Play SJSU ..................... 7

III.    LEGAL STANDARD ........................................................................... 8

IV.     ARGUMENT ...................................................................................... 8

    A.    The Court Lacks Personal Jurisdiction Over CSU Defendants ............ 8

    B.    The Court Should Dismiss for Improper Venue or, in the
        Alternative, Transfer for Convenience of the Parties.......................... 12

        1.    Venue is Improper ....................................................... 12

        2.    Even if Venue is Proper, the Court Should Transfer the
            Claims Against CSU Defendants Under 28 U.S.C. § 1404........ 13

    C.    Plaintiffs Are Unable to Obtain Relief on Several of Their
        Claims, Which Should Therefore Be Dismissed ................................ 15

        1.    Any Claim for Injunctive or Declaratory Relief Is Moot ........... 16

        2.    Sovereign Immunity Bars Much of the Complaint .................... 17

        3.    Plaintiffs Improperly Seek Damages for Constitutional
            Claims Without Pleading a Proper Cause of Action ................. 19

        4.    Qualified Immunity Requires Dismissal of Claims Against
            SJSU Officials in Their Individual Capacities ........................... 20

    D.    Plaintiffs Fail to State a Title IX Claim ............................................ 21

        1.    Plaintiffs' Title IX Equal Opportunity Claim Fails.................... 21

        2.    Slusser and Batie-Smoose Fail to State Title IX
            Retaliation Claims....................................................... 23

    E.    Plaintiffs Fail to State any Equal Protection Claim............................ 25

    F.    Plaintiffs Fail to State a First Amendment Claim .............................. 26

i

1.    Batie-Smoose Fails to State a First Amendment Claim............ 26

2.    Slusser Fails to State a First Amendment Claim ..................... 27

G.    The State Law Claims Must Be Dismissed........................................... 29

V.    CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Al Ghareeb v. Bd. of Trustees at Univ. of N. Colo.,*
849 F. App'x 746 (10th Cir. 2021) ........................................................... 22

*Bd. of Regents for Okla. Agric. & Mech. Colleges ex rel. Okla.*
*Panhandle State Univ. v. Johnson Controls, Inc.,*
No. CIV-23-1025-D, 2024 WL 400188 (W.D. Okla. Feb. 2, 2024) ........................ 17

*Bostock v. Clayton County,*
590 U.S. 644 (2020) ................................................................. 21, 22, 23

*Brown v. City of Tulsa,*
No. 23-5133, 2025 WL 38071 (10th Cir. Jan. 7, 2025) ........................................ 26

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ......................................................................... 9

*Burlington N. & Santa Fe Ry. Co. v. White,*
548 U.S. 53 (2006) ......................................................................... 24

*BV Eng'g v. Univ. of Cal., L.A.,*
858 F.2d 1394 (9th Cir. 1988) ............................................................... 18

*C5 Med. Werks, LLC v. CeramTec GMBH,*
937 F.3d 1319 (10th Cir. 2019) ......................................................... 10, 11

*Cahey v. Int'l Bus. Machs. Corp.,*
No. 20-CV-00781-NYW, 2020 WL 5203787 (D. Colo. Sept. 1, 2020) ................... 14

*Calder v. Jones,*
465 U.S. 783 (1984) ........................................................................ 11

*Cannon v. Univ. of Chicago,*
441 U.S. 677 (1979) ........................................................................ 22

*Casey v. W. Las Vegas Indep. Sch. Dist.,*
473 F.3d 1323 (10th Cir. 2007) ......................................................... 26, 27

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ........................................................................ 16

*Crumpacker v. Kan. Dep't of Hum. Res.*,
    338 F.3d 1163 (10th Cir. 2003) ........................................................................... 23

*Daniels v. Cessna Aircraft Co.*,
    No. CIV.A. 08-2625-CM, 2009 WL 1226741 (D. Kan. Apr. 30, 2009) .................. 14

*Dental Dynamics, LLC v. Jolly Dental Grp.*,
    946 F.3d 1223 (10th Cir. 2020) ........................................................................... 11

*District of Columbia v. Wesby*,
    583 U.S. 48 (2018) .............................................................................................. 20

*Egbert v. Boule*,
    596 U.S. 482 (2022) ............................................................................................ 19

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*,
    618 F.3d 1153 (10th Cir. 2010) ............................................................... 13, 14, 15

*Fowler v. Stitt*,
    104 F.4th 770 (10th Cir. 2024) ................................................................ 21, 22, 26

*Free Speech Coal., Inc. v. Anderson*,
    119 F.4th 732 (10th Cir. 2024) ........................................................................... 19

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ............................................................................................ 26

*Gwynn v. TransCor Am., Inc.*,
    26 F. Supp. 2d 1256 (D. Colo. 1998) .................................................................. 12

*Haidak v. Univ. of Mass.-Amherst*,
    933 F.3d 56 (1st Cir. 2019) ................................................................................. 22

*Hecox v. Little*,
    104 F.4th 1061 (9th Cir. 2024) ..................................................................... 23, 24

*Hiatt v. Colo. Seminary*,
    858 F.3d 1307 (10th Cir. 2017) ........................................................................... 24

*Johnson v. Nw. Dist. of Wesleyan Church*,
    No. 123CV00870SKCKAS, 2024 WL 1538002 (D. Colo. Apr. 9, 2024) .................. 8

*Johnson v. Weld Cnty.*,
    594 F.3d 1202 (10th Cir. 2010) ........................................................................... 25

*Jordan v. Sosa,*
  654 F.3d 1012 (10th Cir. 2011) ............................................................... 16

*Kincaid v. Unified Sch. Dist. No. 500, Kan. City, Kan.,*
  94 F.4th 936 (10th Cir. 2024) ................................................................. 23

*Lewis v. Clarke,*
  581 U.S. 155 (2017) ................................................................................ 19

*Mateos-Sandoval v. Cnty. of Sonoma,*
  942 F. Supp. 2d 890 (N.D. Cal. 2013) ................................................... 18

*Morrill v. Stefani,*
  No. 17-CV-0123-WJM-KMT, 2017 WL 10433826 (D. Colo. Oct. 2,
  2017)......................................................................................................... 15

*Muldrow v. City of St. Louis,*
  601 U.S. 346 (2024) ................................................................................ 24

*Navajo Health Found.–Sage Mem'l Hosp., Inc. v. Burwell,*
  86 F. Supp. 3d 1211 (D.N.M. 2015)........................................................ 13

*Nieves v. Bartlett,*
  587 U.S. 391 (2019) ................................................................................ 29

*Old Republic Ins. Co. v. Cont'l Motors, Inc.,*
  877 F.3d 895 (10th Cir. 2017) .................................................................. 9

*OMI Holdings, Inc. v. Royal Ins. Co. of Can.,*
  149 F.3d 1086 (10th Cir. 1998) ........................................................ 11, 12

*Pennhurst State School & Hospital v. Halderman,*
  465 U.S. 89 (1984) .................................................................................. 19

*Reznik v. inContact, Inc.,*
  18 F.4th 1257 (10th Cir. 2021)........................................................... 23, 24

*Sanchez v. Denver Pub. Sch.,*
  164 F.3d 527 (10th Cir. 1998) ........................................................... 24, 25

*Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC,*
  906 F. Supp. 2d 1108 (D. Colo. 2012)......................................... 1, 17, 29

*Smith v. Becerra,*
    44 F.4th 1238 (10th Cir. 2022) ................................................................ 16

*Smith v. Plati,*
    258 F.3d 1167 (10th Cir. 2001) .............................................................. 28

*Stanley v. Trustees of Cal. State Univ.,*
    433 F.3d 1129 (9th Cir. 2006) ................................................................ 17

*Stetzel v. Holubek,*
    661 F. App'x 920 (10th Cir. 2016) ......................................................... 28

*Trujillo v. Williams,*
    465 F.3d 1210 (10th Cir. 2006) ........................................................ 10, 11

