**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-03155-SKC-MDB

BROOKE SLUSSER, *et al.*,

      Plaintiffs,

v.

THE MOUNTAIN WEST CONFERENCE, *et al.*,

      Defendants.

**MOTION TO RESCIND UNIFORM CIVIL PRACTICE
STANDARD 43.1A(a) AND FOR RECUSAL**

This case concerns whether Blaire Fleming is a man or a woman. Plaintiffs contend that Mr. Fleming is a biological man and that therefore Defendants' decision to roster him on the San Jose State University ("SJSU") women's volleyball team violated Plaintiffs'—who are Mountain West Conference ("MWC") women volleyball players and a coach—right against sex discrimination under Title IX and the Equal Protection Clause of the Fourteenth Amendment. Defendants, by contrast, assert that because Blaire Fleming self identifies as a transgender woman, he therefore *is* a woman and was entitled to play in collegiate women's sports under Title IX and the Fourteenth Amendment.

While the parties' dispute arises from the "robust national debate regarding the topic of transgender identifying males competing against girls and women in sport," Compl. ¶ 1, the participants in this case are entitled to an impartial judicial forum free from the appearance of prejudgment or partiality toward one side or viewpoint in this contentious debate. *See* 28 U.S.C. § 455(a). Unfortunately, this Court is not that. It has publicly prejudged the core question this case presents—whether sex and gender are biological facts or social constructions—through adoption of its Uniform Civil Practice Standard 43.1A(a) that commands, under penalty of contempt, that all participants to the case use the "preferred" pronouns of individuals like Mr. Fleming whose preferred pronouns do not align with his biological sex.

Because Uniform Civil Practice Standard 43.1A(a) restricts Plaintiffs' and their counsel's speech, the Court should rescind Uniform Civil Practice Standard

43.1A(a). Moreover, because the Practice Standard and other facts discussed below demonstrate actual bias and/or the appearance of partiality on the topics at issue in this case, the district judge should recuse from any further action in this case.

## FACTS

On December 9, 2024, Judge Crews promulgated "Uniform Civil Practice Standards" that "apply to all civil actions pending" before him. SKC Civ. Practice Standard ("SKC Stand.") 1.1(a). These Uniform Civil Practice Standards were simultaneously adopted by "Judges Arguello, Rodriguez, Sweeney, Wang, [and] Gallagher." *Id.* Standard 43.1A(a), entitled "Courtroom Decorum," (referred to herein as the "Preferred Pronouns Order" or "PPO") requires witnesses, parties, and counsel to use the preferred pronouns of other participants to the proceeding—even if the preferred pronouns of an individual do not align with that individual's biological sex. First, the PPO "encourages" counsel "to identify the applicable pronouns of counsel, litigants, and witnesses at the earliest juncture possible." SKC Stand. 43.1A(a)(1). Second, the PPO requires "[a]ll parties" to "[r]efer to all other persons by their surnames . . . and applicable pronouns." *Id.* Third, the PPO states that "should the wrong pronoun be used" by any person involved in the litigation, counsel is "encouraged to bring that to the Court's attention at the time, or through a subsequent email to Chambers." *Id.*[1]

---

[1] The use of the passive voice in this sentence obscures who the PPO applies to. Without a subject of this sentence, the PPO as drafted applies not only to the parties and counsel, but also any witness, reporter, spectator, court staff, or other individual in any way involved in a case.

Failure to use the "preferred" pronouns of a participant in the case "may result in . . . other appropriate sanctions." SKC Stand.1.1(c).[2]

The PPO has substantial implications for this case, because it prohibits Plaintiffs' speech about the dispositive question of Blaire Fleming's sex and reflects pre-judgment of a key issue: whether "sex" means "biological sex" or "gender identity." On one hand, Plaintiffs contend that "Blaire Fleming is male" and therefore the decisions of SJSU and the MWC to permit him to compete on the SJSU women's volleyball team violated Title IX and the Equal Protection Clause. Compl. ¶¶ 91, 638. Indeed, the preceding sentence's use of the pronoun "*him*" to refer to Blaire Fleming violates the PPO because Mr. Fleming's "preferred" pronouns as a transgender-identifying male are "she" and "her." *See* SJSU's Motion to Dismiss, ECF No. 67, p.1 (Jan. 23, 2025) (using "she" to refer to Mr. Fleming).

