IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03155-SKC-MDB

BROOKE SLUSSER, *et al.*,

    Plaintiffs,

v.

THE MOUNTAIN WEST CONFERENCE, *et al.*,

    Defendants.

---

**MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL ORDER
DENYING PLAINTIFFS' MOTION TO RESCIND UNIFORM
CIVIL PRACTICE STANDARD 43.1A(a) AND FOR RECUSAL (DKT. 76)**

---

When a court declares certain language "wrong" on its face in a case where the central legal dispute is the meaning of that language, fundamental questions about judicial neutrality and the First Amendment arise. At stake is not merely courtesy or decorum, but the integrity of the adversarial process. Pursuant to 28 U.S.C. § 1292(b), all Plaintiffs, by counsel, respectfully move for certification for interlocutory appeal the Court's February 24, 2025, Order Denying Plaintiffs' Motion to Rescind Uniform Civil Practice Standard 43.1(A) and For Recusal (Dkt. 76) ("Order").

## BACKGROUND

On February 18, 2025, Plaintiffs filed their Motion to Rescind Uniform Civil Practice Standard 43.1A(a) and for Recusal. (Dkt. 73) ("Motion"). First, Plaintiffs argued that the Court's Uniform Civil Practice Standard 43.1(A) (the "Preferred Pronouns Order" or "PPO") violated the First and Fourteenth Amendments because it is a viewpoint- and content-based restriction on speech, is overbroad and vague, and imposes a prior restraint on speech. Motion at 6–12. The PPO specifically designates the use of biologically accurate pronouns as "wrong" when they do not match an individual's preferred gender identity. Second, Plaintiffs argued that the Court should recuse itself from this case because by adopting the PPO the Court had prejudged a central issue in this case, namely, whether sex is immutable, in violation of 28 U.S.C. § 455(a). Motion at 12–16. This recusal request stems from the fact that the legal definition of "sex" lies at the heart of Plaintiffs' Title IX and Equal Protection claims.

1

On February 24, 2025, the Court denied Plaintiffs' Motion, concluding that "there is no need to 'rescind' the [PPO]" because "Plaintiffs' speech has neither been restricted nor compelled in this case, and they point to zero examples of this Court enforcing any such restrictions or compulsions on them." Order at 6. The Court did not address Plaintiffs' facial challenge to the PPO's constitutionality. With respect to the recusal request, the Court concluded "[t]he notion that a judge's mere use of preferred pronouns and accepted terminologies to reference potentially complex issues of biology indicates bias and prejudgment is definitional 'unsupported, irrational, or highly tenuous speculation.'" *Id.* at 8 (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)). The Court maintained that its statements exempting Plaintiffs from using preferred pronouns for Fleming eliminated any reasonable concerns about partiality. Plaintiffs now bring this Motion to Certify, requesting that the Court certify its February 24, 2025, Order for interlocutory appeal.

## **ARGUMENT**

Plaintiffs ask the Court to certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[1] An interlocutory order[2] may be certified when (1) it involves

---

[1] "[T]he Tenth Circuit has made clear that a district judge may instead issue a supplemental order certifying a previously issued order for appeal." *Kerr v. Hickenlooper*, No. 11-CV-01350-WJM-BNB, 2012 WL 4359076, at *3 (D. Colo. Sept. 21, 2012) (citing *Hous. Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir.1962) and *Shire LLC v. Sandoz Inc.*, No. 07–cv–00197, 2008 WL 5120728, at *1 (D. Colo. Dec. 5, 2008)).
[2] *In re Ad Hoc Comm. of Tort Victims*, No. 04 CV 08934 (CSH), 2005 WL 267564, at *2 (S.D.N.Y. Feb. 3, 2005) ("An order in which a judge declines to recuse himself or herself is unquestionably an interlocutory order.") (citation omitted).

2

a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *United States v. Abouselman*, 976 F.3d 1146, 1151 (10th Cir. 2020). This motion presents an extraordinary circumstance warranting immediate appellate review for the following reasons.

### A.  The Order Involves a Controlling Question of Law

"A question of law may be deemed 'controlling' if its resolution is quite likely to *affect the further course of the litigation*, even if not certain to do so." *Atl. Richfield Co. v. NL Indus., Inc.*, No. 20-cv-00234-NYW-KAS, 2023 WL 5333756, at *2 (D. Colo. Aug. 18, 2023) (emphasis added) (quoting *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996)). The Order presents two distinct controlling questions of law that will fundamentally shape how this case proceeds.

