IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-03155-SKC-MDB

BROOKE SLUSSER, *et al.*,

    Plaintiffs,

v.

THE MOUNTAIN WEST CONFERENCE, *et al.*,

    Defendants.

---

**ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY
FOR INTERLOCUTORY APPEAL ORDER DENYING PLAINTIFFS'
MOTION TO RESCIND UNIFORM CIVIL PRACTICE STANDARD 43.1(A)
AND FOR RECUSAL (DKT. 77)**

---

The above-referenced Motion is now before the Court. The Motion seeks certification of an interlocutory appeal to the Tenth Circuit of the Court's February 24, 2025 Recusal Order. Dkt. 76. The Recusal Order denied Plaintiffs' motion (Dkt. 73) requesting rescission of the Court's Decorum Standard—Uniform Practice Standard 43.1A—and recusal of the undersigned from presiding in this matter. Defendants filed their opposition to the Motion, and Plaintiffs filed a reply. Dkts. 90 (opposition) and 92 (reply). Because Plaintiffs have not met their burden under 28 U.S.C. § 1292(b), the Motion is DENIED.

1

## BACKGROUND

Consistent with Canon 3(A) of the Code of Conduct for United States Judges, the Court maintains a Uniform Practice Standard, 43.1A ("Decorum Standard"), which recommends—but does not require—the use of preferred pronouns in proceedings before the Court. SKC Civ. Practice Standard 43.1A; Dkt. 76, p.2. Plaintiffs previously moved to rescind the Decorum Standard and recuse the undersigned.[1] They claimed rescission of the Decorum Standard was necessary because maintaining such decorum violates their First Amendment right to use the pronouns they choose in "adhering to [their] personal beliefs[.]" Dkt. 76, p.2. And they sought the Court's recusal because they claimed the Decorum Standard and the Court's use of she/her pronouns to refer to the (non-party) transgender female referenced in these proceedings evidenced bias and prejudgment of dispositive issues.

The Court denied the motion because, based on Plaintiffs' theory of the case, the Court has allowed Plaintiffs to use whatever pronouns they choose and because Plaintiffs confuse the Court's show of respect and courtesy under Canon 3(A) with bias and prejudgment. The Court found Plaintiffs' rescission and recusal requests were based on "unsupported, irrational, [and] highly tenuous speculation[,]" *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). It also found a reasonable person, knowing all the relevant facts, would not harbor doubts about the Court's

---

[1] The Court's Uniform Practice Standard is "uniform" in that five of the seven active district judges have adopted it. Plaintiffs also sought reassignment of this matter to a presiding judge that has not adopted the Uniform Practice Standard.

2

impartiality. Thus, recusal was not required under 28 U.S.C. § 455. Plaintiffs now request to appeal the Recusal Order under 28 U.S.C. § 1292(b).

## LEGAL PRINCIPLES

Under 28 U.S.C. § 1292(b),

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, [t]hat application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*Id.* (italics removed). Three criteria, therefore, must be satisfied before a district court may certify an order for interlocutory appeal in a civil action: (1) the order must involve a "controlling question of law;" (2) there must be "substantial ground for difference of opinion;" and (3) it must be shown that immediate appeal "may materially advance the ultimate termination of the litigation." *Id.*; *see also Equal Emp. Opportunity Comm'n v. JBS USA, LLC*, No. 10-cv-02103-PAB-KLM, 2019 WL 4778796, at *4 (D. Colo. Sept. 30, 2019).

A district court has discretion to determine whether to certify an order for interlocutory appeal. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals."). Interlocutory appeals, however, are traditionally disfavored.

3

*See Gelder v. Coxcom Inc.*, 696 F.3d 966, 969 (10th Cir. 2012). A district court will only certify an issue for appeal under § 1292(b) in exceptional circumstances. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) ("Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for exceptional cases . . . ." (quotations omitted)).

## ANALYSIS

### 1. Does the Recusal Order Involve a Controlling Question of Law?

It does not. A question of law involves the meaning of a statutory or constitutional provision, regulation, or common law doctrine, as opposed to a particular application of law to facts. *Al-Turki v. Tomsic*, No. 15-CV-00524, 2017 WL 1243068, at *1 (D. Colo. Mar. 24, 2017). They usually involve questions of unsettled law. *Id.* A question of law is "controlling" if its resolution has "the potential for substantially accelerating disposition of the litigation." *In re Grand Jury Proc. June 1991*, 767 F. Supp. 222, 225 (D. Colo. 1991). The Court agrees with Defendants that none of these requisites apply to the Recusal Order.

