# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 24-cv-3155-SKC-MDB

BROOKE SLUSSER, *et al.*,

      *Plaintiffs,*

v.

THE MOUNTAIN WEST CONFERENCE,
*et al.,*

      *Defendants.*

---

## CSU DEFENDANTS' RULE 12(b) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND RULE 12(f) MOTION TO STRIKE CLASS ALLEGATIONS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................... 1

II.  BACKGROUND ................................................................................ 3

    A.  NCAA and MWC Policies Regarding the Eligibility of
        Transgender Athletes................................................................. 3

    B.  SJSU's Rostering of an Allegedly Transgender Player and the
        Alleged Effect on the SJSU Plaintiffs Before the 2024 Season............. 4

    C.  Public Reporting on the Player During the 2024 Season ...................... 5

    D.  Several MWC Conference Members Refuse to Play SJSU.................... 6

III.  LEGAL STANDARD........................................................................ 7

IV.  ARGUMENT .................................................................................. 8

    A.  Plaintiffs' Constitutional Claims Should All Be Dismissed .................. 8

        1.  Plaintiffs' Claim for Declaratory Relief Is Moot.......................... 9

        2.  The SJSU Plaintiffs Lack Standing for Injunctive Relief
            Against the CSU Defendants ...................................................... 10

        3.  Sovereign Immunity Bars Parts of the Complaint.................... 11

        4.  Qualified Immunity Requires Dismissal of Claims Against
            SJSU Officials in Their Individual Capacities ........................... 12

    B.  Plaintiffs Fail to State a Title IX Claim ................................................ 13

        1.  Plaintiffs' Title IX Equal Opportunity Claim Fails.................... 14

        2.  Slusser Fails to State a Title IX Retaliation Claim ................... 15

    C.  Plaintiffs Fail to State any Equal Protection Claim............................. 18

    D.  Slusser Fails to State a First Amendment Claim................................. 20

    E.  The Class Allegations Against the CSU Defendants Should Be
        Stricken..................................................................................... 21

V.  CONCLUSION................................................................................ 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Al Ghareeb v. Bd. of Trs. at Univ. of N. Colo.*,
 849 F. App'x 746 (10th Cir. 2021) ............................................................... 15

*B.P.J. v. W. Va. State Bd. of Educ.*,
 98 F.4th 542 (4th Cir. 2024) ....................................................................... 19

*Bd. of Regents for Okla. Agric. & Mech. Colleges ex. rel. Okla.*
 *Panhandle State Univ. v. Johnson Controls, Inc.*,
 No. CIV-23-1025-D, 2024 WL 400188 (W.D. Okla. Feb. 2, 2024) ......................... 11

*Bostock v. Clayton County*,
 590 U.S. 644 (2020) ................................................................................... 14

*Burlington N. & Santa Fe Ry. Co. v. White*,
 548 U.S. 53 (2006) ..................................................................................... 15

*Cannon v. Univ. of Chicago*,
 441 U.S. 677 (1979) ................................................................................... 15

*Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*,
 236 F.3d 1174 (10th Cir. 2000) ....................................................................... 9

*Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*,
 765 F.3d 1205 (10th Cir. 2014) ..................................................................... 21

*In re Dennis Greenman Sec. Litig.*,
 829 F.2d 1539 (11th Cir. 1987) ..................................................................... 23

*District of Columbia v. Wesby*,
 583 U.S. 48 (2018) ..................................................................................... 12

*Edwards v. Zenimax Media Inc.*,
 No. 12–cv–00411–WYD–KLM, 2012 WL 4378219 (D. Colo. Sept. 25, 2012) ....... 22

*Faulhaber v. Petzl Am., Inc.*,
 656 F. Supp. 3d 1257 (D. Colo. 2023) ................................................... 8, 21, 22

*Fincher ex rel. Fincher v. Prudential Prop. & Cas. Ins. Co.*,
 374 F. App'x 833 (10th Cir. 2010) ................................................................. 24

*Fitzgerald v. Barnstable Sch. Comm.*,
  555 U.S. 246 (2009) ............................................................................ 17

*Fowler v. Stitt*,
  104 F.4th 770 (10th Cir. 2024) ......................................... 14, 18, 19, 20

*Francis v. APEX USA, Inc.*,
  No. CIV-18-583-SLP, 2021 WL 4487985 (W.D. Okla. Sept. 30, 2021) ................ 22

*Free Speech Coal., Inc. v. Anderson*,
  119 F.4th 732 (10th Cir. 2024) ............................................................ 12

*Haidak v. Univ. of Mass.-Amherst*,
  933 F.3d 56 (1st Cir. 2019) ................................................................. 15

*Hecox v. Little*,
  104 F.4th 1061 (9th Cir. 2024) ...................................................... 15, 18

*Hiatt v. Colo. Seminary*,
  858 F.3d 1307 (10th Cir. 2017) ........................................................... 15

*Hydro Res., Inc. v. EPA*,
  608 F.3d 1131 (10th Cir. 2010) ........................................................... 10

*Johnson v. Nw. Dist. of Wesleyan Church*,
  No. 1:23-CV-00870-SKC-KAS, 2024 WL 1538002 (D. Colo. Apr. 9, 2024) ............ 8

*Johnson v. Weld Cnty.*,
  594 F.3d 1202 (10th Cir. 2010) ........................................................... 16

*Jordan v. Sosa*,
  654 F.3d 1012 (10th Cir. 2011) ............................................................. 9

*Kennecott Utah Copper Corp. v. Becker*,
  186 F.3d 1261 (10th Cir. 1999) ............................................................. 9

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ...................................................................... 11, 17