*Utah Animal Rts. Coal. v. Salt Lake City Corp.,*
    371 F.3d 1248 (10th Cir. 2004) .............................................................. 16

*Walden v. Fiore,*
    571 U.S. 277 (2014) ............................................................................ 9, 10

*Walker v. Mohiuddin,*
    947 F.3d 1244 (10th Cir. 2020) ................................................................ 8

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) .................................................................................. 18

*Worrell v. Henry,*
    219 F.3d 1197 (10th Cir. 2000) .............................................................. 27

**STATE CASES**

*Caldwell v. Montoya,*
    10 Cal. 4th 972 (1995) ........................................................................... 18

*Diediker v. Peelle Fin. Corp.,*
    60 Cal. App. 4th 288 (1997) ................................................................... 29

*Lopez v. Nissan N. Am., Inc.,*
    201 Cal. App. 4th 572 (2011) ................................................................. 29

*Rim of the World Unified Sch. Dist. v. Super. Ct.,*
    104 Cal. App. 4th 1393 (2002) ............................................................... 30

FEDERAL STATUTES

20 U.S.C. § 1232g ................................................................................ 30

20 U.S.C. § 1681 .................................................................................. 22

28 U.S.C. § 1391 .............................................................................. 12, 14

28 U.S.C. § 1404 .............................................................................. 13, 14

42 U.S.C. § 1983 .......................................................................... 18, 19, 21

STATE STATUTES

Cal. Educ. Code §§ 66250–66292 ................................................... 22, 24

Cal. Educ. Code § 66600 ........................................................................ 4

Cal. Educ. Code § 66606.2 ...................................................................... 4

Cal. Gov. Code § 815 ............................................................................ 18

Cal. Gov. Code § 820.2 .......................................................................... 18

Cal. Gov. Code § 905 ............................................................................ 18

FEDERAL REGULATIONS

34 C.F.R. § 106.44 ................................................................................ 27

34 C.F.R. § 99.30 .................................................................................. 30

OTHER AUTHORITIES

Exec. Order, *Defending Women from Gender Ideology Extremism and
    Restoring Biological Truth to the Federal Government*, Jan. 20,
    2025, https://www.whitehouse.gov/presidential-
    actions/2025/01/defending-women-from-gender-ideology-extremism-
    and-restoring-biological-truth-to-the-federal-government ................................. 22

I.    **INTRODUCTION**

Plaintiffs believe that a player who was undisputedly eligible to play under

NCAA rules should not have been allowed to play on the San Jose State University

("SJSU") women's volleyball team, solely because she is allegedly transgender.  The

majority of Plaintiffs' claims fail because, under binding precedent, discrimination

against transgender people is unlawful under both Title IX and the Equal

Protection Clause.  In other words, Plaintiffs ask this Court to read Title IX and the

Equal Protection Clause to *require* precisely the same kind of discrimination that—

as this Court has recognized—those laws instead *prohibit*.

Plaintiffs are a collection of current and former SJSU players, an SJSU

coach, and a number of student-athletes who play for other teams in the Mountain

West Conference and who refused to play against SJSU during the 2024

season.  They bring an assortment of claims that are linked only by their shared

opposition to SJSU's decision to roster the allegedly transgender player.  These

claims against the Board of Trustees of California State University and its

employees (the "CSU Defendants") should all be dismissed in their entirety.

*First*, Plaintiffs' claims cannot, or in the alternative, should not be heard in

this Court.  As an initial matter, the Court lacks personal jurisdiction over any of

the CSU Defendants.  The CSU Defendants are all located in California, they

rostered the allegedly transgender player in California, and Plaintiffs allege only

tenuous connections to Colorado—connections that are plainly insufficient for

personal jurisdiction under Tenth Circuit precedent.  For similar reasons, venue is
improper.  In the alternative, the CSU Defendants move to sever the claims against
them and transfer those claims to the Northern District of California.

*Second*, the vast majority of Plaintiffs' claims and requests for relief fail at
the threshold based on mootness and immunity doctrines.  Plaintiffs' claims for
injunctive relief are moot now that the season has ended and the allegedly
transgender player has completed her final year of eligibility.  In addition, sovereign
immunity bars all of Plaintiffs' constitutional and state law claims against the CSU
Board of Trustees and its employees.  And qualified immunity independently
requires dismissal of their individual-capacity constitutional claims for
damages.  These interlocking arguments dispose of everything but Plaintiffs' Title
IX equal opportunity claim for damages (these arguments do bar the claim for
equitable relief) and Title IX retaliation claim—those claims should be dismissed on
the merits, for the reasons discussed below.

*Third*, Plaintiffs' Title IX equal opportunity claim and Equal Protection
claims rely on readings of those laws that, as this Court has held, are inconsistent
with Supreme Court and Tenth Circuit precedent recognizing discrimination on the
basis of transgender status as a form of impermissible sex discrimination.

*Fourth*, Plaintiff Brooke Slusser, the co-captain of the 2024 SJSU women's
volleyball team, and SJSU Associate Head Coach, Plaintiff Melissa Batie-Smoose,
cannot state Title IX retaliation claims because it was unreasonable to believe that

the law precluded rostering the allegedly transgender player. The law in both the Tenth Circuit and the Ninth (where the player was rostered) clearly prohibits excluding the allegedly transgender player solely because of her transgender status—and yet that is precisely what both Plaintiffs' allegedly Title IX-protected activity sought to do. These Plaintiffs also raise First Amendment retaliation claims. But Batie-Smoose's claim fails because her speech was related to her official duties and Slusser's fails because she did not suffer any cognizable consequence.

Thus, even if the Court does not dismiss or transfer based on personal jurisdiction or venue, all the claims against the CSU Defendants should be dismissed for failure to state a claim.

## II.    <u>BACKGROUND</u>

Plaintiffs allege that, since at least 2022, SJSU—a campus of the California State University ("CSU") system—has had an allegedly transgender woman on its women's volleyball team. Dkt. 1 ("Compl.") ¶ 193. Plaintiffs include individuals who, at the time the complaint was filed, were current or former women's volleyball players at SJSU and at five other schools that compete against SJSU in the Mountain West Conference ("MWC"). These Plaintiffs contend, *inter alia*, that SJSU rostering an allegedly transgender woman deprived them of equal opportunity in violation of both Title IX and the Equal Protection Clause. In addition, now-suspended SJSU Associate Head Coach Melissa Batie-Smoose brings Title IX and First Amendment retaliation claims. Plaintiffs bring their dozen-plus

claims against a combination of the following Defendants affiliated with CSU: (1)

the Board of Trustees of the California State University, a state entity that governs

the CSU system, Cal. Educ. Code §§ 66600, 66606.2; (2) Todd Kress, the Head

Coach of the SJSU women's volleyball team, *see* Compl. ¶ 33; (2) Laura Alexander, a

Senior Associate Athletic Director at SJSU, *id.* ¶ 31; and (3) Michelle Smith

McDonald, the Senior Director of Media Relations at SJSU, *id.* at ¶ 32.[1]

A.     **NCAA and MWC Policies Regarding the Eligibility of
       Transgender Athletes**

The NCAA has adopted policies that govern the eligibility of transgender

athletes to compete in NCAA athletics.  Compl. ¶ 137.  Under the NCAA's

Transgender Eligibility Policy ("TEP"), a transgender woman wishing to participate

in women's sports must undergo a full year of testosterone suppression and show

that her testosterone levels are below a certain sport-specific threshold (as

determined by the national governing body for that sport).  *Id.*  The MWC, in turn,

requires member schools to comply with NCAA rules and conducts MWC

competitions pursuant to NCAA rules and regulations, including the TEP.  *Id.*

¶¶ 101–03.  Plaintiffs do not dispute that the allegedly transgender player was at

all times eligible to play under all applicable NCAA and MWC rules.