These speech-restrictive problems will only compound as the case proceeds. In their response to Defendants' motion to dismiss, Plaintiffs will refer to Mr. Fleming as a male, using the pronouns "he" and "him." *See* Exs. 1 and 2, Declarations of William Bock ("Bock Decl.") and Justin Olson ("Olson Decl.") at ¶ 4. Plaintiffs' counsels' duty of zealous advocacy prohibits them from asking participants in the case what their preferred pronouns are as required by the PPO. *Id.* at ¶ 5. Nor can counsel use pronouns inconsistent with biological sex in depositions, at trial, or in case-related

---

[2] The December 9, 2024 PPO, replaced a set of uniform civil practice standards promulgated in December 2022, before Judge Crews received his Article III commission.

communications. *Id.* at ¶ 6. Plaintiffs, women volleyball players who have been denied equal opportunity because of their sex, cannot use pronouns inconsistent with biological sex because to do so reflects a lie that sex is malleable and changeable, not anchored to biological reality. Ex. 3, Declaration of Brooke Slusser ("Slusser Decl.") at ¶ 4. Both Plaintiffs and their counsel face a risk for speaking consistently with biological science, their experience, and the law, as the PPO threatens them with the full panoply of sanctions for violating an order of the Court, including fines, attorneys' fees and expenses, default judgment or dismissal. Hughes, Permissible sanctions in civil contempt proceedings, 7A Fed. Proc., L. Ed. § 17:39 (Nov. 2024); *see also* Slusser Decl. at ¶ 5; Bock & Olson Decls. at ¶ 7. Plaintiffs similarly fear that the PPO reflects the Court has prejudged a key question in this case—whether anyone who identifies with the opposite sex becomes a member of that sex. Slusser Decl. at ¶ 6.

On the other hand, Defendants contend that Blaire Fleming is a "woman," and therefore Title IX's prohibition on sex discrimination required SJSU to roster him on its women's volleyball team. *E.g.*, ECF No. 67, pgs. 1, 3 (Jan. 23, 2025). SJSU's recently filed motion to dismiss repeatedly refers to Mr. Fleming as a woman, using the pronouns "she" and "her." *See generally id.*; *see also* MWC's Motion to Dismiss, ECF No. 66, p.25 (Jan. 23, 2025) (referring to Mr. Fleming as "she"). The PPO thus not only bolsters Defendants' position in the case, but also presumptively resolves the disputed premise of the case in Defendants' favor. If Blaire Fleming is a "she," "her,"

4

and "Ms.," *i.e.*, a woman in the determination of the Court, he is entitled to the protections of Title IX and the Equal Protection Clause as a woman.

## ARGUMENT

The PPO violates the First and Fourteenth amendments because it is a viewpoint- and content-based restriction on speech; it is overbroad and vague; and it imposes a prior restraint on speech. Accordingly, the Court must immediately rescind it. Moreover, the Court must recuse from this case due to the appearance of partiality created by the PPO and the apparent philosophical bias and unwillingness to accept competing viewpoints implicit in having adopted it.

## 1.     The PPO Violates the First and Fourteenth Amendments.

Although "[e]very trial judge is charged with the primary responsibility of ensuring that the judicial proceedings over which he presides are carried out with decorum[,] . . . any restrictive order [issued by the judge] involving a prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of First Amendment rights will interfere with the rights of the parties to a fair trial." *CBS Inc. v. Young*, 522 F.2d 234, 241 (6th Cir. 1975); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984) (Participants in litigation do not "surrender their First Amendment rights at the courthouse door."). Here, the PPO violates basic First Amendment principles.

### 1.1.    The PPO Regulates Speech.

First, the PPO simultaneously restricts *and* compels speech. Under penalty of the contempt power, it requires participants in litigation before the Court to identify and use the preferred pronouns of others, even if those pronouns do not align with biological sex. SKC Stand. 1.1(c), 43.1A(a). The Order next requires that those preferred pronouns be used instead of pronouns that align with biological sex. *Id.* And the Order enlists others to inform the Court of violations so the Court can issue "appropriate sanctions." *Id.* Because the Order restricts pure speech, it triggers First Amendment protection. *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023).