#### 1.  The Validity and Enforceability of Standard 43.1A(a)

The constitutionality of the PPO is a controlling question of law. This case will be litigated differently if the Tenth Circuit confirms that the PPO is unconstitutional and unburdens the parties from the its constraints on the parties and their advocacy.

The Court has not defended the PPO on the basis it was challenged, *i.e.*, as a violation of the First Amendment. *See* Motion at 5-11. Instead, the Court said only that, "Plaintiffs' speech has neither been restricted nor compelled *in this case*" and that there are "zero examples of this Court enforcing . . . restrictions or compulsions

3

*on them.*" Order at 6 (emphasis added). This response misses the mark. Plaintiffs brought a facial challenge to the PPO, arguing it is a viewpoint-based restriction, overbroad, and a prior restraint. Dkt. 6–9. None of these bases required a demonstration of past harm. Moreover, the Court has not rescinded the PPO, and Plaintiffs have submitted evidence it produces a chilling effect on their speech and advocacy. *Id*. Regardless of whether Plaintiffs have suffered past harm, they are entitled to rescission of the PPO going forward. It is untenable that the Court has sidestepped without discussion the constitutional validity of the PPO. Plaintiffs are entitled to a merits determination on the constitutional issues they raised. The Court should either rescind the PPO entirely or grant the motion to certify for interlocutory appeal.

The Court states that "the parties may refer to this [transgender] individual however they choose" and that "the parties should not construe my use of she/her pronouns in reference to this individual as any indication that the Court has prejudged any issues in this case." Order at 5 (quoting Dkt. 50, pp. 4–5 and Dkt. 51, pp. 3–4). The Court contends that via these concessions it "has given Plaintiffs free reign to argue th[eir] theory [of the case] without restricting or compelling their speech." *Id.* at 6. Respectfully, however, the Court's statements do not eliminate or address the constitutional questions raised by Plaintiffs. The Court did not rescind the PPO, and the Court's Order leaves unaddressed ambiguities in the applicability and enforceability of the PPO that impact this case.

4

First, as a constitutional matter, Plaintiffs' and counsels' free speech rights should not rest on this Court's discretion. *See, e.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988) (presumption a government official will adhere to standards absent from a regulation's face violates rule against unbridled discretion). The Court's Order does not address the plain meaning of the PPO that refers to "wrong pronouns" and by implication "right pronouns." Plaintiffs are still litigating under the stigma of the Court's belief that Plaintiffs and their counsel are using the "wrong" pronouns. This is unconstitutional view-point discrimination and therefore prejudicial as a matter of law in a case involving sex.

Second, the Order does not address the fact that the PPO "encourages" other counsel to report the use of the "wrong" pronouns, and the Court has not addressed whether counsel should report such if Plaintiffs use the "wrong" pronouns for anyone else except Blaire Fleming. Without rescinding the PPO, Plaintiffs remain at the mercy of the Court regarding enforcement of its PPO. The Court has told the rest of the public that it will receive complaints from those who report the use of the "wrong" pronouns. Indeed, when "wrong" pronouns are used, the PPO "encourage[s]" "counsel … to bring that to the Court's attention at the time, or through a subsequent email to Chambers." Order at 2. The undersigned have received no assurances from counsel for the Defendants that they will not report any use of "wrong" pronouns in this case. Moreover, nothing prevents any counsel for third-party witnesses or potential intervenors from making such reports. The threat that any counsel may report non-

5

compliance with the PPO is not an immaterial concern. That a report or complaint can be filed against the undersigned based on the PPO has a chilling effect on vigorous advocacy.

Third, the Court has stated only that it will not require any party to use she/her pronouns with respect to Fleming. Order at 4–5. The Court has not given any assurances that it will refrain from enforcing the PPO with respect to other witnesses, third parties, or potential intervenors whose preferred pronouns do not match their biological sex. The undersigned counsel and Brooke Slusser "cannot use pronouns inconsistent with biological sex in depositions, at trial, or in case-related communications." (Dkts. 73-1 ¶ 6, 73-2 ¶ 6; Dkt. 73-3 ¶ 4). The Court's Order, therefore, leaves open questions about how the PPO applies to other witnesses and third-parties besides Fleming.