The Decorum Standard that Plaintiffs seek to rescind is not a statute, constitutional provision, regulation, or common law doctrine. It is a judicial practice standard which, by definition, is a standing order of the Court. *See Standing Order*, Black's Law Dictionary (12th ed. 2024) ("A prospective omnibus court order that applies to all cases pending before a court. Some individual judges issue a standing order on a subject when there is no local rule bearing on it, often because a rule would

4

not be acceptable to the other judges on the court."); *compare* SKC Civ. Practice Standard 1.1(a) ("These Practice Standards apply to all civil actions pending before [Judge Crews] at the time of this publication regardless of when the action was first filed."). Like any order, the Decorum Standard may be modified or revoked in any manner in the Court's discretion, as this Court did when it told the parties they were free to refer to a transgender person however they desired, provided they did so respectfully. *See, e.g.,* Dkt. 50, 4:13-5:3.

Plaintiffs take a different view. Citing *Smith v. Ford Motor Co.*, 626 F.2d 784 (10th Cir. 1980), and *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986), they argue "by any definition, a local practice standard is law." Dkt. 92, p.5. But their definition conflates judicial practice standards with a district court's local rules of practice. There is a difference which even the *Smith* and *Hernandez* cases evince.

District courts, not individual judges, enact local rules under Fed. R. Civ. P. 83. "Local rules are primarily housekeeping rules; their purpose is to facilitate operation of the court." *Hernandez*, 793 F.2d at 266. *Hernandez* involved the local rules of the District of New Mexico. *Id.* at 266-67. *Smith* involved the local rules of the District of Wyoming. *Smith*, 626 F.2d at 796. Neither involved judicial practice standards of an individual judge.

But even in reference to local rules, the Tenth Circuit has recognized that they are binding only "in *some* circumstances" and "district courts have discretion in applying local rules." *Hernandez*, 793 F.2d at 266 (emphasis added); *see also Smith*,

5

626 F.2d at 796 ("Considerable deference is accorded to the district courts' interpretation and application of their own rules of practice and procedure."). Thus, even if the Decorum Standard was considered a local rule, it still is no doppelgänger of a statute, constitutional provision, regulation, or common law doctrine. *See Al-Turk*, 2017 WL 1243068, at *1.

The Court also does not find the questions presented by its Recusal Order are "controlling" within the meaning of § 1292(b). Even were the Tenth Circuit to order rescission of the Decorum Standard, it would have no practical effect on these proceedings because the Court has allowed Plaintiffs to use the pronouns of their choice throughout this case. *See, e.g.,* Dkt. 51, 3:24-4:11 ("I understand that this case involves a debate about gender and gender identity and therefore the parties may refer to this individual however they choose; I only require that the parties remain professional and respectful when speaking about her."). And neither the rescission nor recusal ruling is "controlling" because it has no direct effect on the ultimate outcome of this case.

This is all to say that Plaintiffs have failed to establish the first requisite for an interlocutory appeal under § 1292(b). The Court's Recusal Order does not involve a controlling question of law.

### 2. Is There Substantial Ground for Difference of Opinions?

Plaintiffs argue, "[a]t a minimum, there is a substantial ground for difference of opinions on whether the [Decorum Standard] violates the First and Fourteenth

6

Amendments, whether the Court's statement that it would not enforce the [Decorum Standard] cures the constitutional violation, and whether the Court should recuse itself from this case." Dkt. 77, p.13. But there's not.

As discussed above, the Decorum Standard is a judicial practice standard which this Court may modify in its discretion, just as it has done in this case to accommodate Plaintiffs. Even sans the Court's modification of the Decorum Standard, it is well-settled that issues of decorum are within the discretion of the trial court. *See Sheldon v. Vermonty*, 107 F. App'x 828, 831 (10th Cir. 2004) (maintenance of courtroom decorum falls within the discretion of the district court); *Bethel v. Bosch*, No. CIV.A. 10-0651-WS-M, 2010 WL 5014752, at *2 (S.D. Ala. Dec. 2, 2010) (trial judges enjoy extremely wide discretion in managing courtroom proceedings); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n. 23 (1980) ("The presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interests of decorum."). This includes discretion over matters bearing on the speech used by lawyers or parties in court proceedings. *See United States v. Okoronkwo*, 46 F.3d 426, 436 (5th Cir. 1995) ("We have carefully reviewed the exchanges between counsel and the court and conclude that the court only interjected . . . when counsel referred to the parties by their first names, rather than by their surnames, as is more in keeping with proper courtroom decorum and procedure. The district court did not abuse his discretion in this regard[.]"); *Paddock v. Dixon*, No. 1:21-CV-00493-DCN, 2022 WL

3139120, at *10 (D. Idaho Aug. 5, 2022) (state court purportedly not allowing party to use hand gestures or communicate with her attorney in court was within court's "discretion to govern his or her courtroom as he or she sees fit in order to maintain . . . decorum[.] This is not a free speech issue or a civil rights issue.").