*Kinman v. Omaha Pub. Sch. Dist.*,
  171 F.3d 607 (8th Cir. 1999) ............................................................... 17

*Lewis v. Clarke*,
  581 U.S. 155 (2017) ........................................................................... 12

*Monreal v. Potter,*
     367 F.3d 1224 (10th Cir. 2004) ................................................................ 24

*Murthy v. Missouri,*
     603 U.S. 43 (2024) .................................................................................. 10

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.,*
     158 F.R.D. 681 (D. Kan. 1994) ................................................................ 23

*Nieves v. Bartlett,*
     587 U.S. 391 (2019) ................................................................................. 21

*Parents for Priv. v. Barr,*
     949 F.3d 1210 (9th Cir. 2020) ................................................................. 19

*Pearson v. Callahan,*
     555 U.S. 223 (2009) ................................................................................. 13

*Ramsay v. Frontier, Inc.,*
     No. 19-cv-03544-CMA-NRN, 2021 WL 651021 (D. Colo. Feb. 19,
     2021)......................................................................................................... 22

*Sanchez v. Denver Pub. Sch.,*
     164 F.3d 527 (10th Cir. 1998), *abrogated on other grounds by*
     *Muldrow v. City of St. Louis,* 601 U.S. 346 (2024) ................................. 16

*Seamons v. Snow,*
     84 F.3d 1226 (10th Cir. 1996) ................................................................. 17

*Sherman v. Trinity Teen Sols., Inc.,*
     84 F.4th 1182 (10th Cir. 2023)................................................................. 22

*Smith v. Becerra,*
     44 F.4th 1238 (10th Cir. 2022)......................................................... 8, 9, 17

*Smith v. Plati,*
     258 F.3d 1167 (10th Cir. 2001) ............................................................... 20

*Stanley v. Trs. of Cal. State Univ.,*
     433 F.3d 1129 (9th Cir. 2006) ................................................................. 11

*Stetzel v. Holubek,*
     661 F. App'x 920 (10th Cir. 2016) ..................................................... 20, 21

*U.S. Magnesium, LLC v. EPA,*
   690 F.3d 1157 (10th Cir. 2012) ............................................................ 10

*United States v. Virginia,*
   518 U.S. 515 (1996) ............................................................................ 20

*Walker v. Mohiuddin,*
   947 F.3d 1244 (10th Cir. 2020) ............................................................ 8

*Will v. Mich. Dep't of State Police,*
   491 U.S. 58 (1989) ............................................................................ 11

*Williams v. Bd. of Regents of Univ. Sys. of Ga.,*
   477 F.3d 1282 (11th Cir. 2007) ............................................................ 17

*Worrell v. Henry,*
   219 F.3d 1197 (10th Cir. 2000) ............................................................ 20

*Young v. Colo. Dep't of Corr.,*
   94 F.4th 1242 (10th Cir. 2024) ............................................................ 9

**FEDERAL STATUTES**

20 U.S.C. § 1681(a) ............................................................................ 15

42 U.S.C. § 1983 ............................................................ 11, 13, 16, 17

**STATE STATUTES**

Cal. Educ. Code §§ 66250–66292.4 ............................................ 15

Cal. Educ. Code § 66270 ............................................................ 19

Cal. Educ. Code § 66600 ............................................................ 3

Cal. Educ. Code § 66606.2 ............................................................ 3

**FEDERAL RULES**

Fed. R. Civ. P. 12 ............................................................ 7, 8

Fed. R. Civ. P. 23 ............................................................ 21, 23, 24

**OTHER AUTHORITIES**

Exec. Order No. 14168, *Defending Women from Gender Ideology
    Extremism and Restoring Biological Truth to the Federal
    Government*, 90 Fed. Reg. 14168 (Jan. 20, 2025) ................................................. 14

## I.    <u>INTRODUCTION</u>

Plaintiffs believe that a player who was undisputedly eligible under NCAA rules should not have been allowed to play on the San Jose State University ("SJSU") women's volleyball team, solely because she is allegedly transgender.  The majority of Plaintiffs' claims fail because, under binding precedent, discriminating against transgender people is unlawful under both Title IX and the Equal Protection Clause.  In other words, Plaintiffs ask this Court to read Title IX and the Equal Protection Clause to *require* precisely the same kind of discrimination that—as this Court has recognized—those laws instead *prohibit*.

Plaintiffs are a collection of current and former SJSU players, as well as a number of student-athletes on other teams in the Mountain West Conference ("MWC") who refused to play against SJSU during the 2024 season.  They bring an assortment of claims that are linked by their shared opposition to SJSU's decision to roster the allegedly transgender player.  In their Amended Complaint, they now for the first time assert some of these claims on behalf of uncertifiable putative classes.  But the futile attempt at amendment cannot change the result:  the claims against the Board of Trustees of California State University and its employees (the "CSU Defendants") should all be dismissed and the class allegations stricken.

*First*, the vast majority of Plaintiffs' claims and requests for relief fail at the threshold based on justiciability and immunity doctrines.  Plaintiffs' claims for injunctive and declaratory relief are moot now that the season has ended and the

allegedly transgender player has completed her final year of eligibility.  To the extent Plaintiffs allege any future harm, that harm is speculative and not redressable.  In addition, sovereign immunity and qualified immunity require dismissal of the constitutional claims for damages.  This disposes of everything but Plaintiffs' Title IX claims, which should be dismissed for failure to state a claim.

*Second*, Plaintiffs' Title IX equal opportunity claim and Equal Protection claims rely on readings of those laws that, as this Court has held, are inconsistent with Supreme Court and Tenth Circuit precedent recognizing that discrimination on the basis of transgender status is a form of impermissible sex discrimination.