B.     **SJSU's Rostering of an Allegedly Transgender Player and the
       Alleged Effect on the SJSU Plaintiffs Before the 2024 Season**

Plaintiffs Alyssa Sugai and Elle Patterson are former SJSU women's

---

[1] The complaint wrongly refers to Smith McDonald as "Michelle McDonald Smith."

volleyball players who played on the team during the 2022 and 2023 seasons, respectively.  Both allege that as a result of SJSU's decision to roster the allegedly transgender player, they lost out on playing time.  Though Sugai and Patterson played different positions, they both allege that the allegedly transgender player played their same position and therefore displaced them from the team.  Compl. ¶¶ 210, 270.  By their own accounts, the allegedly transgender player was the superior athlete and won playing time as a result.  *Id.* ¶ 212 (Sugai); *id.* ¶ 266 (Patterson).  They also contend that they lost out on scholarships, but the complaint admits that neither had a scholarship even before competing with the allegedly transgender player.  *See id.* ¶¶ 203, 217 (Sugai); *id.* ¶¶ 262, 270 (Patterson).

Before the 2023 season, Plaintiff Brooke Slusser transferred to SJSU with a full scholarship to play on the women's volleyball team.  *Id.* ¶ 247.  She alleges that she lived with and was often assigned to room with the allegedly transgender player—which she would not have done had she known the player was transgender. *Id.* ¶¶ 248–50, 260.  Slusser alleges that, within four months, she learned from other students that her teammate was transgender.  *Id.* ¶¶ 254–59.

### C.  <u>Public Reporting on the Player During the 2024 Season</u>

In April 2024, reports surfaced online that the allegedly transgender player was in fact transgender.  Compl. ¶ 275.  Plaintiffs allege that shortly after the reports were published, the player revealed to Slusser that she was transgender. *Id.* ¶ 277.  Around the same time, Coach Kress and Smith McDonald held a meeting

with the team about the reports.  *Id.* ¶ 280.  Plaintiffs allege that in this meeting,
Kress and Smith McDonald told the team that they should not out the allegedly
transgender player by speaking about her "sex or gender identity with anyone
outside the team."  *Id.* ¶ 281.  Plaintiffs further allege that during this meeting,
Kress and Smith McDonald explained that criticism of the allegedly transgender
player or her "participation on the SJSU Team" was "transphobic" and "could be
considered a violation of Title IX, school policies, or state law," and as a result could
jeopardize their scholarships.  *Id.* ¶¶ 281, 284.

Following these alleged revelations, Plaintiffs allege that they started to view
their interactions with the player in a different light.  According to Slusser and
Sugai, they would not have used locker rooms or lodging facilities where they
believed a transgender woman was present.  *Id.* ¶¶ 232, 252.  Sugai alleges that she
would have attended a different school had she known that SJSU had rostered an
allegedly transgender player.  *Id.* ¶ 229.  Patterson says that the player received a
scholarship that Coach Kress previously promised to Patterson.  *Id.* ¶ 262–70.
Batie-Smoose, for her part, alleges that Coach Kress's "alignment with LGBTQ+
individuals" made him give "preferential treatment" to the player.  *Id.* ¶ 566–68.

Some of the SJSU Plaintiffs say they began a "behind-the-scenes battle" to
have the player removed from the SJSU team.  *Id.* ¶ 323.  Slusser joined a separate
lawsuit in which she disclosed the player's name and alleged gender identity in
public court filings.  *Id.* ¶ 320.  She also began a media tour, expressing "to

journalists and in public forums" that the player should be removed from the SJSU team.  *Id.* ¶ 337.  Batie-Smoose submitted a complaint to SJSU asserting that the player's participation violated Title IX.  *Id.* ¶ 581.

Slusser and Batie-Smoose assert that CSU Defendants retaliated against them for their efforts to remove the player from the SJSU team.  According to Slusser, Alexander told her that disparaging the school or her teammate would potentially violate her "letter of intent"—i.e., the contract she entered into with SJSU setting forth the conditions of her scholarship.  *Id.* ¶ 332.  Slusser says that Kress retaliated against her by refusing to speak with her and by "communicat[ing] with a private lawyer as part of his effort to get Slusser removed from the SJSU team."  *Id.* ¶ 337.  Batie-Smoose says that the CSU Defendants suspended her from coaching duties to punish her for submitting the Title IX complaint.  *Id.* ¶ 595.

### D.    Several MWC Conference Members Refuse to Play SJSU

During the 2024 MWC regular season, Plaintiffs Liilii and Clarke (University of Nevada), Ray (Utah State University), Boggs, Grizzle, and Sandy (University of Wyoming), and the Van Kirks (Boise State University) (collectively, "non-SJSU Plaintiffs") and their respective teams refused to participate in matches against SJSU after the player's gender identity became a "talking point" in the national news media.  *See* Compl. ¶¶ 339–42, 437–38, 443–49, 474–75, 610.  The allegedly transgender player had played for SJSU during both the 2022 and 2023 seasons, *see supra* p. 3, but Plaintiffs do not allege that any team previously refused to play

against SJSU.  Under a MWC policy governing the refusal to play teams because they may have transgender players (called the "Transgender Participation Policy" or "TPP"), the matches that non-SJSU Plaintiffs' teams boycotted were treated as forfeits and losses in the standings.  *See, e.g., id.* ¶ 341.

The MWC championship tournament was played in November 2024.  *See id.* ¶ 94.  According to the complaint, the allegedly transgender player has played four seasons of college volleyball, and Plaintiffs do not allege that she has eligibility remaining.  *Id.* ¶ 193 (first year of eligibility was 2021).  Nor do they allege that SJSU has rostered another transgender player or that it is likely to do so.

## III.  <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter…to state a claim to relief that is plausible on its face."  *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020).  The same standard applies when assessing motions under Rule 12(b)(1), (2), and (4) when the moving party has not introduced factual material beyond the complaint.  *See Johnson v. Nw. Dist. of Wesleyan Church*, No. 123CV00870SKCKAS, 2024 WL 1538002, at *2 (D. Colo. Apr. 9, 2024).

## IV.  <u>ARGUMENT</u>

### A.  <u>The Court Lacks Personal Jurisdiction Over CSU Defendants</u>

Plaintiffs' complaint reveals that the CSU Defendants do not have sufficient

contacts with Colorado to confer personal jurisdiction.  Specific personal jurisdiction

requires "a two-step inquiry: (a) whether the plaintiff has shown that the defendant

has minimum contacts with the forum state; and, if so, (b) whether the defendant

has presented a 'compelling case'" that exercising jurisdiction would be

"unreasonable."[2] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904

(10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77

(1985)).  To establish "minimum contacts," Plaintiffs must show that CSU

Defendants "purposefully directed" their activities to Colorado and that the suit

"arise[s] out of or relate[s] to" those activities.  *Id.* (cleaned up).

Plaintiffs' allegations fall far short.  As Plaintiffs themselves allege, the CSU

Board of Trustees "is a *California* corporation that governs the *California* State

University."  Compl. ¶ 30 (emphasis added).  Plaintiffs do not allege any conduct by

the Board in or directed at Colorado other than SJSU's affiliation with the MWC.

*See id.* ¶ 11.  But the "'minimum contacts' analysis looks to the defendant's contacts

with the forum State itself, not the defendant's contacts with persons who reside

there."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  The fact that a CSU campus is

affiliated with a Colorado-based entity cannot establish that the Board purposefully

directed its activities at *Colorado.  Id.* ("[A] defendant's relationship with a…third

party, standing alone, is an insufficient basis for jurisdiction.").

---

[2] Plaintiffs do not contend that this Court has general personal jurisdiction over any
CSU Defendant, all of whom are based in California.  Compl. ¶¶ 11, 30–33.

SJSU's alleged participation in MWC's governance also cannot establish minimum contacts. Indeed, Plaintiffs do not allege that any CSU official ever traveled to Colorado to participate in MWC governance. They make no allegation that any MWC policy incorporating the NCAA's eligibility rules was adopted in Colorado. And with respect to the TPP, they allege that policy was adopted via written consent—i.e., by each member school's representative acting from their home state or wherever they happened to be at the time of the vote. Compl. ¶ 369. SJSU's implementation of MWC policy likewise cannot supply the required connection to Colorado. The Tenth Circuit has specifically held that it is not sufficient for specific personal jurisdiction that a policy is developed in the forum state but implemented vis-à-vis an individual located outside of it. *See Trujillo v. Williams*, 465 F.3d 1210, 1220–21 (10th Cir. 2006).