### 1.2.    The PPO is a Content- and Viewpoint-Based Restriction.

Second, the PPO is a content-based restriction on speech that prohibits expression of a viewpoint at issue in this case: that a biological male identifying as a woman remains a man for purposes of the law. The Order is therefore subject to "the most exacting scrutiny." *Texas v. Johnson*, 491 U.S. 397, 412 (1989). "A content-based regulation is one that is 'based upon either the content or the subject matter of the speech.'" *Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013). Here, the PPO regulates a particular subject matter—pronoun usage. And the PPO restricts a specific viewpoint on pronoun usage—that pronouns should align with an individual's biological sex. "Viewpoint discrimination" like this "is a subset—and a particularly 'egregious form'—of content discrimination." *Id.* "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of

the speaker is the rationale for the restriction." *Id.* While a general content-based regulation is subject to strict scrutiny, a viewpoint restriction of speech is *per se* unlawful and cannot be justified under any circumstances. *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 11 (2018) ("[R]estrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited.").

### 1.3.    The PPO is Overbroad.

Third, the PPO is overbroad. Under the First Amendment overbreadth doctrine, one may challenge a speech-restrictive regulation on its face because an overbroad order prohibits constitutionally protected conduct which "threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 601, 615 (1973). The Court has "justified this doctrine on the ground that it provides breathing room for free expression." *United States v. Hansen*, 599 U.S. 762, 769–70 (2023). An order that "'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep,'" is "facially invalid" under the overbreadth doctrine. *Id.* at 770.

Here, SKC Stand. 43.1A on decorum has some "plainly legitimate" applications. For example, the Court has unquestioned authority to maintain courtroom order and enforce decorum requiring persons present in the courtroom to "[s]tand when the Judge enters or leaves the courtroom; when addressing the Court; and when the jury enters or leaves the courtroom." *See* SKC Stand. 43.1A(a)(2)(A). But SKC Stand.

43.1A on decorum sweeps far more broadly than ensuring courtroom order to restrict speech regarding a whole subject matter of pronouns. Furthermore, the PPO restricts not only speech of counsel—but also witnesses, parties, and other participants in the litigation. It "deter[s] or 'chill[s]' constitutionally protected speech" because "would-be speakers [must] remain silent" regarding their understanding of sex and gender in a case that turns on precisely that issue. *Hansen*, 599 U.S. at 769–70.

### 1.4. The PPO is Void for Vagueness.

Fourth, the PPO is void for vagueness. The void-for-vagueness doctrine requires a penal regulation to define the prohibited conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, . . . the more important aspect of vagueness doctrine 'is . . . the requirement that [there be] minimal guidelines to govern . . . enforcement." *Id.* The PPO is void for vagueness because it does not define what a "wrong pronoun" is. It is unclear from the Order whether a person's pronouns are purely a matter of self-identification, or whether pronouns must align to biological sex, or whether there is some other standard for determining a person's pronouns. The Order instead "vests virtually complete discretion in the hands of the" Court to determine whether a particular pronoun was "wrong" subject to the contempt power. *Id.* Furthermore, the scope of the PPO is unclear. In a key sentence—"Should the wrong

pronoun be used, counsel are encouraged to bring that to the Court's attention at the time, or through a subsequent email to Chambers"—the Order uses the passive voice. The clause *should the wrong pronoun be used* does not make clear its subject—should the wrong pronoun be used *by whom*? The Order thus does not define the scope of its application and could apply not only to litigants, witnesses, and counsel, but also to spectators and the press.

### 1.5. The PPO is a Prior Restraint.

Fifth, the PPO is a prior restraint on speech. It preemptively prohibits "the wrong pronoun [from] be[ing] used" in any action before the Court. SKC Stand. 43.1A(a)(1). It is therefore presumptively unconstitutional under the First Amendment. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 556 (1976) (First Amendment affords "special protection" against judicial orders "that impose a 'previous' or 'prior' restraint on speech"); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) ("heavy presumption" against "constitutional validity" of "any prior restraint on expression").