Fourth, no precedent exists in this district or in the Tenth Circuit addressing the validity of a decorum standard like the PPO. Accordingly, the parties lack any guiding authority should any questions arise about the applicability of the PPO to the Plaintiffs' or counsels' use of pronouns for third-parties, witnesses, and intervenors or any reports or complaints be filed by any party or counsel alleging use of the "wrong" pronouns. *Kerr,* 2012 WL 4359076, at \*2 (granting motion to certify for interlocutory appeal, in part, because the law "is highly unsettled"). District Court of Colorado Local Attorney Rule 7 makes clear that "violation . . . of a practice standard" can result in "imposition of one or more of the following sanctions: [d]isbarment. . .

6

[s]uspension. . . [p]ublic censure . . . [and/or a] letter of admonition." Thus, as long as the PPO remains part of this Court's practice standards, there remain open questions regarding its enforceability and effect on this litigation and the Plaintiffs and their attorneys remain under threat of severe sanctions for a verbal misstep, notwithstanding the Court's statements exempting them from some aspects of the PPO. How this Court or the Tenth Circuit resolves these questions regarding the enforceability of the PPO will control the litigation of this case.

### 2.  Recusal

Whether recusal is required pursuant to 28 U.S.C. § 455 is a question of law. For interlocutory appeal, Plaintiffs must show this question is "controlling" under 28 U.S.C. § 1292(b). *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1028 (9th Cir. 1981)[3] (Boochever, J., dissenting) ("Judge Muecke's recusal order presents a question of law; whether that question is 'controlling' is the difficult issue."). As noted above, the Court concluded Plaintiffs' recusal motion is "based on 'unsupported, irrational, [and] highly tenuous speculation.'" Order at 3 (quoting *Hinman*, 831 F.2d at 939). However, this conclusion rests entirely on the premise that the Court cured any ground for reasonable concern over partiality through its on-the-record statements. With all due respect, however, the Court's comments do not render Plaintiffs' motion

---

[3] *Cause dismissed sub nom. Arizona v. U.S. Dist. Ct. for the Dist. of Arizona*, 459 U.S. 961 (1982), and *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983).

7

"unsupported" "irrational" or "speculative," nor change the appropriate legal analysis.

This case presents an unusually clear example of when recusal questions are controlling. Unlike typical recusal matters, the question on which recusal is based, *i.e.*, using feminine terminology consistent with the PPO to refer to Blaire Fleming, *as the Court admits the Court has done*, overlaps the controlling legal question in this case, which is whether under Title IX and the Equal Protection Clause Blaire Fleming is a female or entitled to be treated as one. Thus, the Court's opening statement to the parties on November 20, 2025, confirmed the Court's need to recuse, rather than providing a reason not to recuse.

As the Fifth Circuit has pointed out, a trial judge "must make every effort to preserve the appearance of strict impartiality," including by "exhibit[ing] neutrality in his language." *United States v. Candelaria-Gonzalez*, 547 F.2d 291, 297 (5th Cir. 1977). Thus, in "cases that turn on hotly-debated issues of sex and gender identity. . . . a court may have the most benign motives in honoring a party's request to be addressed with pronouns matching his 'deeply felt, inherent sense of his gender.' Yet in doing so, the court may unintentionally convey its tacit approval of the litigant's underlying legal position." *United States v. Varner*, 948 F.3d 250, 256 (5th Cir. 2020) (cleaned up). That is exactly what this Court did here, requiring recusal.

The recusal issue is controlling because the PPO takes a side regarding Blaire Fleming's sex. And this Court has, through the PPO and through the Court's

8

application of feminine pronouns *from the outset of the case*, taken a side on the question of Fleming's sex. *See, e.g.*, *Meriwether v. Hartop*, 992 F.3d 492, 508-09 (6th Cir. 2021) ("Pronouns can and do convey a powerful message implicating a sensitive topic of public concern . . . In short, when Meriwether waded into the pronoun debate, he waded into a matter of public concern."). The key question in this case under Title IX and Equal Protection is whether the Plaintiffs' legal rights were violated by Defendants' failure to protect Plaintiff from playing against or with a specific member *of the opposite sex, i.e.*, Fleming. In other words, the dispositive legal question is whether in the eyes of the law Fleming is female or is entitled to be treated as female. The Court irretrievably gave its tacit approval, or at least an appearance of tacit approval, to Defendants' position on that issue when, consistent with the Court's PPO, the Court stated that the Court would refer to Fleming using feminine terminology.