And it is well-settled that a court's efforts to maintain decorum do not alone manifest judicial bias. *United States v. Laureano-Perez*, 797 F.3d 45, 72 (1st Cir. 2015) (warning defendant not to stare at the jury and prohibiting him from raising his hand in the middle of questioning are efforts at courtroom decorum within the district court's discretion and do not evince bias); *Mitchell v. Kirk*, 20 F.3d 936, 937 (8th Cir. 1994) ("Because it is clear the judge was admonishing Mitchell and making the remarks to maintain control over the judicial proceedings and to preserve courtroom decorum, we reject Mitchell's judicial bias contention.").

The Court's discretion over maintaining decorum in these proceedings is in addition to the cases cited in the Recusal Order demonstrating that courts across the country, including the Supreme Court, use the preferred pronouns of those involved out of courtesy and respect, not out of bias and prejudgment.[2] Dkt. 76, pp.6-7

---

[2] In these regards, Plaintiffs continue to misapprehend the Court's use of she/her pronouns. They argue, "[b]y using Fleming's preferred pronouns rather than avoiding them, the Court expressed what can be reasonably viewed as potential prejudgment on the dispositive issue in this case: whether Fleming is legally entitled to be treated as a woman." Dkt. 92, p.8; *see also id.* at p.9 ("Moreover, as explained above, whether Fleming is entitled to be treated as a female creates an overlap of the recusal and substantive issues in this case."). But this reads too much into the Court's use of she/her pronouns in this case. All the Court has determined so far is that she is entitled to be treated with the Court's respect and courtesy in these proceedings

8

(collecting cases); *see also Fowler v. Stitt*, 104 F.4th 770, 778-79 (10th Cir. 2024) (referring to transgender-female appellant as Ms. Fowler, and transgender-male appellants as Mr. Hall and Mr. Ray, in matter alleging state's practice of denying sex-designation amendments to their birth certificates violated their rights under Equal Protection and Due Process Clauses).

Plaintiffs eschew those cases. They argue those courts' use of preferred pronouns "did not signal any pre-judgment of an ultimate issue in the case" because those cases were not "adjudicated by a Court that had subscribed to a decorum standard that stated that failing to use preferred pronouns was 'wrong.'" Dkt. 76, pp.13-14. Plaintiffs' argument is based on a strained reading of the Decorum Standard. *See* SKC Civ. Practice Standard 43.1A ("[C]ounsel are invited and encouraged to identify the applicable pronouns of counsel, litigants, and witnesses at the earliest juncture possible . . . . Should the wrong pronoun be used, counsel are encouraged to bring that to the Court's attention[.]"). It is also beside the point, because again, the parties have freely used the pronouns of their choice without the Court telling anyone they chose wrongly. *Cf. Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").

---

consistent with Canon 3(A) and regardless of the merit of Plaintiffs' claims, just as anyone associated with these proceedings is entitled to receive from the Court.

Plaintiffs have failed to establish the second requisite for an interlocutory appeal. The Recusal Order does not involve a substantial ground for difference of opinion.

### 3. May Certification Materially Advance the Ultimate Termination of the Litigation?

Because Plaintiffs failed to establish the first two elements for certification of an interlocutory appeal, the Court need not address this factor. But the Court will address Plaintiffs' contention under this element that, without an interlocutory appeal, "Plaintiffs will litigate this case under the stigma that the Judge regards their choice of pronouns as 'wrong,' under the specter that a complaint from counsel or others could result in sanctions, and with uncertainty about how the Court will apply yet unaddressed aspects of the [Decorum Standard]." Dkt. 77, p.14.

Rather than operating under purported "stigmas" and "specters," the Court encourages Plaintiffs to take "yes" for an answer. Countless times now, the Court has told Plaintiffs they may use whatever pronouns they choose in these proceedings. They've done so from the start. They've done so without sanction or admonishment from the Court. They've done so without the Court indicating they are doing anything "wrong" or anyone else is doing anything "right." And yet, Plaintiffs continue to insist on snatching defeat from the jaws of victory on this issue of the use of pronouns in these proceedings. On this record, any purported "stigmas" are self-inflicted, and any purported "specters" are mere apparitions.

10

## CONCLUSION

For the reasons shared above, the Motion (Dkt. 77) is **DENIED**.[3]

Dated: May 1, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge

---

[3] While the Court denies Plaintiffs' requested relief, they are free to seek mandamus in the Tenth Circuit. *See Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1259 (10th Cir. 2022) ("Though disgruntled litigants can't appeal the denial of a motion for recusal, they can seek mandamus.").

11