*Third*, Plaintiff Brooke Slusser's claims that she was retaliated against in violation of both Title IX and the First Amendment fail because she did not suffer any cognizable consequence.  She kept her scholarship, continued to play, and continued to serve as team captain without facing any discipline.

*Fourth*, the class allegations must be stricken because the putative classes could not be certified.  Individualized inquiries predominate at every level and the proposed class action, with different classes pursuing different class claims against different groups of Defendants, would be entirely unmanageable.

Thus, all the claims against the CSU Defendants should be dismissed and the class claims should be stricken.

II.     **BACKGROUND**

Plaintiffs allege that, since at least 2022, SJSU—a campus of the California

State University ("CSU") system—has had an allegedly transgender woman on its

women's volleyball team.  Dkt. 78 ("Am. Compl.") ¶ 304.  Plaintiffs are all former

women's volleyball players at SJSU or current or former players at five other MWC

schools.  These plaintiffs also seek to represent a class of "MWC women's volleyball

student-athletes who competed in the MWC during one or more of the 2022, 2023

and/or 2024 seasons and/or who competed in the MWC on teams who were assigned

forfeits during the 2024 season."  *Id.* ¶ 746.  These Plaintiffs contend, *inter alia*,

that SJSU rostering an allegedly transgender woman deprived them of equal

opportunity in violation of both Title IX and the Equal Protection Clause.  Plaintiffs

bring their claims against a combination of Defendants affiliated with CSU: (1) the

Board of Trustees of the California State University, a state entity that governs the

CSU system, *see* Am. Compl. ¶ 43; Cal. Educ. Code §§ 66600, 66606.2; (2) Dr.

Stephen Perez, the former SJSU President, Am. Compl. ¶ 45; (3) Dr. Cynthia

Teniente-Matson, the current SJSU President, *see id.* ¶ 46; (4) Jeffrey Konya, the

Director of Athletics at SJSU, *see id.* ¶ 47; and (5) Todd Kress, the Head Coach of

the SJSU women's volleyball team, *see id.* ¶ 48.

A.     **NCAA and MWC Policies Regarding the Eligibility of
       Transgender Athletes**

The MWC requires member schools to comply with NCAA rules and conducts

MWC competitions pursuant to NCAA regulations.  *Id.* ¶¶ 157–61.  During the

3

athletic seasons relevant to this case, the NCAA's Transgender Eligibility Policy
("TEP") allowed a transgender woman who wished to participate in women's sports
to do so if she could undergo a full year of testosterone suppression and show that
her testosterone levels were below a certain sport-specific threshold (as determined
by the national governing body for that sport). *Id.* ¶ 194. Plaintiffs do not dispute
that the allegedly transgender player was at all times eligible to play under all
applicable NCAA and MWC rules. *Id.* ¶ 145.

### B. SJSU's Rostering of an Allegedly Transgender Player and the Alleged Effect on the SJSU Plaintiffs Before the 2024 Season

Plaintiffs Alyssa Sugai and Elle Patterson are former SJSU women's
volleyball players who played on the team during the 2022 and 2023 seasons,
respectively. *Id.* ¶¶ 30–31. Both allege that as a result of SJSU's decision to roster
the allegedly transgender player, they lost out on playing time. Though Sugai and
Patterson played different positions, they both allege that the allegedly transgender
player played their same position and displaced them from the team. *Id.* ¶¶ 323,
389. By their accounts, the allegedly transgender player was the superior athlete
and won playing time as a result. *Id.* ¶ 326 (Sugai); *id.* ¶¶ 385–86 (Patterson).
They also contend that they lost out on scholarships, but the Amended Complaint
admits that neither had a scholarship even before competing with the allegedly
transgender player. *See id.* ¶¶ 315, 332 (Sugai); *id.* ¶¶ 381, 389 (Patterson).

Before the 2023 season, Plaintiff Brooke Slusser transferred to SJSU with a
full scholarship to play on the women's volleyball team. *Id.* ¶ 365. She alleges that

she lived with and was often assigned to room with the allegedly transgender player—which she says that she would not have done had she known the player was transgender. *Id.* ¶¶ 366–67, 371. Slusser alleges, however, that she learned from other students that her teammate was transgender within four months of joining the SJSU team in 2023. *Id.* ¶¶ 369, 373–74.

C. **Public Reporting on the Player During the 2024 Season**

In April 2024, reports surfaced online that the allegedly transgender player was in fact transgender. *Id.* ¶ 395. Plaintiffs allege that shortly after the reports were published, the player revealed to Slusser that she was transgender. *Id.* ¶ 397. Around the same time, Coach Kress held a meeting with the team about the reports. *Id.* ¶¶ 400, 402. Plaintiffs allege that in this meeting, Kress told the team that they should not out the allegedly transgender player by speaking about her "sex or gender identity with anyone outside the team." *Id.* ¶ 402. Plaintiffs further allege that during this meeting, Kress explained that criticism of the allegedly transgender player or her "participation on the SJSU Team" was "transphobic" and "could be considered a violation of Title IX, school policies, or state law," and as a result could jeopardize their scholarships. *Id.* ¶¶ 402, 405.

Following these alleged revelations, Plaintiffs say that they started to view their interactions with the player in a different light. According to Slusser and Sugai, they would not have used locker rooms or lodging facilities where they believed a transgender woman was present. *Id.* ¶¶ 349, 371. Sugai alleges that she

would have attended a different school had she known that SJSU had rostered an allegedly transgender player. *Id.* ¶ 346. Patterson says that the player received a scholarship that Coach Kress previously promised to Patterson. *Id.* ¶ 381–389.