Finally, SJSU's participation in a handful of games in Colorado over the course of several years cannot establish purposeful availment. *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323–24 (10th Cir. 2019) (holding that a defendant's attendance at three trade shows in Colorado was insufficient). Were that sufficient for personal jurisdiction, Plaintiffs could have sued in any state in which the SJSU team played even a single game—an absurd result.

Plaintiffs' allegations as to the individual CSU Defendants are even weaker. As an initial matter, the Board's conduct cannot be attributed to the individual CSU Defendants for purposes of personal jurisdiction. *Calder v. Jones*, 465 U.S. 783, 790

(1984); *Trujillo*, 465 F.3d at 1218–19, nn.9–10.  Plaintiffs offer no allegations

connecting Smith McDonald or Alexander to Colorado at all.  *See* Compl. ¶¶ 280–81,

332–33.  As to Coach Kress, the only allegations that connect him to Colorado are

that he traveled *one time* with the SJSU volleyball team to Colorado for a game

against a team for which none of the Plaintiffs play.  *Id.* ¶¶ 509, 533.  Coach Kress

did not "choose where the [games] were held," and specific jurisdiction cannot flow

from such a "fortuitous" contact.  *C5 Med. Werks, LLC*, 937 F.3d at 1323–24.

Finally, even if the minimum-contacts test were somehow satisfied, this

Court could not exercise personal jurisdiction because it would not comport with

"traditional notions of fair play and substantial justice."  *Dental Dynamics, LLC v.

Jolly Dental Grp.*, 946 F.3d 1223, 1232 (10th Cir. 2020).  When, as here, Plaintiffs'

showing on minimum contacts is weak, "the less a defendant need show in terms of

unreasonableness to defeat jurisdiction."  *OMI Holdings, Inc. v. Royal Ins. Co. of

Can.,* 149 F.3d 1086, 1092 (10th Cir. 1998) (cleaned up).  "[T]he burden on the

defendant of litigating the case in a foreign forum is of primary concern in

determining the reasonableness of personal jurisdiction."  *Id.* at 1096.

Here, it would be unduly burdensome to force the CSU Board of Trustees—an

arm of the state of California—and three of its California-based employees to defend

this case in Colorado.  Colorado also has little interest in a dispute between the

CSU Defendants and Plaintiffs, all of whom attend schools outside of the state.  *See

id.* (explaining that a forum state had little interest in a dispute where neither

11

party was a resident of the state and the actions giving rise to the lawsuit occurred

out of state).  The vast majority of the witnesses related to the claims against CSU

Defendants are located in California or otherwise outside of Colorado.  Based on

these factors, it would be unreasonable to exercise personal jurisdiction over any of

the CSU Defendants.  *See id.* at 1097.

**B.**      **The Court Should Dismiss for Improper Venue or, in the Alternative, Transfer for Convenience of the Parties**

**1.      Venue is Improper**

The claims against the CSU Defendants should also be dismissed because

this district is not the proper venue.  *See* Fed. R. Civ. P. 12(b)(3).  Plaintiffs have

failed to allege that "a substantial part of the events or omissions giving rise to"

those claims occurred in Colorado.  28 U.S.C. § 1391(a)(2); *see Gwynn v. TransCor

Am., Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998).

The central factual allegations underlying Plaintiffs' claims against the CSU

Defendants all took place in San Jose, California: SJSU coaches rostering the

allegedly transgender player, keeping that information from Plaintiffs, violating

their bodily privacy, SJSU *not* traveling for games other schools forfeited, and SJSU

employees allegedly retaliating against Plaintiffs Slusser and Batie-Smoose and

suppressing their speech.  *See, e.g.*, Compl. ¶¶ 193 (prior SJSU coach recruited the

allegedly transgender player); 249–50 (Slusser was not informed by Coach Kress or

any other SJSU official of an allegedly transgender teammate, with whom Slusser

"shared a residence at SJSU"); 280 (SJSU officials held meeting with women's

12

volleyball team to discuss article about allegedly transgender player); 586 (SJSU

official gave Batie-Smoose letter putting her on administrative leave at SJSU gym).

The Complaint alleges just *one* event that took place in Colorado—SJSU's

October 2024 game against Colorado State University.  *See id.* ¶ 508.  Slusser

alleges Coach Kress's failure to prevent "potential physical threats" at that game

was retaliation for her speaking out, and Batie-Smoose alleges SJSU officials

retaliated against her for speaking out about what happened at the game.  *Id.*

¶¶ 337(d), 595.  But the "entire sequence of events underlying" their retaliation

claims—their speaking out against SJSU rostering the allegedly transgender player

and feeling the effects of the alleged retaliation—occurred in California.  *Emps.*

*Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010).  Where, as

here, "the crux of this case" centers on events that occurred outside of the state, "a

small piece of [Plaintiffs'] case…cannot—standing alone—establish venue" in

Colorado.  *Navajo Health Found.–Sage Mem'l Hosp., Inc. v. Burwell*, 86 F. Supp. 3d

1211, 1247 (D.N.M. 2015) (interpreting identical standard under § 1391(e)(1)).

## 2. Even if Venue is Proper, the Court Should Transfer the Claims Against CSU Defendants Under 28 U.S.C. § 1404

In the alternative, the CSU Defendants ask the Court to exercise its

discretion to sever claims against them under Federal Rule of Civil Procedure 21

and transfer those claims "[f]or the convenience of parties and witnesses [and] in

the interest of justice" to the Northern District of California ("N.D. Cal."), 28 U.S.C.

§ 1404(a).  *See Cahey v. Int'l Bus. Machs. Corp.*, No. 20-CV-00781-NYW, 2020 WL

5203787, at *4 (D. Colo. Sept. 1, 2020).  N.D. Cal. is a judicial district where the claims against the CSU Defendants could "have been brought," both because it is where the CSU Defendants reside and where at least "a substantial part of the events or omissions giving rise to [the claims against the CSU Defendants] occurred."  28 U.S.C. §§ 1391(b), 1404(a).

The CSU Defendants, Plaintiffs, and their witnesses are all located outside of Colorado, which means that the "convenience of witnesses"—the "most important" factor—favors transfer.  *Bartile Roofs*, 618 F.3d at 1169 (citations omitted).  The individual CSU Defendants would give material testimony, but they reside in N.D. Cal. and would be inconvenienced by taking multiple days away from their administrative and coaching jobs to travel 1,000 miles to testify and attend court proceedings.  *See* Declaration of Todd Kress ("Kress Decl.") ¶¶ 3–4; Declaration of Michelle Smith McDonald ("Smith McDonald Decl.") ¶¶ 3–4, Declaration of Laura Alexander ("Alexander Decl.") ¶¶ 3–4; *Bartile Roofs*, 618 F.3d at 1167 (the lack "of compulsory process to insure attendance of witnesses" supports transfer); *Daniels v. Cessna Aircraft Co.*, No. CIV.A. 08-2625-CM, 2009 WL 1226741, at *2 (D. Kan. Apr. 30, 2009) (finding inconvenience where "[w]itnesses would have to travel several hours each way to testify and would have to stay overnight").

It is not just the CSU Defendants who are located outside of this district— none of the Plaintiffs is based in Colorado, so their "choice of forum receives less deference." *Bartile Roofs*, 618 F.3d at 1168; *see* Compl. ¶¶ 15, 18–25; Kress Decl.