### 1.6. Courtroom Decorum does not Justify the Practice Standard.

"Creating a courtroom where all litigants, witnesses, and counsel feel welcome and respected," SKC Stand. 43.1A(a)(1), cannot justify restricting a participant's speech on pronoun usage. As a viewpoint restriction on speech, the Order is unconstitutional *per se*. There is no governmental interest that could save the Order. *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 11 (2018) ("[R]estrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited.").

But even if the PPO is merely a content-based restriction that does not prohibit a particular viewpoint, it does not satisfy strict scrutiny. *See id.* While "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence," *Anderson v. Dunn*, 19 U.S. 204, 227, 5 L. Ed. 242 (1821), this does not extend to the purported rationale for the PPO, that litigants subjectively "feel welcome and respected." Indeed, "welcome" and "respect" could likely never be a compelling interest in the context of court proceedings. Does a criminal defendant standing trial feel welcomed by the Court? Does a corporate executive subpoenaed to testify against a colleague feel welcome and respected? Does any witness under the bright light of cross examination feel "welcomed"? This kind of under inclusiveness (welcome for people with preferred pronouns, but not other litigants) dooms any compelling interest the Court could have.

But even if "welcome and respect" were a compelling governmental interest, the PPO is not narrowly tailored to that end. As the above examples show, the PPO is vastly underinclusive. Civil and criminal litigation almost always involves feelings of "unwelcome" and "disrespect." And to ensure decorum, the Court has available traditional means of doing so. It can impose a dress code, enforce silence in the gallery, require parties and spectators to stand when speaking to the Court, prohibit disruptive behavior, and require the parties to be respectful to each other and litigants in court. As the Court has seen, Plaintiffs and their counsel have been respectful and decorous. Yet, the PPO states they cannot speak inconsistently with biological science

and their experience about Mr. Fleming in this case without forfeiting their First Amendment rights. For these reasons, the Court should immediately rescind the PPO, including as it applies to this case.

**2.    The Court Should Also Recuse Itself from this Case.**

Even if the Court rescinds the PPO, it must recuse itself from the case and direct the Clerk to transfer the case to a judge who has not adopted the PPO. The PPO prejudges a central issue in the case—whether sex is immutable—in violation of 28 U.S.C. § 455(a).

The judicial recusal statute states, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The purpose of this provision is "to promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860 (1988). "The goal of section 455(a) is to avoid even the *appearance* of partiality." *Id.* (emphasis added). Section 455(a) thus requires no determination of bias in fact and applies even though no actual bias or prejudice has been shown. *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016). "Under § 455(a), all a party has to show is that a judge's impartiality *might* be questioned by a reasonable, well-informed observer." *Id.* "The party seeking a judge's disqualification must show that 'a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" *United States v. Walker*, 838 F. App'x 333, 337 (10th Cir. 2020) (quoting *United States v. Cooley*, 1 F.3d 985,

993 (10th Cir. 1993)). "Because this standard is an objective one, 'the inquiry is limited to outward manifestations and reasonable inferences drawn therefrom.'" *Id.* (cleaned up).

By promulgating the PPO, the Court has publicly stated its prejudgment of a key issue at the core of this case that is a matter of significant public debate: whether sex is immutable or changeable. For example, one of President Trump's earliest acts after being sworn into office was to issue an executive order, declaring that the "policy of the United States" that there are "two sexes, male and female" and that "[t]hese sexes are not changeable and are grounded in fundamental and incontrovertible reality." Exec. Order No. 14,168, 90 Fed. Reg. 8615, (Jan. 30, 2025). "The erasure of sex in language and policy has a corrosive impact not just on women but on the validity of the entire American system. Basing Federal policy on truth is critical to scientific inquiry, public safety, morale, and trust in government itself." *Id.* On the other side of this issue are cultural theorists like Judith Butler, for whom "gender is not an innate property but a system of social oppression that gains legibility through repetitious 'performance.' 'Gender identity' is a 'regulatory fiction,'" according to Butler and those who have a similar view. Leor Sapir, *Don't Say "They"*, City Journal (Apr. 24, 2022), https://www.city-journal.org/article/dont-say-they#. Key to this view of so-called "gender identity" is the control of language—specifically requiring pronoun usage consistent with a person's "chosen" gender. Jessica A. Clarke, *They, Them and Theirs*, 132 Harv L. Rev. 894, 957 (2019) (arguing that ending "gender identity"

discrimination requires forced usage of "preferred" pronouns), *available at* https://harvardlawreview.org/print/vol-132/they-them-and-theirs/.