In fact, whether Title IX's use of "sex" requires use of a person's preferred pronouns or refers solely to biological sex—the very question at stake in this case—is being actively litigated throughout the federal court system. *See, e.g.*, *Texas v. Cardona*, 743 F. Supp. 3d 824, 838 (N.D. Tex. 2024); *Kansas v. United States Dep't of Educ.*, 739 F. Supp. 3d 902, 917 (D. Kan. 2024) (currently on appeal to the Tenth Circuit in Case No. 24-3097). Thus, by using feminine pronouns to refer to Fleming the Court gave tacit approval, or an appearance of tacit approval, to Defendants' position on the key disputed issue in this case, *i.e.*, whether under Title IX and Equal Protection Fleming is female or entitled to be treated as a female. The Court's

9

disclaimers, however well intended, cannot cure the prejudice caused by the Court choosing to refer to Blaire Fleming – a male – as "she/her" from the outset of this litigation and before inviting, much less hearing, any argument from the parties on this issue. In doing so, the Court picked a side. The side it chose was consistent with the plain meaning of the PPO – that using she/her pronouns for trans-identifying men is "right" and using he/him pronouns is "wrong."

Additionally, the Order does not address how the Court has framed the issues in this case. The Court stated, "I understand at some levels this case involves a debate about gender and gender identity." Order at 5 (quoting Dkt. 50, pp 4–5 & 51, pp. 3–4). Yet, this case is not about "gender identity." Gender identity is not an issue under Title IX. And neither the Supreme Court nor the Tenth Circuit has recognized transgender identity as a suspect class. *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024).

Moreover, the Court's most recent Order further complicates matters, by justifying the Court's use of Fleming's preferred pronouns as referencing, "potentially complex issues of biology." Order at 8. But Fleming's biology has not been disputed by any party. Asserting that Fleming's preferred pronouns allegedly arise from "complex issues of biology" indicates that the Court disagrees with Plaintiffs' claims, even on apparently undisputed issues, before any evidence has been introduced.

The Court protests that Plaintiffs are "attempt[ing] to restrain and compel this Court's speech to their preferred terms." Order at 8. Respectfully, however, that is not what the Plaintiffs are seeking. An alternative was for the Court to simply refrain

10

from using pronouns at all and to use only Fleming's last name, full name, or simply "the alleged transgender player" – a designation that at least one of the Defendants has used in this case. *E.g.*, Dkt. 28 at 14. The Court could have avoided the appearance of impropriety by taking this approach.

The Court's refusal to rescind the PPO and use of feminine terms to describe the individual whose sex is the key issue in the case demonstrates an appearance of partiality. The Court's publicly announced views on the use of pronouns confirm that the Court has a strongly held predetermined viewpoint, and that it is willing at least in some cases to enforce with onerous sanctions its view that sex is at least partly based upon, or reflective of, personal choice. Therefore, it is "wrong" (whether sanctionable in this case or not) for litigants to use pronouns different than those another person has chosen even if the pronouns are biologically accurate. This is quintessential actual bias[4] and well exceeds the bar for an appearance of partiality.

"Judicial partiality or bias is a fundamental and structural procedural error." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 367 (4th Cir. 2024). Therefore, where a district judge should recuse but does not the entire course

---

[4] "A man cannot be prejudiced against another without being biased against him; but he may be biased without being prejudiced. Bias is 'a particular influential power, which sways the judgment; the inclination of the mind towards a particular object.' It is not to be supposed that the legislature expected to secure in the juror a state of mind absolutely free from all inclination to one side or the other. The statute means that, although a juror has not formed a judgment for or against the prisoner, before the evidence is heard on the trial, yet, if he is under such an influence as so sways his mind to the one side or the other as to prevent his deciding the cause according to the evidence, he is incompetent." Bias, *Black's Law Dictionary* (2d ed.).