Plaintiff Slusser says she began a "behind-the-scenes battle" to have the player removed from the SJSU team. *Id.* ¶ 438. Slusser joined a separate lawsuit in which she disclosed the player's name and alleged gender identity in public court filings. *Id.* ¶ 435. She began a media tour, expressing "to journalists and in public forums" her "belief[]" that the player should be ineligible to compete. *Id.* ¶ 452.

Slusser asserts that the CSU Defendants retaliated against her for her efforts to remove her teammate from the SJSU roster. According to Slusser, an SJSU administrator told her that disparaging the school or her teammate would potentially violate her "letter of intent"—i.e., the contract she entered into with SJSU setting forth the conditions of her scholarship. *Id.* ¶ 447. Slusser says Kress retaliated against her by refusing to speak with her and by "communicat[ing] with a private lawyer . . . to get Slusser removed from the SJSU team." *Id.* ¶ 452.

### D.    Several MWC Conference Members Refuse to Play SJSU

During the 2024 MWC regular season, Plaintiffs Liilii and Clarke (University of Nevada), Ray (Utah State University), Boggs, Grizzle, and Sandy (University of Wyoming), and the Van Kirks (Boise State University) (collectively, "non-SJSU Plaintiffs") and their respective teams refused to participate in matches against SJSU after the player's gender identity became a "talking point" in the national

news media.  *See* Am. Compl. ¶¶ 455–58, 571–72, 577–83, 608–09, 716.  The

allegedly transgender player had played for SJSU during both the 2022 and 2023

seasons, *see supra* p. 3, but Plaintiffs do not allege that any team previously refused

to play against SJSU or that they viewed her participation as unfair at the time.

Under a MWC policy that governs the refusal to play teams because they may have

eligible transgender players (called the "Transgender Participation Policy" or

"TPP"), the matches that non-SJSU Plaintiffs' teams boycotted were treated as

forfeits and losses in the standings.  *See, e.g.*, *id.* ¶ 457.

The MWC championship tournament was played in November 2024.  *See id.*

¶ 731.  The allegedly transgender player has played four seasons of college

volleyball, and Plaintiffs do not allege that she has eligibility remaining.  *Id.* ¶ 304

(first year of eligibility was 2021).  Nor do they allege SJSU (or any other MWC

school) has rostered another transgender player or is likely to do so.

On February 6, 2025, after the end of the 2024 volleyball season, the NCAA

adopted a new transgender eligibility policy, which provides that "a student-athlete

assigned male at birth may not compete on a women's team."  *Id.* ¶ 227.  Plaintiffs

complain about this new policy too, *id.* ¶¶ 233–36, but they do not allege that there

are any transgender student-athletes currently or imminently playing in the MWC.

## III.  <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a

claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020).  The same standard applies when assessing motions under Rule 12(b)(1) when the moving party has not introduced factual material beyond the complaint.  *See Johnson v. Nw. Dist. of Wesleyan Church*, No. 1:23-CV-00870-SKC-KAS, 2024 WL 1538002, at *2 (D. Colo. Apr. 9, 2024).  Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Class allegations may be stricken "where the pleading makes clear that the purported class cannot be certified." *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1271 (D. Colo. 2023) (citation omitted) (citing cases across circuits).

## IV.    ARGUMENT

### A.    Plaintiffs' Constitutional Claims Should All Be Dismissed

On Plaintiffs' constitutional claims, a combination of mootness, sovereign immunity, and qualified immunity preclude relief entirely.  These claims should be dismissed.  *See Smith v. Becerra*, 44 F.4th 1238, 1248–49 (10th Cir. 2022) (when a court cannot grant a plaintiff any "effectual relief," a case must be dismissed (citation omitted)).  The only claims that survive the threshold jurisdictional and immunity issues are (a) the Title IX equal opportunity claim for damages (but not for prospective relief) and (b) Slusser's Title IX retaliation claims.  Those claims should be dismissed for other reasons, as discussed in later sections.

### 1.    Plaintiffs' Claim for Declaratory Relief Is Moot

Plaintiffs' claim for declaratory relief against the CSU Defendants (in connection with Counts I, II, III, IV, VI, and X) related to their decision to roster the allegedly transgender player is moot.  A declaratory relief claim becomes moot when the "'plaintiff's continued susceptibility to injury' is no longer 'reasonably certain' or is based on 'speculation.'"  *Smith*, 44 F.4th at 1247 (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)); *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1255 (10th Cir. 2024).  "The crucial question is whether 'granting a present determination of the issues offered . . . will have some effect in the real world.'"  *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson,* 236 F.3d 1174, 1182 (10th Cir. 2000) (quoting *Kennecott Utah Copper Corp. v. Becker,* 186 F.3d 1261, 1266 (10th Cir. 1999).

Here, it would not.  Plaintiffs cannot allege or show that declaratory relief would address any conduct that is likely to recur.  The Amended Complaint contains no allegations about a threat of future or ongoing violations by the CSU Defendants.  All the alleged constitutional violations and retaliatory conduct are described as having already occurred and no Plaintiff alleges a risk of future harm.  That is because there is no threat of future harm.  According to Plaintiffs' own complaint, the allegedly transgender player has no remaining eligibility, *see* Am. Compl. ¶ 304 (allegedly transgender player's first year of eligibility was in 2021), and Plaintiffs have not identified any other transgender player at SJSU or in the

MWC.  This is fatal to all the declaratory relief that Plaintiffs seek against the CSU Defendants.  *See id.*, Prayer for Relief ¶¶ 2, 9, 10, 12.