14

¶ 5; Declaration of Bryan Heckenlively ("Heckenlively Decl.") ¶¶ 2–3. Plaintiffs'
experts and the SJSU-affiliated witnesses also are all based outside of Colorado.
*See* Dkt. 14-1 at 360, 468; Kress Decl. ¶¶ 6–7; Smith McDonald Decl. ¶ 5;
Heckenlively Decl. ¶ 4. The inconvenience of this district for witnesses with "highly
material" testimony "tips largely in favor" of transfer. *Morrill v. Stefani*, No. 17-CV-
0123-WJM-KMT, 2017 WL 10433826, at *3 (D. Colo. Oct. 2, 2017).

Justice is also better served by "having a local court determine questions of
local law," which transfer would accomplish here. *Bartile Roofs*, 618 F.3d at 1167.
Plaintiffs' fraud and misrepresentation claims are governed by California law, *see
infra* p. 29, and they will raise issues regarding the obligations of the State of
California (acting through the CSU Board and its employees) under California law.
And the CSU Defendants' Title IX and Equal Protection Clause obligations under
federal law are similarly guided by Ninth Circuit precedent. *See infra* p. 23–24; *see
Bartile Roofs*, 618 F.3d at 1170 ("When the merits of an action are unique to a
particular locale, courts favor adjudication by a court sitting in that locale.").

### C.    Plaintiffs Are Unable to Obtain Relief on Several of Their Claims, Which Should Therefore Be Dismissed

On Plaintiffs' state law and constitutional claims, a combination of mootness,
sovereign immunity, and qualified immunity preclude relief entirely. As a result,
these claims should be dismissed. *See Smith v. Becerra*, 44 F.4th 1238, 1248–49
(10th Cir. 2022) (when a court cannot grant a plaintiff any "effectual relief," a case
must be dismissed (citation omitted)). The only claims that survive the threshold

jurisdictional and immunity issues are (a) the Title IX equal opportunity claim *for damages* (but not for prospective relief) and (b) Slusser and Batie-Smoose's Title IX retaliation claims.  Those claims should be dismissed for other reasons, as discussed in later sections.

### 1.    Any Claim for Injunctive or Declaratory Relief Is Moot

Plaintiffs' efforts to seek declaratory and injunctive relief against the CSU Defendants are doomed from the outset.  To be entitled to injunctive relief, Plaintiffs must show that the "threat of injury" is "real and immediate, not conjectural or hypothetical."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted).  "An injunctive relief claim becomes moot when the 'plaintiff's continued susceptibility to injury' is no longer 'reasonably certain' or is based on 'speculation.'"  *Smith*, 44 F.4th at 1247 (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)).  The same is true for declaratory relief.  *See Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256–57 (10th Cir. 2004).

Here, Plaintiffs cannot allege or show that the conduct alleged in the complaint is likely to recur.  Notably absent from the complaint are any allegations about the threat of future or ongoing violations by the CSU Defendants.  All the alleged constitutional violations and retaliatory conduct are described as having already occurred and no Plaintiff alleges a risk of future harm.  That is because there is no threat of future harm.  According to Plaintiffs' own complaint, the allegedly transgender player about whom Plaintiffs have been complaining has no

remaining eligibility, *see* Compl. ¶ 193 (allegedly transgender player's first year of eligibility was in 2021), and Plaintiffs have not identified any other transgender player at SJSU whose participation they might oppose.  This is fatal to all the declaratory and injunctive relief that Plaintiffs seek against the CSU Defendants.[3] *See id.*, Prayer for Relief ¶¶ 2, 9, 10, 12.

### 2.    Sovereign Immunity Bars Much of the Complaint

Many of Plaintiffs' claims are barred by the Eleventh Amendment and other immunity doctrines, which dramatically narrows Plaintiffs' complaint.

*First*, all of Plaintiffs' constitutional claims against the Board (Counts I, V, and IX) are barred by the Eleventh Amendment because the Board is "an arm of the state" and has not consented to be sued.  *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006); *see also Bd. of Regents for Okla. Agric. & Mech. Colleges ex. rel. Okla. Panhandle State Univ. v. Johnson Controls, Inc.*, No. CIV-23-1025-D, 2024 WL 400188, at *2 n.3 (W.D. Okla. Feb. 2, 2024) (collecting Tenth Circuit cases holding that "public universities…are arms of their respective state"

---

[3] To the extent Plaintiffs contend that any Title IX retaliation claim for injunctive relief is not moot, Plaintiffs' prayer for relief does not identify any specific injunctive relief that they intend to seek related to that claim.  *See* Compl. Prayer for Relief. When asked about this omission during a January 17, 2025 meet and confer, Plaintiffs' counsel stated that they intended to ask that Batie-Smoose's suspension be lifted, but they did not identify any injunctive relief with respect to Slusser. Counsel for the CSU Defendants pointed out that this relief was not contained in the Prayer for Relief.  Plaintiffs elected not to amend their Complaint to include that relief.  *See infra* (Certificate of Conferral).

entitled to sovereign immunity). Section 1983 does not abrogate that immunity.

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989).[4]

*Second*, sovereign immunity bars Plaintiffs' state law causes of action against

the Board (Counts XI and XII) for damages. Any effort to argue that California has

consented to be sued on these claims would fail on several levels:

- California has consented to common law tort suits only to the extent a plaintiff first timely submits their claim in an administrative process, which Plaintiffs do not (and cannot) allege they did here. Cal. Gov't Code §§ 815, 905. This statute also applies to—and thus bars— Plaintiffs' state law claims brought against SJSU officials in their individual capacity. *Mateos-Sandoval v. Cnty. of Sonoma*, 942 F. Supp. 2d 890, 900, 904 (N.D. Cal. 2013).

- Even if Plaintiffs had followed this claims process, they still could not bring their claims here because California's consent to suit is limited to claims bought in California *state court*. *BV Eng'g v. Univ. of Cal., L.A.*, 858 F.2d 1394, 1396 (9th Cir. 1988).

- As an additional basis for dismissal, California officials receive immunity for "deliberate and considered policy decisions, in which a conscious balancing of risks and advantages took place." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995); Cal. Gov. Code, § 820.2. Given Coach Kress's federal privacy law obligations, *see infra* p. 30, and the sensitive nature of the situation, a decision not to disclose that there was a transgender player on the team would be a discretionary balancing of risks entitled to immunity.

*Third*, the Eleventh Amendment bars any claim for damages for the

constitutional and state law claims against the individual CSU Defendants in their

---

[4] The Board also cannot be sued on the constitutional claims (or the Title IX equal opportunity claim (Count II)) for the additional reason that the state is not a "person" for purposes of 42 U.S.C. § 1983, which is the stated premise for Counts II and V against the Board and the unstated premise for Counts I and IX against the Board (as Plaintiffs confirmed during pre-motion conferral). *Will*, 491 U.S. at 71.

official capacities (Counts V, IX, XI, XII). *Lewis v. Clarke*, 581 U.S. 155, 163 (2017);

*Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735–36 (10th Cir. 2024).

    *Fourth*, Plaintiffs cannot seek injunctive relief with respect to their state law

claims. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)

squarely precludes an injunction against a state entity or official based on a state

law claim.

### 3.    Plaintiffs Improperly Seek Damages for Constitutional Claims Without Pleading a Proper Cause of Action

    Plaintiffs seek damages on all of their constitutional claims, yet they have

failed to bring those claims as proper causes of action. Plaintiffs bring some of their

constitutional claims pursuant to Section 1983—and when they do, they say so

explicitly. *See, e.g.,* Count V (bodily privacy claim); Count VI (First Amendment

claim against MWC). But for their Equal Protection equal opportunity claim (Count

I) and First Amendment claims (Count IX & X) against the CSU Defendants, they

do not purport to bring these claims pursuant to Section 1983. Because Congress

has specifically provided a mechanism for seeking damages pursuant to that

statute, courts do not imply an identical cause of action based on the Constitution.