The material point for this motion is not whether one view is right as a matter of morality or law—even though Plaintiffs maintain that, on the merits, the term "sex" in Title IX and Equal Protection caselaw does not encompass transgender status. Instead, by adopting the PPO, the Court has publicly prejudged the issue. *Cf.* Code of Conduct for United States Judges, Canon 3(A)(6)("A judge should not make public comment on the merits of a matter pending or impending in any court. . . .").

Consider an analogous hypothetical. Imagine a suit brought by abortion providers against an abortion-restrictive law. The case is assigned to a judge whose practice standards include a rule on decorum. In the decorum rule, the hypothetical judge states, *inter alia*:

**Court Room Decorum:**

All people are imbued with dignity. Therefore, any person appearing before the Court must treat all litigants, counsel, court personnel, and others with respect. Respect for the human person requires using the word "unborn child," "child," "person," "human being," "baby," and similar terms to refer to an unborn person. "Fetus" or similar phrases violate this order, and counsel is encouraged to inform the Court when such terms are used so it can issue appropriate corrective sanctions.

The abortion providers and the public would correctly understand such a practice standard to signal the judge's view, as a judge, of abortion rights and their legal validity. *Cf. Laird v. Tatum,* 409 U.S. 824, 835 (1972) (mem. op. by Rehnquist, J.) (distinguishing as an improper basis for recusal public positions taken when a judge

13

was a practicing attorney *before* entering judicial service for purposes of the recusal). Even if the judge were able to put aside his views about the nature of abortion and human life reflected in this hypothetical practice standard, the public would reasonably fear that the judge adopting such a standard was not an impartial arbiter. Or consider a decorum standard that is the mirror image of the PPO:

> **Court Room Decorum:**
>
> Creating a courtroom where all litigants, witnesses, and counsel feel welcome and respected is of utmost importance to this Court. Counsel are invited and encouraged to treat women and men according to their biological sex as ladies and gentlemen, respectively. For example, gentlemen must stand when a lady enters the room. Gentlemen are encouraged to hold the door for ladies. Gentlemen must wear suits and ties, and ladies must wear modest dresses. And gentlemen and ladies will be referred to with pronouns and titles consistent with their biological sex. Married women should be referred to as "Mrs.," and unmarried women should be referred to as "Ms." Should anyone depart from these requirements of decorum, counsel are encouraged to bring that to the Court's attention at the time, or through a subsequent email to Chambers.

To be sure, a judge cannot be disqualified for their private beliefs, *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976), but a judge cannot broadcast those beliefs under the guise of a "decorum" practice standard when doing so creates an appearance of partiality and violates basic First Amendment principles.

Here as well, the appearance of partiality created by the PPO underscores repetitive evidence of actual (even if perhaps unconscious) bias in the Court's statements *from the outset of this case*. For example, the Court began the November 20, 2024, status conference by stating: "Throughout the case I'm going to refer to the transgender athlete that's referenced in the parties' pleadings using she/her

pronouns based on what I understand to be her gender identity from the parties' fil-ings." Tr. 4:14-17. While the Court said the parties, "should not construe my use of she/her pronouns . . . as any indication that the Court has prejudged any issues," Tr. 5:1-3, such words inevitably raised a concern over prejudgment in a case that the Court itself said "involves a debate about gender and gender identity." Tr. 4:18-19. Further, the Court's characterization of what the case "involves" overlooked that the key issue under Title IX and Equal Protection is the meaning of "sex" not "gender and gender identity." Minutes later, the Court used the phrase "sex assigned at birth," again communicating prejudgment of the question of whether sex is fixed and immu-table. Tr. 9:19. Thus, from the start and through the PPO the Court has repeatedly signaled a preconceived view on a key issue in this case: whether sex is determined by choice or by biology.