11

of the judicial proceedings, including any decision adverse to the party seeking recusal, must be vacated and redone. *Id.* at 368 (vacating district court's summary judgment order and remanding to a different judge for further proceedings due to improper failure to recuse pursuant to 28 U.S.C. § 455(a)). Thus, the denial of a motion to recuse evidently satisfies the interlocutory appeal standard calling for a controlling question of law. *See Lazofsky v. Sommerset Bus Co.*, 389 F. Supp. 1041, 1045 (E.D.N.Y. 1975) ("this Court is of the opinion, under and pursuant to Title 28 U.S.C. § 1292(b), that its order herein [refusing to recuse under recusal statutes, including 28 U.S.C. § 455] involves a controlling question of law as to which there may be a substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation"); *but see In re Cement Antitrust Litig.*, 673 F.2d at 1027 (ruling recusal decision was not a controlling question of law).

### B.  There is Substantial Ground for Difference of Opinions

At a minimum, there is a substantial ground *for difference of opinions* on whether the PPO violates the First and Fourteenth Amendments, whether the Court's statement that it would not enforce the PPO cures the constitutional violation, and whether the Court should recuse itself from this case. The Court's analysis of this prong of Section 1292(b) is informed by the importance of the questions at issue – namely who will adjudicate this case and how will the parties litigate it. *See* 16 Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 3930 (2d ed.

12

2012) ("The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case."). Furthermore, "a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." 13 Cyc. of Federal Proc. § 57:34 (Interlocutory appeals involving controlling question of law) (3d ed.) (*citing Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011)).

Lastly, the Court noted that other courts have used the preferred pronouns of transgender individuals in other cases. Order at 6–7 (citing cases). However, two of these cases did not address the central question in this lawsuit, whether sex is a biological fact that supports separate sex-categories for women's collegiate athletics or a mere social construct that permit schools and athletic associations to treat women's sports no different from co-ed sports. *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 (2023) (trans-identifying male challenging removal following unfavorable Board of Immigration Appeals determination); *Walker v. Cain*, No. 3:21-CV-273-CWR-FKB, 2023 WL 1466935, at *1 n.1 (S.D. Miss. Feb. 2, 2023) (trans-identifying male seeking habeas review). The use of preferred pronouns in these cases did not signal any prejudgment of an ultimate issue in the case.

For the cases that did involve issues related to trans-identifying men seeking access to women's spaces, *L.E. by Esquivel v. Lee*, 728 F. Supp. 3d 806 (M.D. Tenn. 2024) (high school sports); *Charles v. Neal*, No. 3:20-CV-599-RLM-MGG, 2022 WL 1091514, at *1 n.1 (N.D. Ind. Apr. 12, 2022) (trans-identifying male prisoner seeking

transfer to women's prison and order forcing prison guards to use preferred pronouns); *Keohane v. Jones*, 328 F. Supp. 3d 1288, 1292 n.1 (N.D. Fla. 2018) (trans-identifying male prisoner seeking hormone therapy); *Bayse v. Holt*, No. 1:17-CV-962-WSD, 2018 WL 3660367, at *1 n.1 (N.D. Ga. Jan. 5, 2018) (same), none of these cases was adjudicated by a Court that had subscribed to a decorum standard that stated that failing to use preferred pronouns was "wrong." At a minimum, reasonable minds can differ on the Court's conclusions in its Order about the constitutionality of the PPO and whether recusal is warranted under 28 U.S.C. § 455.

### C. An Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation

Clarifying the parameters and enforceability of the PPO and which Judge will adjudicate this matter will materially advance the ultimate termination of this litigation. "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Kerr*, 2012 WL 4359076, at *3 (quoting 16 Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 3930 (2d ed. 2012)).

The parties will use pronouns throughout this litigation. Resolving the validity and enforceability of the PPO now, at the outset, will allow the parties to prepare their litigation strategy with certainty. Otherwise, Plaintiffs will litigate this case under the stigma that the Judge regards their choice of pronouns as "wrong," under the specter that a complaint from counsel or others could result in sanctions, and with uncertainty about how the Court will apply yet unaddressed aspects of the PPO.