### 2. The SJSU Plaintiffs Lack Standing for Injunctive Relief Against the CSU Defendants

Slusser, Sugai, and Patterson[1] also ask the Court to order the CSU Defendants to petition the NCAA for additional years of eligibility.  They lack standing to seek this relief because their alleged injury is not "likely to be redressed by a favorable decision."  *Hydro Res., Inc. v. EPA,* 608 F.3d 1131, 1144 (10th Cir. 2010).  "[I]t is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'"  *Murthy v. Missouri*, 603 U.S. 43, 57 (2024); *see U.S. Magnesium, LLC v. EPA*, 690 F.3d 1157, 1166 (10th Cir. 2012) ("When redress[a]bility depends on a third party and there is no evidence suggesting a likelihood that the third party will take the action necessary to afford the plaintiff relief, the plaintiff lacks standing.").  The CSU Defendants cannot restore Plaintiffs' eligibility and remedy the injury they allege they suffered.  Only the NCAA can do that, and Plaintiffs offer no evidence that the NCAA is likely to do so if asked.  *U.S. Magnesium, LLC*, 690 F.3d at 1166.

Accordingly, Plaintiffs' claim for injunctive relief against the CSU Defendants must be dismissed.

---

[1] These are the only Plaintiffs who seek any injunctive relief against the CSU Defendants.

### 3.    Sovereign Immunity Bars Parts of the Complaint

Plaintiffs' claims for damages against individual CSU Defendants acting in their official capacities are barred by the Eleventh Amendment.

Plaintiffs cannot seek damages on their constitutional claims against Defendants Teniente-Matson and Konya in their official capacities (Counts III and VI) because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Once properly construed as claims against the CSU Board of Trustees, these claims are barred by the Eleventh Amendment because the Board is "an arm of the state" and has not consented to be sued. *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006); *see also Bd. of Regents for Okla. Agric. & Mech. Colleges ex. rel. Okla. Panhandle State Univ. v. Johnson Controls, Inc.*, No. CIV-23-1025-D, 2024 WL 400188, at *2 n.3 (W.D. Okla. Feb. 2, 2024) (collecting Tenth Circuit cases holding that "public universities . . . are arms of their respective state" entitled to sovereign immunity). Section 1983 does not abrogate that immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989).[2]

Therefore, the Eleventh Amendment bars any claim for damages for the constitutional claims against Teniente-Matson and Konya in their official

---

[2] The Board also cannot be sued on the constitutional claims for the additional reason that the state is not a "person" for purposes of 42 U.S.C. § 1983. *Will*, 491 U.S. at 71.

capacities. *Lewis v. Clarke*, 581 U.S. 155, 163 (2017); *Free Speech Coal., Inc. v.
Anderson*, 119 F.4th 732, 735–36 (10th Cir. 2024). This, in combination with the
Article III bars to the declaratory and injunctive relief sought (as discussed above),
requires dismissal of these official-capacity claims in their entirety before even
reaching the merits.

### 4. Qualified Immunity Requires Dismissal of Claims Against SJSU Officials in Their Individual Capacities

Plaintiffs also bring constitutional claims against SJSU officials in their
individual capacities: claims for violations of the Fourteenth Amendment (Counts
III and VI) and a claim for viewpoint discrimination in violation of the First
Amendment (Count X). Plaintiffs cannot obtain declaratory or injunctive relief on
these claims, *see supra* pp. 9–10, and their claim for damages should also be
dismissed because it is barred by the qualified immunity doctrine. Qualified
immunity permits damages claims only where a constitutional violation is "clearly
established." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation
omitted). "In other words, existing law" at the time of the relevant conduct "must
have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.*

As explained below, Plaintiffs have failed to plausibly allege *any*
constitutional violation—let alone one that is clearly established by existing circuit
or Supreme Court precedent. The Court may therefore resolve these claims on
qualified immunity grounds without ruling on the constitutionality of these officials'

conduct. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts may resolve cases on qualified-immunity grounds without reaching the merits).

\* \* \*

As a result of these interlocking barriers to Plaintiffs' ability to obtain any relief on their claims, Plaintiffs' constitutional claims should be dismissed in their entirety as they cannot seek any kind of relief as to any of their claims. As to what is left—the Title IX claims—Plaintiffs' requests for prospective relief are not justiciable for reasons already explained, and any request for damages should be dismissed for failure to state a claim, discussed next.

### B.    Plaintiffs Fail to State a Title IX Claim

Plaintiffs assert two separate kinds of Title IX claims against the CSU Defendants, neither of which is sufficiently pleaded—even on this second attempt—to survive a motion to dismiss. First, all Plaintiffs assert a Title IX theory that rostering an allegedly transgender player denied them equal opportunity to participate in athletics. *See* Am. Compl. ¶¶ 763–81 (Count I ). Second, Slusser alleges that the Board unlawfully retaliated against her for opposing SJSU's decision to roster the allegedly transgender player. *Id.* ¶¶ 806–10 (Count IV). Both of these claims fail on the merits, even accepting Plaintiffs' allegations.

In addition, Plaintiffs attempt to bring their Title IX claims against individual defendants via Section 1983. *Id.* ¶¶ 782–91 (Count II). But Section 1983 does not provide a cause of action to enforce Title IX against individuals.