*See Egbert v. Boule*, 596 U.S. 482, 493 (2022). CSU Defendants encouraged

Plaintiffs to amend their complaint to resolve this problem during their January 17

meet and confer. *See infra* (Certificate of Conferral). Plaintiffs refused to do so. *Id.*

### 4. Qualified Immunity Requires Dismissal of Claims Against SJSU Officials in Their Individual Capacities

Plaintiffs also bring their Equal Protection claims for bodily privacy violations (Count V) and their First Amendment retaliation claims (Count X) against SJSU officials in their individual capacities. As already explained, any request for injunctive relief arising from those claims is moot and any request for damages is barred by sovereign immunity. *See supra* p. 16–17. Any request for damages is independently barred by the qualified immunity doctrine, which permits such claims only where a constitutional violation is "clearly established." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.* As explained below, Plaintiffs have failed to plausibly allege *any* constitutional violation. Plaintiffs thus cannot have alleged any violation that is "clearly established," and the Court may therefore resolve these claims on qualified immunity grounds without ruling on the constitutionality of these officials' conduct.

* * *

As a result of these interlocking barriers to Plaintiffs' ability to obtain any relief on their claims, Plaintiffs' constitutional and state law claims should be dismissed in their entirety. As to what is left—the Title IX claims against the CSU Board of Trustees—Plaintiffs' requests for prospective relief are moot, and any request for damages should be dismissed for failure to state a claim, discussed next.

D.    <u>**Plaintiffs Fail to State a Title IX Claim**</u>

Plaintiffs assert two separate kinds of Title IX claims against the CSU Board of Trustees, neither of which is sufficiently pleaded to survive a motion to dismiss. First, all Plaintiffs except Batie-Smoose assert a Title IX theory that rostering an allegedly transgender player denied them equal opportunity to participate in athletics. *See* Compl. ¶¶ 633–58 (Counts I & II).[5] Second, Batie-Smoose and Slusser allege that the Board unlawfully retaliated against them for their opposition to rostering the allegedly transgender player. *Id.* ¶¶ 659–63 (Count III). Both of these claims fail.

### 1.    **Plaintiffs' Title IX Equal Opportunity Claim Fails**

Plaintiffs' Title IX equal opportunity claim should be dismissed for the same reasons this Court denied their request for preliminary relief. As this Court already held, Plaintiffs' theory of liability is inconsistent with binding precedent. Op. at 28.[6] Specifically, for Plaintiffs to prevail on their Title IX and Equal Protection claims, the Court would have to adopt an interpretation of "sex" that conflicts with both *Fowler v. Stitt*, 104 F.4th 770, 790 (10th Cir. 2024), and *Bostock v. Clayton County*, 590 U.S. 644, 669 (2020). This analysis is in no way affected by the Executive Order

---

[5] Count II must also be dismissed because the Board is not a "person" within the meaning of § 1983. *See supra* n.4.

[6] Defendants addressed this issue in detail in opposition to Plaintiffs' preliminary injunction motion. *See* Dkt. 28 p. 22–28.

issued on January 20, 2025 that takes a different view on the meaning of "sex."[7]  It is fundamental that an Executive Order cannot displace the text of a statute or the Constitution, or the holdings of *Bostock* and *Fowler*.  Therefore, as this Court held, Plaintiffs' proposed interpretation of Title IX must be wrong.  *See* Op. at 28.

Plaintiffs' Title IX equal opportunity claim also fails because Plaintiffs have failed to plead, as they must, any *intentional* discrimination by the Board on the basis of sex.  Title IX permits claims only for "intentional" discrimination.  *Al Ghareeb v. Bd. of Trustees at Univ. of N. Colo.*, 849 F. App'x 746, 748 (10th Cir. 2021) (applying Title VI); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694–95 (1979) (instructing courts to look to Title VI when interpreting Title IX); *see also Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 75 (1st Cir. 2019).

Plaintiffs do not allege that the Board took any discriminatory action "on the basis of sex."  20 U.S.C. § 1681(a).  Rather, the allegations suggest only that the Board allowed its coaching staff to roster the best players who were eligible under NCAA and MWC rules.  And Plaintiffs do not dispute that the allegedly transgender player was the best eligible player that SJSU could roster—indeed, they allege that she was *too good*.  Nor can the Board be faulted for failing to alter its eligibility policies as Plaintiffs demand because California and Ninth Circuit law

---

[7] Exec. Order, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Jan. 20, 2025, https://www.whitehouse.gov/presidential-actions/2025/01/defending-women-from-gender-ideology-extremism-and-restoring-biological-truth-to-the-federal-government.

specifically prohibit discrimination based on transgender status. *See* Cal. Educ.
Code §§ 66250–66292.4; *Hecox v. Little*, 104 F.4th 1061, 1089 (9th Cir. 2024).
Plaintiffs' allegations therefore do not permit the inference that the Board intended
to discriminate on the basis of sex.

### 2.    Slusser and Batie-Smoose Fail to State Title IX Retaliation Claims

Plaintiffs Slusser and Batie-Smoose fail to plausibly allege that the Board
retaliated against them for reporting sex discrimination.

First, Slusser and Batie-Smoose's opposition to rostering the allegedly
transgender player is not protected activity that can give rise to a retaliation claim.
It is not sufficient that Plaintiffs subjectively believed that the roster decision
violated Title IX. *See Reznik v. inContact, Inc.*, 18 F.4th 1257, 1263 (10th Cir.
2021). Rather, that belief about the legality of the conduct must also be "objectively
reasonable." *Id.* "[A]n *unreasonable* good-faith belief that the underlying conduct
violated" Title IX is not enough. *Crumpacker v. Kan. Dep't of Hum. Res.*, 338 F.3d
1163, 1171 (10th Cir. 2003) (discussing Title VII retaliation claim); *see Kincaid v.
Unified Sch. Dist. No. 500, Kan. City, Kan.*, 94 F.4th 936, 943 (10th Cir. 2024)
(applying the same standard to Title VII and Title IX retaliation claims).

Plaintiffs' view of Title IX was not objectively reasonable under the
circumstances. Federal laws prohibiting sex discrimination have been interpreted
to encompass transgender status for almost five years. *See generally Bostock*, 590
U.S. 644. And in California, where Batie-Smoose and Slusser live and work and

where SJSU is located, the Ninth Circuit had made clear that transgender women
had a constitutional right to participate in athletics—a right Title IX cannot
reasonably be understood to override.  *Hecox*, 104 F.4th at 1089.  California state
law and CSU policy also prohibit discrimination based on transgender status.  Cal.
Educ. Code §§ 66250–66292; Interim CSU Nondiscrimination Policy.[8]  This does not
impermissibly require "specialized legal knowledge."  *Reznik*, 18 F.4th at 1265.
With a simple Google search, both Slusser and Batie-Smoose could have learned
that rostering an allegedly transgender player did not violate Title IX.  Thus, just as
"a reasonable employee likely knows that discrimination based on race and/or
national origin is unlawful," a reasonable employee (or student) "likely knows that
discrimination on the basis of transgender status" is unlawful.  *See id.*

Slusser's Title IX retaliation claim independently fails because she has not
alleged materially adverse action—another required element of a retaliation claim.
None of the retaliatory acts Slusser points to would have "dissuaded a reasonable
[student] from making or supporting a charge of discrimination."  *Hiatt v. Colo.
Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (quoting *Burlington N. & Santa Fe
Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Slusser remained on the team and on
scholarship, and the Tenth Circuit has held that "unsubstantiated oral reprimands"
of the type she alleges do not rise to the level of being materially adverse.  *Sanchez*

---

[8] Available at: https://calstate.policystat.com/policy/16328404/latest/.

*v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998), *abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) (internal quotations omitted).

Slusser's conclusory allegation that Coach Kress failed to protect her "against potential physical threats," Compl. ¶ 337(d), is belied by her own allegations that Coach Kress contacted the police officer who was traveling with the team for the Colorado State game, who then reached out to campus security, and reported the incident to the SJSU Title IX officer. *Id.* ¶¶ 513, 607. Likewise, Slusser's allegation that Coach Kress "told others that he has filed Title IX complaints against Slusser," *id.* ¶ 337(c), is not supported by any allegation that he actually filed any complaint *against* Slusser—only one *on her behalf*, *see id.* ¶ 607.