In this case involving sex and gender identity, an impartial forum cannot exist where the Court has so forcefully signaled the Courts' personal views on sex and gen-der identity that the Court is willing to use its contempt power to enforce those views.

## CONCLUSION

For the foregoing reasons, Plaintiffs request the Court immediately rescind the PPO as a violation of the First and Fourteenth amendments. Plaintiffs further re-spectfully request the Court recuse itself from this case and reassign the matter to another judge who has not adopted the PPO.

Dated: February 18, 2025        Respectfully submitted,

*/s/ William Bock III*

William Bock III, CO Atty. No. 45633
Justin R. Olson, IN No. 31450-49
Kroger, Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Tel: (317) 692-9000
Fax: (317) 264-6832
E-mail: wbock@kgrlaw.com
E-mail: jolson@kgrlaw.com

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATION OF CONFERRAL**

Pursuant to the District of Colorado's Local Rule 7.1(a) and Judge Crews' Standing Order for Civil Cases C.1., the undersigned certifies that Plaintiffs have made and successfully completed a good-faith effort to confer with Defendants regarding this motion.

On Friday, February 14, 2025, the undersigned sent an email to all counsel of record in this case requesting a conference on Plaintiffs' anticipated motion to rescind Uniform Civil Practice Standard 43.1a(A) and for Recusal. On Monday, February 17, 2025, at 9:00 a.m. Mountain Time, counsel for the Plaintiffs, William Bock and Justin Olson and counsel for the Defendants Wesley Powell and Helen White conferred via a prearranged telephone call regarding the proposed motion. Counsel for the Defendants asked questions regarding the basis for the motion and the scope of relief being sought.

Defendants advised that they were taking no position on the motion to rescind Uniform Civil Practice Standard 43.1a(A).

Defendants advised that they oppose the motion to recuse Judge Crews. Given the nature of a 28 U.S. Code § 455 motion for disqualification of a justice, judge, or magistrate judge, counsel for Plaintiffs did not press the Defendants for a full explanation of the basis for their opposition and understand solely that it is because they do not believe recusal is required. Plaintiffs understand that Defendants have no duty or requirement to express their position on a recusal motion or to respond to the same,

but that they may express such further reasons they may have in the event they
choose to respond to this aspect of Plaintiffs motion.

/s/ William Bock III
William Bock III, CO Atty. No. 45633

## **ARTIFICIAL INTELLIGENCE CERTIFICATION**

I certify that no portion of this filing was drafted by artificial intelligence.

*/s/ William Bock III*
William Bock III, CO Atty. No. 45633

## CERTIFICATE OF SERVICE

I certify that on February 18, 2025, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system on the following parties who have appeared in this case.

Helen E. White
MUNGER TOLLES & OLSON, LLP
601 Massachusetts Avenue NW,
Suite 500 E
Washington, D.C. 20001
helen.white@mto.com

Bryan Heckenlively
MUNGER TOLLES & OLSON, LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
bryan.heckenlively@mto.com

Jennifer L. Bryant
MUNGER TOLLES & OLSON, LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Jennifer.Bryant@mto.com

*Counsel for Board of Trustees of the California University System, Laura Alexander, Todd Kress, and Michelle McDonald Smith*

Kyler K. Burgi
Chad D. Williams
DAVIS GRAHAM & STUBBS L.L.P.
1550 17th Street, Suite 500
Denver, CO 80202
kyler.burgi@davisgraham.com
chad.williams@davisgraham.com

Wesley R. Powell
WILLKIE FARR & GALLAGHER L.L.P.
787 Seventh Avenue
New York, NY 10019
wpowell@willkie.com

Matt D. Basil
WILLKIE FARR & GALLAGHER L.L.P.
300 North LaSalle Drive
Chicago, IL 60654
mbasil@willkie.com

*Counsel for The Mountain West Conference and Gloria Nevarez*

*/s/ William Bock III*
William Bock III, CO Atty. No. 45633