14

The parties also have an interest in resolving at the outset which Judge should hear this case and whether the Court's statements thus far demonstrate bias or the appearance of partiality. The Judge who adjudicates this case will control its outcome, especially with respect to dispositive and pre-trial motions. An immediate appeal will helpfully and definitively resolve the recusal and constitutional issues under the PPO early in the case. As this case progresses, Plaintiff anticipates that the Court will continue to use the preferred pronouns of Blaire Fleming and render decisions consistent with its belief that using he/him pronouns for Fleming is "wrong." To zealously advocate for counsel's clients, the undersigned may have to raise the recusal question again later. This all points to deciding the question now through interlocutory appeal.

### D.     The Interlocutory Appeal Will Not Delay the Litigation

Although not a factor in the § 1292(b) analysis, granting this Motion will not delay the proceedings. As Section 1292(b) states, an interlocutory appeal does not stay district court proceedings "unless the district judge or the Court of Appeals or a judge thereof shall so order." In any case, discovery has already have been stayed in this matter, pending resolution of Defendants' motions to dismiss. Dkt. 75.

## CONCLUSION

For the foregoing reasons, Plaintiffs move the Court to certify the Court's February 24, 2025, Order Denying Plaintiffs' Motion to Rescind Uniform Civil Practice Standard 43.1(A) and For Recusal (Dkt. 76) for interlocutory appeal.

Dated: March 12, 2025						Respectfully submitted,

							*/s/ William Bock III*
							William Bock III, CO Atty. No. 45633
							Justin R. Olson, IN No. 31450-49
							Kroger, Gardis & Regas, LLP
							111 Monument Circle, Suite 900
							Indianapolis, IN 46204
							Tel: (317) 692-9000
							Fax: (317) 264-6832
							E-mail: wbock@kgrlaw.com
							E-mail: jolson@kgrlaw.com

							ATTORNEYS FOR PLAINTIFFS

16

**CERTIFICATION OF CONFERRAL**

Pursuant to the District of Colorado's Local Rule 7.1(a) and Judge Crews' Standing Order for Civil Cases C.1., the undersigned certifies that Plaintiffs have made and successfully completed a good-faith effort to confer with Defendants regarding this motion.

On Monday, March 10, 2025, the undersigned sent an email to all counsel of record in this case requesting a conference on Plaintiffs' anticipated motion to certify for interlocutory appeal. On Wednesday, March 12, 2025, at 11 a.m. Mountain time, counsel for all parties conferred telephonically and discussed Plaintiffs' anticipated motion to certify for interlocutory appeal. After hearing Plaintiffs' position, Defendants stated that they oppose the relief being sought. Therefore, further conferral would not change the need for Plaintiffs to file the instant motion.

*/s/ William Bock III*
William Bock III, CO Atty. No. 45633

## ARTIFICIAL INTELLIGENCE CERTIFICATION

I certify that no portion of this filing was drafted by artificial intelligence.

*/s/ William Bock III*
William Bock III, CO Atty. No. 45633

18

**CERTIFICATE OF SERVICE**

I certify that on March 12, 2025, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system on the following parties who have appeared in this case.

Helen E. White
MUNGER TOLLES & OLSON, LLP
601 Massachusetts Avenue NW,
Suite 500 E
Washington, D.C. 20001
helen.white@mto.com

Bryan Heckenlively
MUNGER TOLLES & OLSON, LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
bryan.heckenlively@mto.com

Jennifer L. Bryant
MUNGER TOLLES & OLSON, LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Jennifer.Bryant@mto.com

*Counsel for Board of Trustees of the California University System, Laura Alexander, Todd Kress, and Michelle McDonald Smith*

Kyler K. Burgi
Chad D. Williams
DAVIS GRAHAM & STUBBS L.L.P.
1550 17th Street, Suite 500
Denver, CO 80202
kyler.burgi@davisgraham.com
chad.williams@davisgraham.com

Wesley R. Powell
WILLKIE FARR & GALLAGHER L.L.P.
787 Seventh Avenue
New York, NY 10019
wpowell@willkie.com

Matt D. Basil
WILLKIE FARR & GALLAGHER L.L.P.
300 North LaSalle Drive
Chicago, IL 60654
mbasil@willkie.com

*Counsel for The Mountain West Conference and Gloria Nevarez*

　　　　　　　　　　　　　　　*/s/ William Bock III*
　　　　　　　　　　　　　　　William Bock III, CO Atty. No. 45633

19