### 1.    Plaintiffs' Title IX Equal Opportunity Claim Fails

Plaintiffs' Title IX equal opportunity claim should be dismissed for the same reasons this Court denied their request for preliminary relief.  As this Court already held, Plaintiffs' theory of liability is inconsistent with binding precedent.  Dkt. 37 at 28.[3]  Specifically, for Plaintiffs to prevail on their Title IX and Equal Protection claims, the Court would have to adopt an interpretation of "sex" that conflicts with both *Fowler v. Stitt*, 104 F.4th 770, 790 (10th Cir. 2024), and *Bostock v. Clayton County*, 590 U.S. 644, 669 (2020).  This analysis is in no way affected by the Executive Order issued on January 20, 2025 that takes a different view on the meaning of "sex."[4]  It is fundamental that an Executive Order cannot displace the text of a statute or the Constitution, or the holdings of *Bostock* and *Fowler*.  Therefore, as this Court held, Plaintiffs' proposed interpretation of Title IX must be wrong.  *See* Dkt. 37 at 28.

Plaintiffs' Title IX equal opportunity claim independently fails because Plaintiffs have failed to plead, as they must, any *intentional* discrimination by the Board on the basis of sex.  Title IX permits claims only for "intentional" discrimination.  *Al Ghareeb v. Bd. of Trs. at Univ. of N. Colo.*, 849 F. App'x 746, 748

---

[3] Defendants addressed this issue in detail in opposition to Plaintiffs' preliminary injunction motion.  *See* Dkt. 28 p. 22–28.

[4] Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 14168 (Jan. 20, 2025).

(10th Cir. 2021) (applying Title VI); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694–

95 (1979) (instructing courts to look to Title VI when interpreting Title IX); *see also*

*Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 75 (1st Cir. 2019).

Plaintiffs do not allege that the Board took any discriminatory action "on the

basis of sex." 20 U.S.C. § 1681(a). Rather, the allegations suggest only that the

Board allowed its coaching staff to roster the best NCAA- and MWC-eligible

players. Plaintiffs do not dispute that the allegedly transgender player was the best

eligible player—indeed, they allege that she was *too good*. Nor can the Board be

faulted for failing to alter its eligibility policies because California and Ninth Circuit

law specifically prohibit the Board from discriminating based on transgender

status. *See* Cal. Educ. Code §§ 66250–66292.4; *Hecox v. Little*, 104 F.4th 1061, 1089

(9th Cir. 2024). Plaintiffs therefore fail to allege any intentional sex discrimination.

### 2. Slusser Fails to State a Title IX Retaliation Claim

Plaintiff Slusser fails to plausibly allege that the Board retaliated against her

for reporting sex discrimination because she was not subject to a materially adverse

action. To the contrary, she remained on the team and on scholarship.

None of the retaliatory acts Slusser points to would have "dissuaded a

reasonable [student] from making or supporting a charge of discrimination." *Hiatt*

*v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (quoting *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[U]nsubstantiated oral

reprimands" of the type she alleges are not materially adverse. *Sanchez v. Denver*

*Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998), *abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) (internal quotations omitted).

*First*, Slusser alleges that Coach Kress "communicated with a private lawyer as part of his effort to get Slusser removed from the SJSU team" and "told others that he has filed Title IX complaints against Slusser," *id.* ¶¶ 452(b)–(c), but she does not allege that she was removed from the team or that she faced *any* other consequences flowing from these purported actions.

*Second*, Slusser's conclusory allegation that Coach Kress failed to protect her "against potential physical threats," Am. Compl. ¶ 452(d), is belied by her own allegations that Coach Kress contacted the police officer who was traveling with the team and reported the incident to the SJSU Title IX officer. *Id.* ¶¶ 647, 690.

*Finally*, what remains are the allegations that Coach Kress gave Slusser the cold shoulder and made comments about her to teammates. *Id.* ¶ 452(a). But "alleged snubs, though surely unpleasant and disturbing, are insufficient to support a claim of retaliation under [Tenth Circuit] case law." *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1216 (10th Cir. 2010); *see also Sanchez*, 164 F.3d at 533.

### 3. Title IX Does Not Permit Claims Against Individuals

Plaintiffs cannot pursue their Title IX claims against individual defendants—regardless of whether they style them as claims under Section 1983. Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S.

246, 257 (2009). Plaintiffs cannot "circumvent" the provisions of a statute in a manner that would be "inconsistent with Congress' carefully tailored scheme." *Id.* at 254–55 (quoting *Smith*, 468 U.S. at 1012).

Title IX precludes a Section 1983 claim against an individual for alleged violations of Title IX. To "allow plaintiffs to use § 1983 in this manner would permit an end run around Title IX's explicit language limiting liability to funding recipients." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007); *see also Seamons v. Snow*, 84 F.3d 1226, 1233–34 n.8 (10th Cir. 1996) ("Of course, the 1983 action could not be predicated on a violation of Title IX itself."); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610–11 (8th Cir. 1999) (dismissing individual-capacity claim for Title IX violations because Congress intended Title IX to "prohibit[] discriminatory acts only by grant recipients").[5] Even if these individual-capacity claims are permissible, they fail on the merits for the same reasons that the Title IX claims against the Board fail. *Supra* pp. 14–16.

---

[5] The Section 1983 claims against Defendants Teniente-Matson and Konya in their official capacity should be dismissed as duplicative. An official-capacity suit is a "suit against the entity." *Kentucky*, 473 U.S. at 166. Plaintiffs already sued the Board for alleged Title IX violations in Count I. The "duplicative effort" to sue the Board again under Section 1983 is "barred." *Seamons*, 84 F.3d at 1234 n.8.