What remains are the allegations that Coach Kress gave Slusser the cold shoulder and made comments about her to teammates. *Id.* ¶ 337(a). But "alleged snubs, though surely unpleasant and disturbing, are insufficient to support a claim of retaliation under [Tenth Circuit] case law." *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1216 (10th Cir. 2010); *see also Sanchez*, 164 F.3d at 533.

### E.    Plaintiffs Fail to State any Equal Protection Claim

If the Court reaches the merits of Plaintiffs' Equal Protection claims (which it need not do, *see supra* p. 15–20), those claims fail. Plaintiffs except Batie-Smoose advance two separate Equal Protection claims. First, as with their Title IX claim, Plaintiffs contend that rostering an allegedly transgender player denied them equal opportunity. Second, they claim that dressing, changing, and sharing hotel rooms

with the allegedly transgender player violated their bodily privacy.  Both theories

fail because the Equal Protection Clause actually *prohibits* discrimination on the

basis of transgender status.  *Fowler*, 104 F.4th at 794; *see also supra* p. 21–22.

Thus, as this Court recognized in denying Plaintiffs' motion for a preliminary

injunction, the Equal Protection Clause cannot support either theory because it

cannot *require* what it prohibits—the exclusion of transgender women from

women's sports or other spaces solely because they are transgender.

### F.    Plaintiffs Fail to State a First Amendment Claim

#### 1.    Batie-Smoose Fails to State a First Amendment Claim

Plaintiff Batie-Smoose fails to state a claim for First Amendment retaliation

because she cannot establish that her "speech was not made 'pursuant to their

official duties.'"  *Brown v. City of Tulsa*, No. 23-5133, 2025 WL 38071, at *9–10

(10th Cir. Jan. 7, 2025); *see also Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  To

the contrary, Batie-Smoose's Title IX report—the only speech she specifically

identifies as the basis for retaliation—was submitted as part of her job.  The Tenth

Circuit has repeatedly held that reports of misconduct or unlawful behavior are

speech pursuant to a public employee's official duties where the employer either

requires or expects the employee to report such misconduct.  *Casey v. W. Las Vegas*

*Indep. Sch. Dist.*, 473 F.3d 1323, 1329 (10th Cir. 2007) (Gorsuch, J.).  And the

inference that a report is pursuant to official duties is stronger where the employee

has reported the misconduct through the provided-for official channels.  *See id.*

26

That is what happened here.  Federal law requires SJSU to mandate employees like Batie-Smoose to report sex discrimination to the Title IX Coordinator.  34 C.F.R. § 106.44(c)(2)(i).  That made it part of her job duties.  *See Casey*, 473 F.3d at 1329 ("[B]ecause advising her employer on 'the lawful and proper way to conduct school business' was admittedly part of her portfolio, we cannot help but conclude that [the plaintiff] made these statements [reporting violations of law] pursuant to her official duties.").  As further support for the same conclusion, Batie-Smoose made her report of discrimination pursuant to employer-provided channels to SJSU's Title IX Coordinator.  *See* Compl. ¶ 581; *id.* App. H.

### 2.    Slusser Fails to State a First Amendment Claim

Slusser's First Amendment claim fails too, because she has not alleged "an injury that would chill a person of ordinary firmness from continuing to engage in [protected] activity." *Worrell v. Henry*, 219 F.3d 1197, 1212–13 (10th Cir. 2000).

Slusser alleges that Alexander made a statement to her about her scholarship, but that is not nearly enough to meet the standard.  Slusser of course does not allege any effect on her scholarship or any concrete actions taken by the university that could have affected it.  And Slusser notably does not allege that Alexander mischaracterized Slusser's letter of intent when Alexander indicated that Slusser's speech had violated its terms.

Slusser also comes up short with her allegations that Coach Kress stopped speaking to her, made denigrating comments about her to her teammates, filed a

Title IX complaint regarding her conduct, sought the advice of counsel regarding
removing Slusser from the team, and failed to protect Slusser from a risk of injury
at the game against Colorado State University.  Compl. ¶ 337.  As an initial matter,
and as already explained, Plaintiffs' own complaint alleges that Coach Kress filed a
Title IX complaint *on Slusser's behalf*, not against her.  *See supra* p. 25.  The
allegation that Coach Kress allegedly consulted counsel is also unavailing, as the
Tenth Circuit has held that even the far more dramatic step of interfering with a
plaintiff's ability to hire counsel is not sufficient to chill a person of ordinary
firmness.  *Smith v. Plati*, 258 F.3d 1167, 1177 n.9 (10th Cir. 2001).  In the same
case, the Tenth Circuit held that the defendants' repeated efforts to stymie the
plaintiff's ability to publish information about a school's athletic program—
including by barring him from practices, denying press credentials, and threatening
to copyright information—was not enough.  *Id.*  Slusser's allegations that Coach
Kress, while continuing to coach a team she captained, gave her the cold shoulder
fall even further short of the bar.

The sparse allegation that Coach Kress filed a Title IX complaint concerning
Slusser's conduct also cannot sustain this claim.  Plaintiffs' own allegations reveal
that Coach Kress perceived Slusser's opposition to rostering an allegedly
transgender player and her related public comments to be "hateful" and
discriminatory towards that player.  Reporting potential discriminatory conduct—
which will often express some viewpoint—with a good faith basis for believing it to

28

be unlawful cannot support a First Amendment retaliation claim.  *See Stetzel v. Holubek*, 661 F. App'x 920, 922 (10th Cir. 2016) (holding that a *false* incident report could be retaliatory conduct); *see also Nieves v. Bartlett*, 587 U.S. 391, 408 (2019) (holding that a retaliatory arrest claim not available as a matter of law where defendants had probable cause to arrest the plaintiff).  In sum, the actions alleged would not chill a person of ordinary firmness from continuing to speak.  Slusser's own actions—joining a lawsuit to challenge the TEP, Compl. ¶ 320, and publicly criticizing SJSU's rostering decision to "journalists and in public forums," *id.* ¶ 337(c), including on the Megyn Kelly Show, *see id.* ¶ 598 n.62—confirm as much.

### G.    The State Law Claims Must Be Dismissed

In addition to sovereign immunity and other threshold issues described above, Plaintiffs' state law claims also fail on the merits.  The negligent misrepresentation claim fails because Plaintiffs do not allege any *affirmative* misstatement of fact.  *Diediker v. Peelle Fin. Corp.*, 60 Cal. App. 4th 288, 298 (1997); *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 906 F. Supp. 2d 1108, 1113 (D. Colo. 2012) (applying California law).  And the fraud claim fails because Plaintiffs do not allege omission of any fact that Coach Kress had a "duty to disclose."  *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011).  At most, Plaintiffs allege that recruiting for a women's team "implies (and creates a justifiable expectation that) all student-athletes on the team are women by sex."  Compl. ¶ 743.  But the complaint makes clear that is wrong: At the time these

Plaintiffs were recruited, the NCAA and MWC openly allowed eligible transgender

women to compete on women's teams. *See id.* ¶¶ 743, 137 n.40, 193, 200.

Finally, Plaintiffs' state law claims are preempted by the Family Educational

Rights and Privacy Act ("FERPA") and its regulations, which prohibit disclosing

personally identifiable information from a student's education records. 20 U.S.C.

§ 1232g(b)(1); 34 C.F.R. § 99.30(a); *Rim of the World Unified Sch. Dist. v. Super. Ct.*,

104 Cal. App. 4th 1393, 1399 (2002) (state disclosure law preempted by FERPA).

## V.    **CONCLUSION**

The claims against the CSU Defendants should be dismissed for lack of

personal jurisdiction or based on improper venue. Alternatively, these claims

should be severed and transferred to the Northern District of California. If not

transferred, these claims should be dismissed based on mootness, immunity

doctrines, and/or failure to state a claim.