C.    **Plaintiffs Fail to State any Equal Protection Claim**

Plaintiffs advance two Equal Protection claims but both fail for the same basic reason.  First, Plaintiffs contend that rostering an allegedly transgender player denied them equal opportunity.  Am. Compl. ¶¶ 792–805 (Count III).  Second, they claim that dressing, changing, and sharing hotel rooms with the allegedly transgender player violated their bodily privacy.  *Id.* ¶¶ 827–37 (Count VI).  Both theories fail because the Equal Protection Clause actually *prohibits* discrimination on the basis of transgender status.  *Fowler*, 104 F.4th at 794; *see also supra* p. 14.  Thus, as this Court recognized in denying Plaintiffs' motion for a preliminary injunction, the Equal Protection Clause cannot support either theory because it cannot *require* what it prohibits—the exclusion of transgender women from women's sports or other spaces solely because they are transgender.

Moreover, even if Plaintiffs had alleged that the CSU Defendants' purposefully discriminated against cisgender women by rostering an eligible, allegedly transgender player (and they have not, *see supra* pp. 14–15), CSU's decision survives intermediate scrutiny.  *See Fowler*, 104 F.4th at 784.  The challenged rostering decision is "substantially related to a sufficiently important governmental interest."  *Id.* at 794.  At least two interests—protecting the constitutional and statutory rights of transgender players and facilitating SJSU's compliance with legal requirements governing the inclusion of these players— justify the CSU Defendants' actions.  *See, e.g.*, *Hecox*, 104 F.4th at 1079–80

(prohibiting blanket ban on transgender student-athletes competing in athletics

consistent with their gender identity); *see also* Cal. Educ. Code § 66270 (prohibiting

discrimination on the basis of transgender status).  And even if transgender people

did not have a constitutional or statutory *right* to participate in athletics consistent

with their gender identity (and they do), the CSU Defendants still have important

interests in promoting the inclusion of transgender players, especially when they

are otherwise eligible to compete under conference and NCAA rules.  *See B.P.J. v.*

*W. Va. State Bd. of Educ.,* 98 F.4th 542, 564 (4th Cir. 2024) (explaining that

prohibiting transgender players from competing consistent with their gender

identity can "countermand [their] social transition" and their "medical treatment");

*see also Parents for Priv. v. Barr*, 949 F.3d 1210, 1238–39 (9th Cir. 2020)

(suggesting schools had a "compelling interest" in protecting the "health and

wellbeing of its students," including by enabling transgender people to live

consistent with their gender identities).

Plaintiffs are likely to contend—as they have previously in this Court and on

appeal—that these interests are irrelevant because Plaintiffs allege that rostering a

transgender woman inherently disadvantages cisgender women.  But this

misunderstands how equal protection and the tiers of scrutiny work.  The tiers of

scrutiny apply only where a plaintiff has shown that the challenged policy facially

or purposefully discriminates on the basis of a protected characteristic (or otherwise

abridges some fundamental constitutional right, like speech).  *See Fowler*, 104 F.4th

at 794. The purpose of heightened scrutiny is to determine whether the policy is nevertheless justified because it advances *some other* important government interest. *Id.*; *see also United States v. Virginia*, 518 U.S. 515, 533 (1996). It therefore cannot be that simply because a challenged policy allegedly disadvantages the plaintiffs' protected class in some way, the entirely separate government interest the policy advances is inherently illegitimate. That would turn the heightened scrutiny framework on its head. Plaintiffs' Equal Protection claims should be dismissed.

### D.    Slusser Fails to State a First Amendment Claim

Slusser's First Amendment claim also fails. She has not alleged "an injury that would chill a person of ordinary firmness from continuing to engage in [protected] activity." *Worrell v. Henry*, 219 F.3d 1197, 1212–13 (10th Cir. 2000).

This claim is premised on the same allegedly retaliatory conduct as Slusser's Title IX retaliation claim, *see* Am. Compl. ¶ 452, and as already explained, this alleged conduct is not sufficiently severe to make out a claim for retaliation, *see supra* pp. 15–16. The First Amendment context does not alter that conclusion. The Tenth Circuit has rejected First Amendment retaliation claims predicated on far more dramatic conduct than Slusser alleges: Interfering with a plaintiff's ability to hire counsel is not sufficient to chill a person of ordinary firmness. *Smith v. Plati*, 258 F.3d 1167, 1177 n.9 (10th Cir. 2001). Nor is reporting potential discriminatory conduct by Slusser with a good faith basis for believing it to be unlawful. *See Stetzel*

*v. Holubek*, 661 F. App'x 920, 922 (10th Cir. 2016) (a *false* incident report could be retaliatory conduct); *see also Nieves v. Bartlett*, 587 U.S. 391, 408 (2019) (retaliatory arrest claim was barred where defendants had probable cause to arrest the plaintiff). Slusser's own actions—joining a lawsuit to challenge the TEP, Am. Compl. ¶ 435, and publicly criticizing SJSU to "journalists and in public forums," *id.* ¶ 452(c), confirm that the actions alleged do not chill a person of ordinary firmness.

### E. The Class Allegations Against the CSU Defendants Should Be Stricken

This Court has repeatedly stricken class allegations "where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." *Faulhaber*, 656 F. Supp. 3d at 1271 (citation omitted). Neither a class of MWC volleyball players across three seasons, nor a class of MWC volleyball players on the four teams assigned forfeits during the 2024 season could be certified under Rule 23. These putative classes cannot meet the typicality prerequisite of Rule 23(a)(3) and "at least one of the provisions of Rule 23(b)." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014). Plaintiffs' proposed class(es) face numerous hurdles to certification, two of which are so apparent that the claims must be stricken now.