Respectfully submitted this 23rd day of January 2024,

MUNGER, TOLLES & OLSON LLP

*/s/ Bryan H. Heckenlively*

Bryan H. Heckenlively
Jennifer L. Bryant
Helen E. White
560 Mission Street
San Francisco, CA 94105
(415) 512-4000
bryan.heckenlively@mto.com

Attorneys for CSU Defendants

## Certification Regarding the Use of Artificial Intelligence

I certify that no portion of this filing was drafted by artificial intelligence.

/s/ Bryan H. Heckenlively
Bryan H. Heckenlively

## Certification of Conferral

Pursuant to the District of Colorado Local Rules of Civil Practice, I certify that I made a good-faith effort to confer with Plaintiffs regarding this motion.

On January 17, 2025, counsel for the CSU Defendants, the Mountain West Defendants and Plaintiffs met and conferred regarding this motion via a Microsoft Teams videoconference. Lead counsel and additional counsel for each party participated. During that conference, counsel for the CSU Defendants described for Plaintiffs' counsel each of the grounds on which the CSU Defendants would seek dismissal or other relief in this motion.

The CSU Defendants began by describing their arguments for dismissal based on personal jurisdiction and venue and the motion, in the alternative, to sever claims against the CSU Defendants and transfer them to the Northern District of California. Plaintiffs did not ask any questions of the CSU Defendants about these arguments.

The CSU Defendants then turned to their argument that the claims for prospective relief against the CSU Defendants were moot due to the lack of any allegation that the allegedly transgender player had remaining NCAA eligibility or that any other transgender player would be competing in the future.

The CSU Defendants then walked through the Complaint claim by claim, asking Plaintiffs clarifying questions and providing substantive descriptions of the grounds for dismissal that the CSU Defendants would assert in their motion:

***State Law Claims.***  The CSU Defendants began with the state law claims. The CSU Defendants first asked whether Plaintiffs were bringing the state tort claims against Coach Kress in his official or personal capacity.  Plaintiffs' counsel indicated that they would revert back on Tuesday, January 21, 2025 with firm answers, but that they believed the claims were only official capacity claims.  When asked, Plaintiffs' counsel also indicated that Plaintiffs were not seeking injunctive relief on these tort claims, but that they would give the CSU Defendants more concrete answers on January 21.

The CSU Defendants explained that sovereign immunity barred the state law claims for damages.  The CSU Defendants further explained that these state law claims failed on the merits because (1) the complaint itself states that the NCAA and MWC publicly permitted transgender women to play on women's sports teams, undermining any theory that Coach Kress had a duty to disclose the presence of an allegedly transgender player; and (2) FERPA preempts the state tort claims because FERPA prohibits disclosure of the information that Plaintiffs contend state law required to be disclosed.

***Title IX – Equal Opportunity.***  The CSU Defendants explained that in addition to the cross-cutting grounds for dismissal already discussed, they would be seeking dismissal of the Title IX equal opportunity claims on the grounds that Plaintiffs' theory was inconsistent with Tenth Circuit and Supreme Court precedent holding that discrimination against transgender people is necessarily a form of discrimination on the basis of sex.

***Title IX – Retaliation.***  The CSU Defendants first asked Plaintiffs whether they planned to seek any injunctive relief related to these claims, because none of the enumerated requests for relief appeared to be an injunction related to those claims.  Plaintiffs' counsel explained that they would be seeking injunctive relief with respect to Plaintiff Batie-Smoose, seeking to reverse her suspension.  Counsel for the CSU Defendants pointed out that this was not contained anywhere in the prayer for relief.  The CSU Defendants then gave an overview of the legal grounds for dismissing these claims that are set forth in this motion.

***Equal Protection Claims.***  The CSU Defendants first asked whether Plaintiffs were seeking damages on the Equal Protection claim against the CSU Board of Trustees.  Plaintiffs indicated that they were, and the CSU Defendants noted that that would be barred by sovereign immunity.  The CSU Defendants also asked whether Plaintiffs had intended to bring individual capacity claims for damages related to bodily privacy violations pursuant to Section 1983—a statute mentioned in relation to other claims in the complaint, but not this one.  Plaintiffs indicated that they did intend to do so.  The CSU Defendants pointed out that this was a basis for dismissal because there is not an implied cause of action for damages under the Constitution itself.

On the substance of these claims, the CSU Defendants explained that they would seek dismissal of the CSU Board of Trustees on the same grounds as the Title

IX equal opportunity claim—namely, that Tenth Circuit and Supreme Court precedent precludes Plaintiffs' reading of the Equal Protection Clause.

***First Amendment Claims.*** The CSU Defendants described for Plaintiffs the grounds for dismissal of the First Amendment claims set forth in this motion. Here, too, the CSU Defendants noted that Plaintiffs had failed to bring these claims against the individual Defendants in their personal capacity (Count X) under Section 1983—a defect that could be fixed with amendment. The CSU Defendants also pointed out that sovereign immunity barred any damages Plaintiffs might seek pursuant to Count IX. The CSU Defendants also asked whether Plaintiffs understood these to be First Amendment retaliation claims or something else. Plaintiffs indicated that they would get back to the CSU Defendants on Tuesday with clarity on this point. In the back and forth about this claim, Plaintiffs also indicated that they had new evidence—presumably from the preliminary injunction stage—regarding the circumstances in which the TPP was adopted that had not been incorporated into their complaint.

After counsel for the Mountain West Defendants walked through the grounds for their motion, the parties discussed whether Plaintiffs planned to amend the complaint as a result of the meet and confer (or otherwise). Defendants pointed out that Plaintiffs had indicated they had new facts about the TPP's adoption that were inconsistent with the allegations in the complaint and that Defendants had raised several particular grounds for dismissal that could be addressed with amendment. Defendants explained that, in their view, the spirit and purpose of the meet and

confer requirement for Rule 12 motions was to avoid amendments in response to motions to dismiss that fix technical pleading problems, like the ones raised by Defendants in the meet and confer.  Plaintiffs indicated that they were uncertain whether they would amend at all, but indicated that they might not know before the motions were due on January 23, 2025 and in any event would be unlikely to be able to amend by that date.  Defendants offered to enter into a stipulation to extend the time for filing the motions to allow Plaintiffs' the opportunity to amend. Plaintiffs indicated that they would get back to Defendants on this issue on January 21.

On January 21, 2025, counsel for Plaintiffs emailed all Defendants' counsel as a follow-up to the meet and confer.  Counsel did not address whether Plaintiffs would amend.  Nor did they address the CSU Defendants' multiple clarifying questions regarding Plaintiffs complaint that would have narrowed—or at least clarified—the motion.  Instead, Plaintiffs indicated that they would make "two concessions."  First, Plaintiffs agreed that they "will not seek injunctive relief from CSU Board or SJSU for the Section 1983 and constitutional claims."  Second, Plaintiffs agreed that the exhaustion of the allegedly transgender player's collegiate eligibility would moot any request for injunctive relief related to that player's eligibility.

On January 22, 2025, the CSU Defendants responded to ask whether Plaintiffs intended to amend their complaint and again offered to jointly move to

extend the motions schedule to permit them to do so.  The CSU Defendants also asked several clarifying questions regarding these concessions.

Plaintiffs responded by email on January 23, 2025 stating that they "do not agree that Defendants identified issues warranting amendment, but that Plaintiffs do not intend to waive the right to amend after reviewing . . . such motion(s) that may be filed by Defendants."  Plaintiffs also indicated (1) that they "reserved the right to seek injunctive relief on their state tort claims;" (2) that they would not clarify which portions of their prayer for relief were affected by their concessions because, in their view, notice pleading did not require their prayer for relief to be so specific; and (3) that their concession regarding the constitutional and Section 1983 claims did not extend to their requests for declaratory relief.

*/s/ Bryan H. Heckenlively*
Bryan H. Heckenlively

## **Certificate of Service**

I hereby certify that on this 23rd day of January, 2025, the foregoing Rule

12(b) Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, to Sever and

Transfer was filed and served via CM/ECF to all counsel of record.

*/s/ Bryan H. Heckenlively*
Bryan H. Heckenlively