*First,* Plaintiffs cannot be typical of the class because they are not even similarly situated *to one another.* For a class to be certified, the representative plaintiffs must be "typical" of the class. Fed. R. Civ. P. 23(a)(3). This requires that "the claims of the class representative and class members are based on the same

legal or remedial theory." *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1193 (10th Cir. 2023). The complaint itself reveals Plaintiffs cannot meet that standard. Plaintiffs who played at SJSU allege injuries (loss of playing time and scholarships) different from the Plaintiffs who played on other MWC teams (loss of competitive advantage and risk of injury). Plaintiffs are therefore not "typical of one another, much less . . . all purported class members." *Francis v. APEX USA, Inc.*, No. CIV-18-583-SLP, 2021 WL 4487985, at *7 (W.D. Okla. Sept. 30, 2021).

Even among the non-SJSU Plaintiffs, the injuries and theories of recovery are different: Not every team refused to play SJSU. And not every team lost to SJSU. The "notable differences in [the named plaintiffs'] alleged injuries," highlight that "the nature of the [class] members' claims would be highly individualized" and not appropriate for resolution as a class. *Faulhaber*, 656 F. Supp. 3d at 1274. *Compare* Am. Compl. ¶ 768 *with id.* ¶ 769–70.

*Second*, the proposed class is overbroad and includes members who were never injured. A motion to strike is appropriate in such cases. *See Ramsay v. Frontier, Inc.*, No. 19-cv-03544-CMA-NRN, 2021 WL 651021, at *7 (D. Colo. Feb. 19, 2021); *Edwards v. Zenimax Media Inc.*, No. 12–cv–00411–WYD–KLM, 2012 WL 4378219, at *6 (D. Colo. Sept. 25, 2012). SJSU players who do not play the same or similar positions to the allegedly transgender player have no plausible theory of deprivation of playing time or opportunity. And it is not clear how players on teams that refused to play SJSU were injured by the CSU Defendants at all. The TPP did

not affect MWC championship tournament qualification for any of the four teams assigned forfeits. *See* Dkt. 28-2 ¶¶ 5–6. It is doubtful such a class could be certified to bring claims against the MWC, but it certainly cannot be certified *vis-à-vis* claims against the CSU Defendants. And players who never actually played the player— either because they forfeited or because they simply were injured or on the bench for their game against SJSU—have no plausible theory of injury due to any safety risk. Because the class plainly has uninjured members, it is overbroad and cannot be certified.

*Third*, even if the proposed classes could meet Rule 23(a)'s requirements (and they cannot), neither of the classes fits into any of the Rule 23(b) categories. There is no basis for a Rule 23(b)(1) class to avoid "inconsistent or varying adjudications," Fed. R. Civ. P. 23(b)(1)(A), where, as here, there is no alleged risk that separate actions would ensue absent class certification, *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.*, 158 F.R.D. 681, 686 (D. Kan. 1994) (citing *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1544 (11th Cir. 1987)). No Rule 23(b)(2) class can be certified because the injunctive relief sought is non-justiciable. *See supra* pp. 9–10. Finally, the putative classes cannot be certified under Rule 23(b)(3) because individualized questions of fact predominate and a class is not superior for addressing Plaintiffs' claims. For the same reasons that Plaintiffs cannot establish typicality, individualized questions of fact predominate over common questions and are further complicated by the necessity of individualized

damages calculations (if any).  "[T]he number of individual issues," in combination with the fact that Plaintiffs propose multiple subclasses pursuing different combinations of claims against different groups of Defendants, demonstrate that, "as a practical matter," a Rule 23(b)(3) class is not superior for addressing Plaintiffs' claims.  *Monreal v. Potter*, 367 F.3d 1224, 1238 (10th Cir. 2004) (holding a putative class fails to satisfy Rule 23(b)(3) when it is difficult to "envision" how the case would proceed efficiently as a class action); *see also Fincher ex rel. Fincher v. Prudential Prop. & Cas. Ins. Co.*, 374 F. App'x 833, 848 (10th Cir. 2010) (holding Rule 23(b)(3) is not satisfied when claims "cannot efficiently be resolved on a class-wide basis").

## V.    CONCLUSION

The claims against the CSU Defendants should be dismissed based on mootness, immunity doctrines, and/or failure to state a claim.  Plaintiffs' failure to cure these deficiencies in the Amended Complaint means that dismissal should be with prejudice.  The class claims should also be stricken.

Respectfully submitted this 9th day of May 2025,

MUNGER, TOLLES & OLSON LLP

_/s/ Bryan H. Heckenlively_

Bryan H. Heckenlively
Jennifer L. Bryant
Helen E. White
560 Mission Street
San Francisco, CA 94105
(415) 512-4000
bryan.heckenlively@mto.com

Attorneys for CSU Defendants

## **<u>Certification Regarding the Use of Artificial Intelligence</u>**

I certify that no portion of this filing was drafted by artificial intelligence.

*/s/ Bryan H. Heckenlively*

Bryan H. Heckenlively

## <u>Certification of Conferral</u>

Pursuant to the District of Colorado Local Rules of Civil Practice, I certify that I made a good-faith effort to confer with Plaintiffs regarding this motion.

On May 6, 2025, the parties met and conferred regarding this motion. Counsel for the CSU Defendants overviewed each of the arguments they intended to raise in this motion. Counsel for Plaintiffs asked several clarifying questions, but upon hearing the grounds for this motion, did not agree to withdraw any aspect of their complaint.

*/s/ Bryan H. Heckenlively*
Bryan H. Heckenlively

## Certificate of Service

I hereby certify that on this 9th day of May, 2025, the foregoing Rule 12(b)

Motion to Dismiss Plaintiffs' Amended Complaint and Rule 12(f) Motion to Strike

Class Allegations was filed and served via CM/ECF to all counsel of record.

*/s/ Bryan H. Heckenlively*
Bryan H. Heckenlively
